**CRAIG R. SMITH (State Bar No. 180338)**
**SMITH LAW FIRM**
**A Professional Law Corporation**
**21550 Oxnard Street, Suite 760**
**Woodland Hills, California 91367**
**Telephone:      (818) 703-6057**
**Facsimile:   (818) 703-6058**

Attorneys for Plaintiffs Manmohan Chhabra, Parshotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and Pacific Hospitality, LLC, a Texas limited liability company

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANMOHAN CHHABRA; PARSHOTAM KAMBOJ; RANJIT SINGH; DARSHAN SINGH; SHERBIR SANT; SURINDER-PAL ARORA; SANTOKH ARORA; and PACIFIC HOSPITALITY, LLC, a Texas limited liability company; <br><br> Plaintiffs, <br><br> vs. <br><br> MEHUL PATEL aka MIKE PATEL; CHIRAG PATEL aka CHUCK PATEL; JAGMOHAN DHILLON; SAGESTAR MANAGEMENT GP, LLC, a Texas limited liability company; SAGESTAR HOLDINGS, LTD, a Texas limited partnership; DENISON LODGING, LLC, a Texas limited liability company; CORSICANA LODGING, LLC, a Texas limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. CV11-03724 RGK (VBKx) <br><br> **PLAINTIFFS' RICO STATEMENT PURSUANT TO THE COURT'S ORDER RE RICO CASES** |

Plaintiffs Manmohan Chhabra, Parshotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and Pacific Hospitality, LLC hereby submit this RICO Statement Pursuant to the Court's Order re: RICO

- 1 -

Cases.   The information contained herein is based upon the limited discovery Plaintiffs have conducted.

1.    **State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d)**.

The claim is brought pursuant to 18 U.S.C. §1962(c).

2.    **List each defendant and state the alleged misconduct and basis of liability of each defendant**.

•    The Patel Defendants- Mehul Patel aka Mike Patel; Chirag Patel aka Chuck Patel; Sagestar, Management GP, LLC; Sagestar Holdings, LTD; Denison Lodging, LLC; Corsicana Lodging, LLC and Ennis Lodging, LLC.

•    The Dhillon Defendants- Jagmohan Dhillon ("Dhillon"); Dhillon Management, Inc.

This case involves the fraud and other wrongful conduct perpetrated on the Plaintiffs as investors in six hotels owned and sold by the Patel Defendants and sold by Dhillon.  In their Complaint, the Plaintiffs allege that Dhillon, working together with the Patel Defendants, caused Plaintiffs to invest approximately $2,015,000 and sign loan guaranties in the amount of $6,146,250 in connection with the sale by the Patel Defendants of four hotel properties in Texas– The Holiday Inn Express in Mt. Pleasant, Texas (the "Mt. Pleasant HIE"), the Hampton Inn in Corsicana, Texas (the "Corsicana HIE"), the Holiday Inn Express in Corsicana, Texas (the "Corsicana HIE") and a Holiday Inn Express in Denison, Texas (the "Denison HIE").

1    The Patel Defendants are real estate developers who build and sell hotels in
2  Texas.  Dhillon, directly and through his entities, poses as a successful real estate
3  developer and hotelier to recruit investors to invest money to purchase hotel
4  properties from the Patel Defendants.   Dhillon is of Sikh Indian descent, and he
5  preyed upon members of his own community exploiting the trust and confidence
6  that comes from appearing to have devout religious practices.

7    Dhillon posed as Plaintiffs' partner in the transactions while at the same
8  time he had an undisclosed relationship with the Patel Defendants whereby the
9  Patel Defendants would pay Dhillion (through Dhillon Management, Inc.) "finders
10  fees" for finding investors of approximately $500,000 for each transaction the
11  Patel Defendants were successfully paid in full.

12    Only contracts drafted by the Patel Defendants were used for the
13  transactions.  The contracts contained no contingencies of any kind such that if
14  Plaintiffs would lose their investments if they did not proceed with the
15  transactions, including signing loan guaranties.

16    Dhillon represented to the Plaintiffs that he negotiated deals with the Patel
17  Defendants; that the hotels were being purchase below fair market value; that he
18  was investing his own money in the transactions; and that he was not being paid
19  any commissions or finders fees.  All of Dhillon's representations were false.

20    Defendants used Plaintiffs' funds as the down payment necessary to qualify
21  for bank financing for the sales.  Dhillon would arrange financing for the
22  transaction to pay off the Patel Defendants, who in turn paid Dhillon his share of
23  the profits.  As part of that effort, false financial information as to the hotel's
24  performance and profitability was provided to lenders.  The secret payments by the
25  Patel Defendants to Dhillon were also concealed from the lenders, as each contract
26  represented and warranted that no undisclosed commissions or finders fees were
27  being paid as part of each transaction.

28

- 3 -

1   In order to fund the secret kickbacks, the Dhillon used his fiduciary
2   relationship to dupe Plaintiffs into purchasing the hotels far in excess of their
3   market value. Because the hotels were overpriced, and therefore could not
4   ordinarily qualify for bank financing, land sale contracts and/or seller carry backs
5   were used by the Defendants to get immediately lock Plaintiffs into the
6   transactions and get their money released from escrow.

7   The basis of liability of the Defendants is that they worked together to
8   defraud Plaintiffs, by express misrepresentations and concealment of facts to cause
9   Plaintiffs to invest in the subject transactions.  Dhillon, as Plaintiffs' partner,
10   promoter and/or manager of the various limited liability companies used to take
11   title to the properties owed Plaintiffs a fiduciary duty. Because Dhillon was the
12   acting in concert with the Patel Defendants, or was their undisclosed agent or
13   partner, they are liable to Plaintiffs for Dhillon's conduct.

14

15   **3.    List the alleged wrongdoers, other than the defendants listed above, and**
16   **state the alleged misconduct of each wrongdoer.**

17

18   New Hope Hospitality, LLC, a Texas limited liability company– The entity
19   formed by Dhillon to take title to the Corsicana Hampton.

20   Starlite Hotels, LLC, a Texas limited liability company– The entity formed
21   by Dhillon to take title to the Corsicana HIE.

22   Newcrest Hotels, LTD a Texas limited partnership- the entity used by the
23   Patel Defendants to sell the Corsicana HIE and take the proceeds from the sale
24   transactions. It was also the owner and seller the Sweetwater HIE. It was also the
25   owner and the seller a Holiday Inn Express in Sherman, Texas, which is a hotel
26   sold by the Defendants Dhillon and Mehul Patel aka Mike Patel to Dr. Joghinder
27   Soni, which transaction is the subject of that certain action styled <u>Dr. Joghinder</u>
28

- 4 -

Soni v. Jagmohan Dhillon, Mehul Patel aka Mike Patel, Newcrest Hotels, LTD, Premium Hotel Management, Inc., Harminder Dhillon, Harwant Dhillon and Bawa Dhillon, Cause No. 10-14506, pending in The District Court, 101st Judicial District, Dallas County, Texas.

Capital Structures, LLC, a Texas limited liability company is the general partner of Newcrest Hotels, LTD.

Harminder Dhillon- Dhillon's uncle used by Dhillon as his substitute in Corsicana HIE transaction.

Dhillon Management, LLC, a Texas limited liability company that Dhillon presented operates and which either owns or operates hotels in Colorado, Iowa, Louisiana, Mississippi, Nevada and Oklahoma.   See www.dmchotels.com.

**4.     List the alleged victims and state how each victim was allegedly injured.**

Plaintiffs Manmohan Chhabra; Parshotam Kamboj; Ranjit Singh; Darshan Singh; Sherbir Sant; Surinder-pal Arora; Santokh Arora; and Pacific Hospitality, LLC.  Plaintiffs invested $2,015,000 as follows:

| Name | Mt. Pleasant HIE | Corsicana HIE and Hampton | Denison HIE | Total |
|---|---|---|---|---|
| Chhabra | $280,000 | | | $280,000 |
| Sant | $280,000 | | | $280,000 |
| D. Singh | $280,000 | | | $280,000 |
| Kamboj | $140,000 | | $80,000 | $220,000 |
| R. Singh | $140,000 | | $80,000 | $220,000 |
| Pacific Hosp. | $140,000 | $510,000 | $85,000 | $735,000 |
| | | | **TOTAL** | **$2,015,00** |

In addition, each of the Plaintiffs signed personal guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount of $1,800,000.

In addition, loans made by several lenders used by Defendants, including Mutual Bank, are in default. Because the hotels were overpriced, the revenues generated could not support the financing arranged by Defendants. In particular, the loans guaranteed by Plaintiffs on the Mt. Pleasant HIE are in default.

5.   **Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

   a.   **List the alleged predicate acts and the specific statutes which were allegedly violated;**

   b.   **Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

   c.   **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made**;

- 6 -

1    Question 5, subparts a, b, and c.

2

3    Racketeering Act #1

4         From in or about March 2007 and continuing through October 2009,

5    Defendants Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel, and

6    Dhillon conducted and participated in the conduct of the affairs of the enterprise

7    through a pattern of racketeering activity to obtain property, to wit, United States

8    currency, from Plaintiffs by engaging in fraud. Defendants intended that the mails

9    and wires would be used in furtherance of the scheme to defraud Plaintiffs in

10   connection with the transactions involving the Mt. Pleasant HIE, the Corsicana

11   HIE, the Corsicana Hampton and the Denison HIE.

12        **(1)    Wire Fraud in violation of 18 U.S.C. §1344.**

13        Between July 2007 and at least May 2008, Defendants engaged in multiple

14   instances of wire fraud in violation of 18 U.S.C. §1344 by causing wire

15   transactions to occur in connection with the fraud perpetrated upon Plaintiffs.

16   Obtaining the money from the transactions was obviously an essential part of the

17   scheme perpetrated by Defendants. Defendants used   "It is sufficient for the

18   mailing to be 'incident to an essential part of the scheme,' ibid., or 'a step in [the]

19   plot,' Badders v. United States, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed.

20   706 (1916)." Schmuck v. U.S. 489 U.S. 705, 711, 109 S.Ct. 1443, 1448

21   (U.S.Wis.,1989).  As an integral part of the scheme to defraud Plaintiffs,

22   Defendants used the services of Fidelity National Title Company ("Fidelity"), in

23   Dallas, Texas, to cause Plaintiffs to wire the funds for the purchase of the

24   properties and to obtain bank financing.  As even more integral to the scheme,

25   Defendants used the services of Fidelity to wire the profits obtained from each sale

26   transaction engaged in by Defendant.  The wire transactions engaged in by

27   Defendants or on their behalf are as follows:

28

- 7 -

(a) On or about October 30, 2007, Dhillon gave Plaintiff Sherbir Sant wiring instructions to Fidelity for him to use to make his investment of $67,942.88 into the Mount Pleasant HIE. Unbeknownst to Plaintiffs, the wiring instructions given to Sherbir by Dhillon was for an unrelated transaction Dhillon and the Patel Defendants were engaged in Waxahachie, Texas. Sherbir wired the funds and Fidelity applied to the funds to both the Mt. Pleasant HIE transaction and the Waxahachie transaction.

(b) Defendants caused Plaintiffs to wire funds to Fidelity for use in the subject transactions, including but not limited to: $230,000 by Plaintiff Santokh Arora on October 26, 2007 (Mt. Pleasant HIE); $67,942.88 on October 30, 2007 by Plaintiff Sherbir Sant; $204,000 by Plaintiff Surinder-pal Arora on January 24, 2008 (Corsicana HIE).

(c) Fidelity wired profits from the various transactions to the Patel Defendants, including but not limited to: $2,818,541.47 on January 25, 2008 (to Newcrest Hotels, LTD); $4,532,483 on May 20, 2008 (to Sagestar Holdings, LTD); $100,000 on May 23, 2007 (to Newcrest Hotels, LTD); $75,000 on July 10, 2007 (to Newcrest Hotels, LTD); $50,000 on July 18, 2007 (to Newcrest Hotels, LTD); $230,000 on October 26, 2007 (to Sagestar Holdings, LTD); $880,000 on October 27, 2007 (to Sagestar Holdings, LTD); $75,000 on November 2, 2007 (to Newcrest Hotels, LTD); $100,000 on November 5, 2007 (to Newcrest Hotels, LTD); $150,000 on December 20, 2007 (to

- 8 -

1      Corsicana Lodging, LLC); $50,000 on April 2, 2008 to (to

2      Newcrest Hotels, LTD).

3      (d)   Defendants caused Fidelity to wire kickbacks from the various

4            transactions to the Dhillon Defendants, including but not

5            limited to: $500,000 on October 29, 2007 (to Dhillon

6            Management, Inc.); $550,000 on January 25, 2008 (to Dhillon

7            Management, Inc.).

8      (e)   Defendants caused Fidelity to wire commissions to Bruce Patel,

9            the Patel Defendants' broker, including but not limited to:

10           $50,000 on January 25, 2008.

11     **(2)    Wire Fraud in violation of 18 U.S.C. §1344.**

12     From March 2007 through at least October 2009, Defendants engaged in

13     multiple instances of wire fraud in violation of 18 U.S.C. §1344 by sending and

14     receiving emails to facilitate their fraud and scheme, including sending business

15     summaries and business projections for the various hotels, hotel occupancy rates,

16     communications and general correspondence concerning the transactions.

17     Defendants used email to communicate with Fidelity, Plaintiffs and themselves.

18     The number of emails exceed 1000 in number.

19     **(3)    Underlying Fraud Perpetrated on Plaintiffs**.

20     The underlying fraud was perpetrated by Defendants over an extended

21     period of time and involved both misrepresentations of fact and concealment of

22     facts.

23     On March 27, 2007, Dhillon was introduced to Surinder, Santokh by Jasbir

24     Sangha ("Sangha") in Surinder's Los Angeles offices.  Dhillon represented

25     himself to be a partner in the transaction Sangha and that he was recruiting others

26     to be partners with him in other hotel property acquisitions he was negotiating

27     with some Texas hotel developers he had been doing business with for some time.

28

- 9 -

At that meeting, Dhillon represented that his partners made money even if funds were being borrowed on home equity lines or credit cards.  Dhillon represented that Dhillon Management, Inc. was an experienced property management company that would manage the hotel properties he sought investors for.  Dhillon claimed at all times that he was investing his own money in the deals and that everyone was "partners" in the deal and that he was not receiving any commissions, finders fees other compensation for arranging the transaction.  In reality, Plaintiffs would come to discover that Dhillon did not make the promised investment, but instead was paid millions of dollars in secret kickbacks from the Patel Defendants.

**Mt. Pleasant HIE**

On or about August 20, 2007, Plaintiffs signed that certain Contract for Sale for the Mt. Pleasant HIE (the "August Mt. Pleasant HIE Contract") property in Van Nuys, California.  The Contract for Sale was between Patel Defendants' entity Signature Hospitality, LLC as the seller, and Dhillon, Manmohan Chhabra, Parshotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora and Santokh Arora as the buyers.  The August Mt. Pleasant HIE Contract called for a closing date of December 1, 2007.  The August Mt. Pleasant HIE Contract required a $100,000 deposit, $90,000 of which was paid by Plaintiffs to Fidelity.  The August Mt. Pleasant HIE Contract represented and warranted that no finders fees were being paid.

On or about October 25, 2007, Dhillon advised Manmohan Chhabra, Parshotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant and Santokh Arora in Dallas Texas, and advised Surinder-Pal Arora over the telephone in Los Angeles, that he was having trouble financing the transaction.  Further, Dhillon advised that the seller entity was engaged in a buyout transaction between its members and that transaction closed earlier than the December 1, 2007 closing date stated in the August Mt. Pleasant HIE Contract.  Dhillon further represented

- 10 -

1   that the member now owning the Mt. Pleasant HIE did not want to operate the

2   hotel while he arranged financing and pending the December 1, 2007 closing with

3   Plaintiffs.  Instead, Dhillon explained the seller would deliver possession then

4   using a so-called "contract for deed" and the buyers could then take over the hotel,

5   which Dhillon would manage through Dhillon Management, Inc. It was at that

6   time that Dhillon also advised that the buyers should take title to the Mount

7   Pleasant HIE in the form of a limited liability company ("LLC") to limit personal

8   liability.  As a result, Dhillon formed Mount Pleasant Properties, LLC.  Plaintiffs

9   did not know at that time that Signature Hospitality, LLC was being replaced by

10  Sagestar as the seller.  As Manager of Mount Pleasant Properties, LLC, Dhillon

11  signed the Contract for Deed on or about October 26, 2007.  The transaction

12  closed that day. The Contract for Deed represented and warranted that no finders

13  fees or commissions were being paid.  The Contract for Deed required a down

14  payment of $1.4 million.  Dhillon claimed to be investing $140,000.  Plaintiffs

15  later discovered that Dhillon invested only $10,000.  At the closing Dhillon was

16  paid somewhere between $250,000 to $750,000.  Dhillon and Dhillon

17  Management, Inc. abandon all management duties shortly thereafter.

18          In May 2008, Plaintiffs discovered that Dhillon had also concealed the fact

19  that the so-called buyout between members of the seller was false and instead that

20  on or about October 26, 2007, the Patel Defendants had acquired the Mt. Pleasant

21  HIE for approximately $6,000,000 and on the same day sold it to Plaintiffs for

22  $7,000,000.

23          Throughout the course of the transaction, Plaintiffs received numerous

24  emails from the Defendants and Todd Hanan concerning the transaction.

25  **The Corsicana Transactions**

26          With the seeming success of the Mount Pleasant HIE transaction, Dhillon

27

28

- 11 -

1  next pitched two hotels on adjoining lots in Corsicana, Texas: A Holiday Inn

2  Express ("Corsicana HIE") and a Hampton Inn (the "Corsicana Hampton").  The

3  Corsicana HIE and the Corsicana Hampton are collectively referred to as the

4  ("Corsicana Properties").

5       In or about November 2007, Dhillon advised Surinder-Pal and Santokh

6  Arora that some of his partners did not have sufficient funds to complete their

7  share of the purchase.  Dhillon asked Surinder and Santokh to buy a 10% share of

8  the properties.  Dhillon asked for $75,000 immediately even if Surinder and

9  Santokh did not want to buy into the property and he would refund it later.  On or

10  about November 29, 2007, Dhillon emailed the wiring instructions for the

11  Corsicana Properties purchase to Santokh Arora.  In or about January 2008,

12  Surinder and Santokh agree to buy a 10% share in the two hotels, which is later

13  changed to a 17% ownership interest in the property.

14       At that time, Dhillon represented to Surinder-Pal Arora and Santokh Arora

15  that the sale price was $14.25 million, which he represented was below the market

16  price for the Corsicana Properties.  On or about December 17, 2007, Surinder-Pal

17  Arora and Santokh Arora – by and through Pacific Hospitality, LLC, initially

18  wired $484,500 to Fidelity toward the purchase of the Corsicana Properties.  On

19  January 24, 2008, Surinder-Pal Arora and Santokh Arora – by and through Pacific

20  Hospitality, LLC wired $204,000, $108,500, $58,500 and $38,500 to Fidelity.  In

21  total $484,500 was paid to Fidelity.   An additional $16,150 was added and

22  Dhillon agreed to pay Pacific Hospitality, LLC $9,000.  Plaintiffs discovered from

23  purchase contracts obtained from Fidelity under subpoena the purchase price for

24  the Corsicana HIE was $7,350,000 and the purchase price for the Corsicana

25  Hampton was $7,900,000, for a total of $15.25 million.  Plaintiffs believe these

26  documents were used to obtain financing for the transactions on the basis of the

27  overstated price.  Once again, the contracts for each hotel contained

28

**PLAINTIFFS' RICO STATEMENT PURSUANT TO THE COURT'S ORDER RE RICO CASES**

1    representations and warranties that no finder's fees were being paid.  The Patel

2    Defendants paid the Dhillon $1,050,000 as "finders fees" for these transactions.

3         Throughout the course of the transaction, Plaintiffs received numerous

4    emails from the Defendants and Todd Hanan concerning the transaction.

5    **The Denison Transaction**

6         In or about April 2008, Dhillon pitched yet another hotel property.  This

7    time it was a newly constructed Holiday Inn Express in Denison, Texas ("Denison

8    HIE").   The purchase price was $7.5 million.   Dhillon represented to Parshotam

9    Kamboj, Ranjit Singh, Surinder-Pal Arora and Santokh Arora that he had already

10   negotiated the $7.5 million purchase price and that $7.5 million was below market

11   price for the Denison HIE.  Parshotam Kamboj, Ranjit Singh and  Pacific

12   Hospitality, LLC paid $245,000 toward the purchase and operations of the

13   Denison HIE; some of which funds were wired to Fidelity.  Dhillon represented

14   and warranted that he was investing $350,000 of his own money.  On April 14,

15   2008, Dhillon issued a check drawn Dhillon Management, Inc.'s account to the

16   Patel Defendants for $350,000 and provided the check to Fidelity as evidence of

17   his investment.  The Patel Defendants never negotiated the check.

18        The Contract for Deed required that the Patel Defendants be paid in full by

19   January 11, 2009.  Denison was the seller of the Denison HIE.  Until then, interest

20   payments on the $6,000,000 carried by the Patel Defendants were required until

21   the financing was done.  The Patel Defendants turned over possession of the

22   property to Plaintiffs on April 11, 2008.   In the months that followed, Plaintiffs

23   discovered that the sale price of the hotel was overstated so much so that financing

24   was not available.  As a result, title to the property never passed and the Patel

25   Defendants took back the Denison HIE in July 2009.

26

27

28

1    Racketeering Act #2

2    On or about May 2008, Defendants knowingly executed scheme to obtain

3    funds under custody and control of financial institution by means of false or

4    fraudulent pretenses in violation of 18 U.S.C. §1344.  Defendants submitted a

5    contract to Mutual Bank of Harvey Illinois in connection with the $4,346,250 loan

6    used to pay off the Patel Defendants on the Mt. Pleasant HIE transaction. The

7    contract submitted to the bank, signed by Mehul Patel aka Mike Patel, on behalf of

8    Sagestar Holdings, LTD (seller) and by Dhillon as manager of Mount Pleasant

9    Properties, LLC (buyer) represented and warranted that no finder's fees were

10   being paid.  Defendants knowingly misrepresenting and concealing from the bank

11   that the Patel Defendants were paying Dhillion, through Dhillon Management,

12   Inc., finders' fees ranging from $250,000 to $750,000.

13

14   Racketeering Act #3

15   In September and October 2009, Mike Patel and Chuck Patel conducted and

16   participated in the conduct of the affairs of the enterprise through a pattern of

17   racketeering activity and traveled in interstate commerce in violation of 18 U.S.C.

18   §1952 as follows:

19          (a)     In September 2009, Mike Patel and Chuck Patel came to Los

20                  Angeles to meet with Elhouty regarding the Denison HIE

21                  transaction and with Sangha regarding his ownership in the

22                  Ennis HIE and Corsicana properties.  In August 2009, Sangha

23                  discovered that as part of Dhillon's efforts to finance the Ennis

24                  HIE transaction, One World Bank was provided a loan

25                  application with Sangha's forged signature and false financial

26                  statements for the purpose of obtaining a loan for the Ennis

27                  HIE to pay off Mike Patel.

28

- 14 -

(b)   In October 2009, Mike Patel was in Los Angeles again to meet with Elhouty.  At that time, Mike Patel engaged in discussions with Elhouty on behalf of some of the Plaintiffs.  Mike Patel, on behalf of himself and Dhillon, Gurender Sahani and Tarlochan S. Kataria, agreed pay Pacific Hospitality $510,000 and pay Pacific Hospitality, LLC, Parshotam Kamboj and Ranjit Singh $245,000 ($410,000 by promissory notes issued by Dhillon, Gurender Sahani and Tarlochan S. Kataria (secured by other Dhillon hotel properties) and $100,000 cash paid by Mike Patel) representing the return of their collective investments in Denison HIE and the Corsicana Properties.  In exchange, Mike Patel required, *inter alia*, that Pacific Hospitality, LLC assign its interest in New Hope Hospitality, LLC to Dhillon, Gurender Sahani and Tarlochan S. Kataria. That assignment was necessary for New Hope Hospitality, LLC to refinance the $1,320,000 second mortgage of the Patel Defendants' entity Corsicana Lodging, LLC secured against the Corsicana Hampton.  Pacific Hospitality, LLC would not participate in any part of a loan transaction.  On the basis of Mike Patel's promises made in Los Angeles, on October 2, 2009, Surinder-Pal Arora emailed Mike Patel that certain Assignment of Membership Interest Agreement assigning Pacific Hospitality, LLC's interest in New Hope Hospitality, LLC to Dhillon, Gurender Sahani and Tarlochan S. Kataria, which he was specifically instructed he could not use unless and until the settlement was finalized.  The settlement fell apart after Plaintiffs discovered that Dhillon impaired the security

with false liens.  Nevertheless, Defendants used the Assignment of Membership Interest Agreement as part of their efforts to obtain an SBA loan used to pay off the Patel Defendants.

    **d.**    **State whether there has been a criminal conviction for violation of the predicate acts**.

None known to Plaintiffs.

    **e.**    **State whether civil litigation has resulted in a judgment in regard to the predicate acts**.

None known to Plaintiffs.

    **f.**    **Describe how the predicate acts form a "pattern of racketeering activity".**

Relatedness

The conduct of the Defendants "ha[s] the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." H.J. Inc. v. Northwestern Bell, 492 U.S. 229 (1989).

The purpose of each transaction was to use Plaintiffs to purchase hotels from the Patel Defendants at extraordinary prices whereby bank loans were be obtained using Plaintiffs' money as the down payment and whereby the Patel Defendants and Dhillon would share in the profits.  Every transaction alleged

- 16 -

1   herein involved transactions for the sale of hotels owned by the Patel Defendants.

2   Every transaction alleged herein was set up by Dhillon.  Every transactions was

3   nearly identical in form, proceeding in the same manner and all were transacted

4   through Fidelity using Maggie Vogeler as the escrow officer.  The same victims

5   were harmed by Defendants' conduct.

6

7          Continuity

8          The conduct of the Defendants as alleged herein went from at least March

9   2007 to October 2009.  The "continuity" in this case could be either a closed

10  period of repeated conduct, or evidences conduct, that by its very nature, has a

11  threat of repetition.  Id. at 241.

12         Indeed, these Defendants have perpetrated the same scheme on others– both

13  within the transactions alleged herein and regarding other hotel transactions not

14  part of this action.  Recall the matter of Soni v. Jagmohan Dhillon, Mehul Patel

15  aka Mike Patel, Newcrest Hotels, LTD, Premium Hotel Management, Inc.,

16  Harminder Dhillon, Harwant Dhillon and Bawa Dhillon, Cause No. 10-14506.  Dr.

17  Soni is a California resident who was lured by Dhillon into two hotel transactions

18  for hotels owned by the Patel Defendants in Sherman, Texas and Fort Worth

19  Texas.

20         Attached hereto as Exhibit A is a chart summarizing information Plaintiffs

21  have obtained in discovery regarding six Patel Defendants/Dhillon transactions–

22  some involving Plaintiffs and some not involving Plaintiffs.   The information

23  summarized demonstrates that the Patel Defendants and Dhillon operated to inflate

24  hotel sales prices for bank financed transactions by the amount paid to Dhillon as

25  a secret profit.  The contract documents (except for Mt. Pleasant HIE) all state that

26  Bruce Patel, the Patel Defendants' broker, is paid a two percent commission on

27  each sale.  The closing statements for each transaction uniformly indicate a

28

- 17 -

payment to Bruce Patel that is less than two percent.  Using the amount paid to Bruce Patel as a means to calculate the "actual" sale price, the difference between the stated sale price and "actual" sale price equals the amount paid to Dhillon for each transaction.  Bank loans were obtained for all six transactions.  Fidelity was used for all six transactions.  Maggie Vogeler was the escrow officer for all six transactions.  Wiring of funds in and out of Fidelity was done on all six transactions.

    **g.**    **State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail**.

    All of the predicate acts described in response to subparts a, b, and c, above establish that all of the predicate acts are related to each other and part of a common plan.  The scheme is sell overpriced hotels to unsuspecting out of state victims where the victims' would wire or mail their funds to Fidelity in Dallas, Texas.  That money would be used to qualify the transactions for bank financing. Defendants would then obtain their profits by causing Fidelity to wire the profits. Throughout the transactions, Defendants communicated with Plaintiffs by email. Defendants traveled in interstate commerce and caused Plaintiffs to travel in interstate commerce, all as part of the fraud perpetrated. The wire fraud, bank fraud and interstate travel are all necessary aspects of the transactions.

**6.**    **Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

a.      **State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise**.

Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and Dhillon.

In addition, Mehul Patel aka Mike Patel and Chirag Patel aka Chuck Patel use entities to conduct their scheme, including Sagestar Management, GP, LLC, Sagestar Holdings, LTD (The general partner is Sagestar Management, GP, LLC), Capital Structures, LLC**,** a Texas limited liability company; Newcrest Hotels, LTD- a Texas limited partnership (Capital Structures, LLC is the general partner); Denison Lodging, LLC;  Corsicana Lodging, LLC; Ennis Lodging, LLC.

Dhillon also used entities as to conduct his scheme, including Dhillon Management, Inc., Dhillon Management, LLC; New Hope Hospitality, LLC; and Starlite Hotels, LLC.

Plaintiffs do not have enough information to determine the function of the entities.

b.      **Describe the structure, purpose, function and course of conduct of the enterprise.**

Defendants Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and Dhillon, together with other persons constitute an enterprise within the meaning of 18 U.S.C. 1961(4), that is, a group of individuals associated in fact which engaged in the conduct alleged in the Complaint, including violations of 18 U.S.C. §1344, 18 U.S.C. §1952 and 18 U.S.C. §1344.  Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and Dhillon are perpetrators.  The association in fact of Defendants Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and Dhillon

- 19 -

1  acted together with the named entity Defendants, as well as Newcrest Hotels, LTD
2  (seller on Corsicana HIE), New Hope Hospitality, LLC ( buyer of Corsicana
3  Hampton), Starlite Hotels, LLC (buyer of Corsicana HIE).
4      The purpose is to engage in hotel transactions for profit through the use of
5  fraud and other illegal conduct.
6
7      **c.    State whether any defendants are employees, officers or directors**
8          **of the alleged enterprise**.
9
10     Plaintiffs do not know whether the association in fact of Mehul Patel aka
11  Mike Patel, Chirag Patel aka Chuck Patel and Dhillon has any employees, officers
12  or directors.
13     Plaintiffs do not have enough information to determine the function of the
14  entities.  Nevertheless, the composition of the entities used is as follows:
15     Sagestar Management, GP, LLC, a Texas limited liability company-
16  Members are Mehul Patel and Sanjay Patel, with Mehul Patel as the managing
17  member.
18     Sagestar Holdings, LTD, a Texas limited partnership- The general partner is
19  Sagestar Management, GP, LLC
20     Capital Structures, LLC**,** a Texas limited liability company- Members are
21  Mehul Patel, Chirag Patel, Sanjay Patel and Dexesh Patel.
22     Newcrest Hotels, LTD- a Texas limited parnership- Capital Structures, LLC
23  is the general partner.
24     Denison Lodging, LLC, a Texas limited liability company- Members are
25  Mehul Patel and Sanjay Patel, with Sanjay Patel as president.
26
27
28

1   Corsicana Lodging, LLC a Texas limited liability company- Members are
2   Mehul Patel, Sanjay Patel and possibly Dexesh Patel, with Mehul Patel as
3   managing member.

4   Ennis Lodging, LLC is a Texas limited liability company- Mehul Patel is
5   the president of that entity.

6   Dhillon Management, Inc., a California corporation that Dhillon was a
7   director, the president and shareholder.

8   Dhillon Management, LLC, a Texas limited liability company- Members
9   unknown, but Dhillon appears to control this entity.

10   New Hope Hospitality, LLC, a Texas limited liability company- Members
11   are Dhillon, Gurender Sahani, Tarlochan S. Kataria, Roger Sangha and Todd
12   Hanan.

13   Starlite Hotels, LLC, a Texas limited liability company– Members are
14   Dhillon, Gurender Sahani, Tarlochan S. Kataria, Roger Sangha and Todd Hanan.

15

16   **d.      State whether any defendants are associated with the alleged**
17   **         enterprise.**

18

19   Defendants Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and
20   Dhillon, together with other persons constitute a group of individuals associated in
21   fact.

22

23   **e.      State whether you are alleging that the defendants are individuals**
24   **         or entities separate from the alleged enterprise, or that the**
25   **         defendants are enterprise itself, or members of the enterprise.**

26

27

28

- 21 -

1    Defendants Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and

2    Dhillon act as an enterprise.  Additionally, they use entities.  The entities act

3    together as an enterprise to the extent they are used in particular transactions.

4

5        **f.**    **If any defendants are alleged to be the enterprise itself, or**

6        **members of the enterprise, explain whether such defendants are**

7        **perpetrators, passive instruments, or victims of the alleged**

8        **racketeering activity.**

9

10   Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and Dhillon are

11   perpetrators.  The association in fact of Defendants Mehul Patel aka Mike Patel,

12   Chirag Patel aka Chuck Patel and Dhillon acted together with the entity

13   Defendants and unnamed entities.

14

15   **7.**    **State and describe in detail whether you are alleging that the pattern of**

16       **racketeering activity and the enterprise are separate or have merged**

17       **into one entity.**

18

19   As stated by the Supreme Court, "[T]he evidence used to prove the pattern

20   of racketeering activity and the evidence establishing an enterprise 'may in

21   particular cases coalesce.'"  <u>Boyle v. U.S.</u>  129 S.Ct. 2237, 2245 (U.S.,2009),

22   *quoting*, <u>U.S. v. Turkette</u>  452 U.S. 576, 583, 101 S.Ct. 2524, 2529

23   (U.S.Mass.,1981).  Such appears to be the case here.

24   The enterprise operates by engaging in fraud in connection with the sale of

25   hotel properties to unsuspecting out of state investors and it employs the predicate

26   offenses as an "'incident to an essential part of the scheme,' ibid., or 'a step in

27   [the] plot,'"  <u>Badders v. United States</u>, *supra*, 240 U.S. at 394.

28

- 22 -

**8.    Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The pattern of racketeering is central to the activities of the enterprise; most particularly, the wire fraud.  In effectuating the fraud, Defendants required the constant movement of large sums of money– from the Plaintiffs, from lenders and them to themselves– which can only be practically done by using the Federal Reserve Wire Network (or "Fed Wire").  Bank financing is also central to the operating of enterprise (which also uses the Fed Wire to transmit funds).  The scheme does not work if Defendants are unable to finance the transactions. Because the properties are overpriced, the Defendants need to employ false information, and not disclose to lenders the payments between themselves, and need to rely of the creditworthiness of the victims, by guaranties or otherwise– even if the victims' consent is misrepresented and falsely presented to the bank (e.g. One World Bank).

While Defendants engage in other day to day business apart from the enterprise, the usual and daily activities of the enterprise is the fraud and pattern of racketeering employed.

**9.    Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

Unknown at this time.

- 23 -

**10.    Describe the effect of the activities of the enterprise on interstate or foreign commerce**.

The enterprise committed fraud on California residents; used the wires and mails as part of the fraud perpetrated; caused loans to be made by FDIC insured institutions that obtained loan guarantees from the United States Small Business Administration, the United States Department of Agriculture, and Defendants traveled in interstate commence as part of the enterprise.

**11.    If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information**.

Not applicable.

**12.    If the complaint alleges a violation of 18 U.S.C. Section 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise**.

Not applicable.

**13.    If the complaint alleges a violation of 18 U.S.C. Section 1962(c), provide the following information:**

**a.    State who is employed by or associated with the enterprise.**

Dhillon used Todd Hanan of Legacy Funding & Investments Inc. ("Legacy") to obtain bank financing for the Mt. Pleasant HIE, Corsicana HIE and

1  Corsicana Hampton transactions.  Hanan and Legacy may be perpetrators or
2  passive instruments.  Plaintiffs have not obtained discovery sufficient to make this
3  determination.

4       Additionally, Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and
5  Dhillon caused Maggie Vogeler ("Vogeler"), an employee of Fidelity, to send and
6  receive all wire transactions.  Vogeler and Fidelity may be perpetrators or passive
7  instruments. Plaintiffs have not obtained discovery sufficient to make this
8  determination.

9       Additionally, Dhillon used Harminder Dhillon, his uncle, in his stead in the
10 Corsicana HIE transactions.  Harminder Dhillon may be a perpetrator or passive
11 instrument. Plaintiffs have not obtained discovery sufficient to make this
12 determination.

13

14      **b.**    **State whether the same entity is both the liable "person" and the**
15            **"enterprise" under Section 1962(c).**

16

17      No.

18

19 **14.**   **If the complaint alleges a violation of 18 U.S.C. Section 1962(d),**
20       **describe in detail the alleged conspiracy.**

21

22      Not applicable.

23

24 **15.**   **Describe the alleged injury to business or property**.

25

26      Plaintiffs lost $2,015,000 and are personally liable for $6,146,250 on loan
27 guaranties.

28

- 25 -

16. **Describe the direct causal relationship between the alleged injury and the violation of the RICO statute**.

Plaintiffs money was taken and obtained by Mehul Patel aka Mike Patel, Chirag Patel aka Chuck Patel and Dhillon through a scheme to defraud Plaintiffs that utilized the wires to obtain Plaintiffs funds which in turn were paid out to Defendants by wire payments.  Plaintiffs carried out the fraud by communicating with Plaintiffs by email, including transmitting hotel business plans, financials and other information.

Additionally, Plaintiffs funds were as used to obtain bank loans to finance the transactions.  The scheme could not be carried out unless the transactions could be financed.  With particular regard to the Mt. Pleasant HIE, Plaintiffs funds, as well as their creditworthiness, including personally guaranties, were necessary to arrange the financing.  The loans were procured using false information, including the concealed fact that payments were being made between the Patel Defendants and Dhillon.

17. **List the damages sustained for which each defendant is allegedly liable**.

Plaintiffs have been damaged in the amount of approximately $8.2 million, together with interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.  The damages consist of $1.26 million invested in the Mount Pleasant HIE transaction; loan guaranties on the Mount Pleasant HIE bank loans in the amount of $6,146,250; $510,000 invested in the Corsicana Properties; and $245,000 invested and expended in the Denison HIE.

18. **List all other federal causes of action, if any, and provide the relevant statute numbers**.

None.

19. **List all pendent state claims, if any**.

Breach of Fiduciary Duty;  Fraud; Fraudulent Concealment; Sale of Securities in Violation of Qualification Requirements;  Unfair Business Practice in Violation of California Business & Professions Code §17200 et Seq.

20. **Provide any additional information that you feel would be helpful to the court in processing your RICO claim**.

Plaintiffs are investigating additional acts of bank fraud.  Plaintiffs have discovered that as part of the Ennis HIE transaction, that false and fraudulent documents were submitting to One World Bank in an effort to finance that transaction.  In particular, a false loan application with the forged signature of Jasbir Sangha; together with a forged signature of Jasbir Sangha dated May 12, 2009 on One World Bank's loan committed letter; together with false financial information concerning the performance of the Ennis HIE; were all submitted to One World Bank.  Based in part on the foregoing, One World Bank approved the loan application for a $5,000,000 loan guaranteed by the United State Department of Agriculture's Rural Business -Cooperative Service.

///

///

1    Plaintiffs expect to uncover additional facts to support the claims alleged, as

2  well as additional detail about the structure and function of the enterprise.

3

4

5  DATED: July 14, 2011                    SMITH LAW FIRM
                                           A Professional Law Corporation
6

7
                                   By:            /s
8                                        CRAIG R. SMITH
                                         Attorneys for Plaintiffs
9                                        MANMOHAN CHHABRA, PARSHOTAM
                                         KAMBOJ, RANJIT SINGH, DARSHAN
10                                       SINGH, SHERBIR SANT, SURINDER-
                                         PAL ARORA, SURINDER-PAL ARORA,
11                                       SANTOKH ARORA and PACIFIC
                                         HOSPITALITY, LLC, a Texas limited
12                                       liability company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28