*csmith@SmithLF.com*

1 | **CRAIG R. SMITH** (State Bar No. 180338)
**SMITH LAW FIRM**
2 | A Professional Law Corporation
21550 Oxnard Street, Suite 760
3 | Woodland Hills, California 91367
Telephone:         (818) 703-6057
4 | Facsimile:   (818) 703-6058

5

6 | Attorneys for Plaintiffs Manmohan Chhabra, Parshotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and Pacific Hospitality, LLC, a Texas limited liability company

7

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 | MANMOHAN CHHABRA; PARSHOTAM KAMBOJ; RANJIT
11 | SINGH; DARSHAN SINGH; SHERBIR SANT; SURINDER-PAL ARORA;
12 | SANTOKH ARORA; and PACIFIC HOSPITALITY, LLC, a Texas limited
13 | liability company;

14 | Plaintiffs,

15 | vs.

16 | MEHUL PATEL aka MIKE PATEL; CHIRAG PATEL aka CHUCK PATEL;
17 | JAGMOHAN DHILLON; DHILLON MANAGEMENT, INC., a California
18 | Corporation; NEW HOPE HOSPITALITY, LLC, a Texas Limited
19 | liability company; NEWCREST HOTELS, LTD a Texas limited
20 | partnership; SAGESTAR MANAGEMENT GP, LLC, a Texas
21 | limited liability company; SAGESTAR HOLDINGS, LTD, a Texas limited
22 | partnership; ENNIS LODGING, LLC, a Texas limited liability company;
23 | DENISON LODGING, LLC, a Texas limited liability company; CORSICANA
24 | LODGING, LLC, a Texas limited liability company; and DOES 1 through 10,
25 | inclusive,

26 | Defendants.

CASE NO. CV11-03724 RGK (VBKx)

**FIRST AMENDED COMPLAINT FOR:**

1)  **BREACH OF FIDUCIARY DUTY;**
2)  **FRAUD;**
3)  **FRAUDULENT CONCEALMENT;**
4)  **FALSE PROMISE;**
5)  **VIOLATION OF 18 U.S.C. §1962(c) (RICO);**
6)  **UNFAIR BUSINESS PRACTICE IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 et seq.**

**DEMAND FOR JURY TRIAL**

- 1 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1       COMES NOW Plaintiffs Manmohan Chhabra, Parshotam Kamboj, Ranjit

2 Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and

3 Pacific Hospitality, LLC, a Texas limited liability company, for causes of action

4 against Defendants, and each of them, as follows:

5       **<u>JURISDICTION AND VENUE</u>**

6     1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.

7 1441, as being removed from the Los Angeles Superior Court.  The action was

8 removed pursuant to Federal Question Jurisdiction under 18 U.S.C. §1962 and

9 Diversity Jurisdiction pursuant to 28 U.S.C. §1332.

10     2.    Venue is appropriate in this District based on 28 U.S.C. §1391(b)(3).

11       **<u>THE PARTIES</u>**

12     3.    Plaintiff MANMOHAN CHHABRA ("Manmohan") is and at all times

13 relevant herein was a resident of the County of Los Angeles, State of California.

14     4.    Plaintiff PARSHOTAM KAMBOJ ("Parshotam") is and at all times

15 relevant herein was a resident of the County of Los Angeles, State of California.

16     5.    Plaintiff RANJIT SINGH ("Ranjit") is and at all times relevant herein

17 was a resident of the County of Los Angeles, State of California.

18     6.    Plaintiff DARSHAN SINGH ("Darshan") is and at all times relevant

19 herein was a resident of the County of Los Angeles, State of California.

20     7.    Plaintiff SHERBIR SANT ("Sherbit") is and at all times relevant

21 herein was a resident of the County of Los Angeles, State of California.

22     8.    Plaintiff SURINDER-PAL ARORA ("Surinder") is and at all times

23 relevant herein was a resident of the County of Los Angeles, State of California.

24     9.    Plaintiff SANTOKH ARORA ("Santokh") is and at all times relevant

25 herein was a resident of the County of Los Angeles, State of California.

26     10.    Plaintiff PACIFIC HOSPITALITY, LLC, ("Pacific Hospitality, LLC")

27 is a Texas limited liability company.

28

- 2 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1       11.    Plaintiffs are informed and believe and on the basis of said

2  information and belief allege that Defendant MEHUL PATEL aka MIKE PATEL

3  ("M. Patel") is and at all times relevant herein was a resident of Dallas, Texas.

4       12.    Plaintiffs are informed and believe and on the basis of said

5  information and belief allege that Defendant CHIRAG PATEL aka CHUCK

6  PATEL ("C. Patel") is and at all times relevant herein was a resident of Dallas,

7  Texas.

8       13.    Plaintiffs are informed and believe and on the basis of said

9  information and belief allege that Defendant JAGMOHAN DHILLON ("Dhillon")

10  was at all times prior to mid-2009, a resident of Stanislaus County, State of

11  California.

12       14.    Plaintiffs are informed and believe and on the basis of said

13  information and belief allege that Defendant DHILLON MANAGEMENT, INC.

14  ("DMI") is a California corporation with its principal place of business in Modesto,

15  California.

16       15.    Plaintiffs are informed and believe and on the basis of said

17  information and belief allege that Defendant NEW HOPE HOSPITALITY, LLC

18  ("NHH") is a Texas limited liability company with its principal place of business in

19  Texas.

20       16.    Plaintiffs are informed and believe and on the basis of said

21  information and belief allege that Defendant NEWCREST HOTELS, LTD

22  ("Newcrest") is a Texas limited partnership with its principal place of business in

23  Texas.

24       17.    Plaintiffs are informed and believe and on the basis of said

25  information and belief allege that Defendant SAGESTAR MANAGEMENT GP,

26  LLC, ("Sagestar") is a Texas limited liability company.

27

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

18.     Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendant SAGESTAR HOLDINGS, LTD ("Holdings"), is a Texas limited liability company.

19.     Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendant ENNIS LODGING, LLC ("Ennis") is a Texas limited liability company.

20.     Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendant DENISON LODGING, LLC ("Denison") is a Texas limited liability company.

21.     Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendant CORSICANA LODGING, LLC ("Corsicana") is a Texas limited liability company.

22.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10.  Plaintiffs are informed and believe and on the basis of said information and belief allege that all fictitiously named Defendants and each of them have some connection with the activities herein complained of, and are responsible in some way for the wrongful conduct herein alleged.

23.     Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants and each of them are, and at all times herein mentioned were, the agents, joint venturers, officers, members, representatives, servants, consultants or employees of their co-Defendants, and in committing the acts herein alleged, were acting within the scope of such affiliation with the knowledge, permission, consent or subsequent ratification of their co-Defendants.

24.     Plaintiffs are informed and believe and on the basis of said information and belief allege that M. Patel and C. Patel on the one hand, and Sagestar, Corsican and Holdings on the other hand, at certain times, all of which

- 4 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 | are relevant herein, have and had such unity of interest, and that M. Patel and C.

2 | Patel controlled and dominated the businesses of Sagestar, Corsicana, Newcrest,

3 | Ennis, Denison and Holdings, that there existed a unity of ownership, interest and

4 | identity between these Defendants (collectively the "Patel Defendants").

5 |     25.    Plaintiffs are informed and believe and on the basis of said

6 | information and belief allege that adherence to the fiction of a separate existence of

7 | Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings as entities distinct

8 | from M. Patel and C. Patel would permit an abuse of corporate privilege and would

9 | sanction fraud and promote injustice in that M. Patel and C. Patel were in fact so

10 | intertwined with Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings so as

11 | to make the Patel Defendants, Sagestar, Corsicana, Newcrest, Ennis, Denison and

12 | Holdings one and the same.  Plaintiffs are informed and believe and on the basis of

13 | said information and belief alleges that Sagestar, Corsicana, Newcrest, Holdings

14 | and Denison are mere shells and a sham.  Plaintiffs are informed and believe and

15 | on the basis of said information and belief alleges that Sagestar, Corsicana,

16 | Newcrest, Ennis, Denison and Holdings were, at certain relevant times herein, the

17 | alter-egos of M. Patel and C. Patel in that M. Patel and C. Patel used the assets of

18 | Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings for their own use,

19 | freely transferred property between them, commingled funds, and kept inadequate

20 | and deficient corporate records.

21 |     26.    Plaintiffs are informed and believe and on the basis of said

22 | information and belief allege that Dhillon on the one hand, and Starlite, New Hope,

23 | and DMI on the other hand, at certain times, all of which are relevant herein, have

24 | and had such unity of interest, and that controlled and dominated the businesses of

25 | Starlite, New Hope, and DMI that there existed a unity of ownership, interest and

26 | identity between these Defendants (collectively the "Dhillon Defendants").

27 |

28 |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

27. Plaintiffs are informed and believe and on the basis of said information and belief allege that adherence to the fiction of a separate existence of Starlite, New Hope, and DMI as entities distinct from Dhillon would permit an abuse of corporate privilege and would sanction fraud and promote injustice in that Dhillon was or is so intertwined with Starlite, New Hope, and DMI so as to make Dhillon, Starlite, New Hope, and DMI one and the same. Plaintiffs are informed and believe and on the basis of said information and belief allege that Starlite, New Hope, and DMI are mere shells and a sham. Plaintiffs are informed and believe and on the basis of said information and belief allege that Starlite, New Hope, and DMI were, at certain relevant times herein, the alter-egos of Dhillon in that Dhillon used the assets of Starlite, New Hope, and DMI for their own use, freely transferred property between them, commingled funds, and kept inadequate and deficient corporate records.

## BACKGROUND ALLEGATIONS

28. This case involves the fraud and other wrongful conduct perpetrated on the Plaintiffs as investors in six hotels owned and sold by the Patel Defendants and sold by Dhillon. In their Complaint, the Plaintiffs allege that Dhillon, working together with the Patel Defendants, caused Plaintiffs to invest approximately $2,015,000 and sign loan guaranties in the amount of $6,146,250 in connection with the sale by the Patel Defendants of four hotel properties in Texas– The Holiday Inn Express in Mt. Pleasant, Texas (the "Mt. Pleasant HIE"), the Hampton Inn in Corsicana, Texas (the "Corsicana Hampton"), the Holiday Inn Express in Corsicana, Texas (the "Corsicana HIE") and a Holiday Inn Express in Denison, Texas (the "Denison HIE").

29. M. Patel and C. Patel are partners and co-owners of Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings. The Patel Defendants are real estate developers who build and sell hotels in Texas. At all times relevant herein,

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 Dhillon was the acting in concert with the Patel Defendants, as their partner,

2 employee or undisclosed agent in the sale of the Patel Defendants hotel properties.

3 The Patel Defendants would pay Dhillion, directly or through his various entities,

4 profits denominated by the Patel Defendants as "finders fees" that ranged between

5 $250,000 to $750,000 for each sale transaction he arranged.  See paragraphs 89

6 through 98.  The Patel Defendants denominated the payments as "finder's fees" on

7 their checks to DMI and the Patel Defendants caused the escrow holder to

8 denominate the payments to DMI on escrow statements as "finder's fees."

9     30.    At the same time, Dhillon posed as Plaintiffs' partner in the various

10 transactions alleged herein, but concealed his relationship with the Patel

11 Defendants.

12     31.    Dhillon represented to the Plaintiffs that he negotiated deals with the

13 Patel Defendants; that the hotels were being purchase below fair market value; that

14 he was investing his own money in the transactions; and that he was not being paid

15 any commissions or finders fees.  All of Dhillon's representations were false.

16     32.    Dhillon would arrange financing for the transaction to pay off the

17 Patel Defendants, who in turn paid Dhillon his share of the profits.  Plaintiffs'

18 funds were used as the down payment necessary to qualify for those loans.

19 Plaintiffs are informed and believe and on the basis of said information and belief

20 allege that as part of that effort, forged signatures and false financial information as

21 to the hotel's performance and profitability was provided to lenders.  The secret

22 payments by the Patel Defendants to Dhillon were also concealed from the lenders,

23 as each contract represented and warranted that no undisclosed commissions or

24 finders fees were being paid as part of each transaction.

25     33.    The Defendants worked together to defraud Plaintiffs, by express

26 misrepresentations and concealment of facts to cause Plaintiffs to invest in the

27 subject transactions.

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Foundations of the Scheme**

34.    On March 27, 2007, Dhillon was introduced to Surinder and Santokh by Jasbir Sangha ("Sangha") in Surinder's Los Angeles offices.

35.    At the meeting, Dhillon described his successful partnership with Sangha in a hotel transaction in Palestine, Texas.  Dhillon said he was looking for other partners for hotel property acquisitions he was negotiating with some Texas hotel developers he had been doing business with for some time.

36.    At that March 2007 meeting in Surinder's office, Dhillon represented that he orchestrated several successful hotel property acquisitions in Texas hotels he had previously done with other Sikh Indians known by Surinder, Santokh and Sangha. Dhillon represented that these partners always earned at least 20% return on their investment.  Dhillon further represented that his partners made money even if funds were being borrowed on home equity lines or credit cards.

37.    Surinder, Santokh and Sangha are devout Sikh Indians.  Dhillon represented that he was a follower of Baba Ji Suraj Pal.  In Sikh Indian culture and religion, a Baba Ji is a very holy figure in Sikn Indian culture.  Dhillon represented that he had a close personal relationship with Baba Ji Suraj Pal.  He further represented that Baba Ji Suraj Pal would stay in his home in Modesto, California. Dhillon used his alleged devotion and relationship with Baba Ji Suraj Pal to make Surinder, Santokh and Sangha believe that Dhillon's honestly and trustworthiness was beyond repute.  Consistent with his representations, Dhillon demonstrated his devote religious orthodox practices, including wearing a turban and facial hair and observing a devout diet of avoiding meat and alcohol.

38.    Dhillon described several transactions involving hotels he owned in Texas and Nevada.  He also described his hotel management company DMI, which Dhillon used to manage day-to-day hotel business.  Dhillon represented that because of his many years of experience as an owner and operator, and because of

- 8 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 the economies of scale achieved by DMI, Dhillon's hotel investments consistently
2 made 20% return on investment.

3        39.    Dhillon further represented that he invested his own money in the
4 deals as "partner" with the other investors.  In reality, Plaintiffs would come to
5 discover that instead, Dhillon was in business with the Patel Defendants and was
6 paid millions of dollars for arranging the transactions with Plaintiffs.

7        40.    After the meeting, Dhillon, Surinder, Santokh and Sangha had lunch at
8 an Indian restaurant.  At lunch, Dhillon used his Sikh Indian culture and devoted
9 religious orthodox practices, including diet and observance of prayers, as part of
10 his confidence scheme.  Dhillon successfully persuaded Surinder and Santokh that
11 he was genuine.  As a result, Surinder and Santokh had the utmost of trust in
12 Dhillon.

13 **Sweetwater and Ennis Transactions**

14        41.    In or about July 2007, Dhillon presented to Surinder investments in
15 two soon to be built hotel properties: one being a Hampton Inn in Sweetwater,
16 Texas ("Sweetwater") and the other being a Holiday Inn Express in Ennis, Texas
17 ("Ennis").  Dhillon used these investment opportunities to lure Surinder and the
18 other Plaintiffs with promises of high returns and "guarantees that they could get
19 their money back at anytime within the first year" if they were unsatisfied.   Dhillon
20 presented the transaction to Santokh, Surinder and Sangha, Singha.  Dhillon
21 included one Harwant Dhillon as one of the buyers, to whom Dhillon represented
22 was his father.  At no time did any of the Buyers meet or have any prior contact
23 with Harwant Dhillon.

24        42.    Identical contracts for Sweetwater and Ennis were presented by
25 Dhillon to Santokh and Surinder in the form of that certain Contract for Sale.
26 Dhillon represented that he had already negotiated the price and therefore price was
27 non-negotiable.  The seller of Sweetwater was West Texas Hotels, LLC and the
28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  seller of Ennis was Ennis Lodging, LLC.  The buyers in both contracts were
2  Santokh and Surinder, and Roger Sangha and Singha.  At first, the contracts were
3  not acceptable to the Santokh and Surinder, who sought to renegotiate the terms.
4  For instance, the contacts did not contain typical provisions for contingencies, such
5  as for financing, franchise approval and valuation. Dhillon informed Surinder and
6  Santokh that the seller would not negotiate the form of the contract.  Dhillon said
7  he was already committed to purchasing the hotels and as pledge to Santokh,
8  Surinder and Sangha he would return 100% of the investment of any buyer in the
9  hotels at anytime.  This was done to induce Santokh and Surinder, Sangha and
10  Roger Singha to sign the contracts without contingencies.

11      43.    In order to build further confidence in the scheme, Dhillon
12  recommended the services of an attorney by the name of James Patterson
13  ("Patterson") to act on the Buyers' behalf in reviewing the Contract for Deed.
14  Dhillon concealed from the Buyers that Patterson was in truth working for Dhillon.
15  Patterson advised the Buyers to sign the Contract for Deed, which in fact was
16  signed by the Buyers in or about July 2007.  Furthermore, Dhillon advised Santokh
17  and Surinder to sign the contract and promised that if they were unsatisfied at any
18  time, Dhillon would give them their money back.  Accordingly, on or about July
19  30, 2007, Santokh and Surinder signed the Sweetwater and Ennis contracts in
20  Surinder's Los Angeles office.  Santokh and Surinder each delivered to Dhillon
21  $50,000.  Commencement of construction of the Sweetwater and Ennis deals was
22  indefinite.

23      44.    In May 2008, Santokh and Surinder demanded their money back.  M.
24  Patel returned their money in or about December 2008.

25  **Specific Allegation Pertaining To The Mt. Pleasant Transaction**

26      45.    In or about August 2007, Dhillon set up a meeting with the Plaintiffs,
27  Surinder, Manmohan, Parshotam, Ranjit, Darshan, Santokh and Sant to induce

28

- 10 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1   Plaintiffs to partner with Dhillon and each other in the purchase and operate a hotel
2   in Mt. Pleasant, Texas, referred to as Mt. Pleasant HIE.  The meeting was held in
3   Surinder's office in Los Angeles.  During the meeting, Dhillon described a hotel
4   purchase transaction he had negotiated with developers with whom he had done
5   several other deals.

6       46.    During the August 2007, meeting, Dhillon stated that there was a hotel
7   deal coming up that would throw off immediate profits. He stated M.Patel was the
8   owner of the Mt. Pleasant HIE with a partner, who M. Patel was in a transaction to
9   buy out that partner.  Dhillon said M. Patel, as owner, gave him detailed
10  information regarding the hotel's performance which was very profitable.  Dhillon
11  said M.Patel was a hotel developer and builder and did not like to operate hotels.
12  His main business was building and selling.  As a result, Dhillon was able to
13  negotiate a sale price of $7 million, which he said was well below the market price.

14      47.    Dhillon's  representations were false at the time the representations
15  were made.  First, M. Patel did not own Mt. Pleasant HIE and was not partners with
16  the then current owner, Charles and Sharon Helm.  Instead, in August 2007, the
17  Patel Defendants had the Mt. Pleasant HIE under contract with the Helms, together
18  with a parcel of undeveloped land in Mount Pleasant, Texas, for $6 million.  In
19  August 2007, the Patel Defendants and Dhillon intended only to flip the Mt.
20  Pleasant HIE to Plaintiffs for $7 million, and for the Patel Defendants to keep the
21  parcel of undeveloped land to build a competing hotel, and make a $1million profit.
22  The Patel Defendants took title to the Mt. Pleasant HIE on the same day they
23  transferred it to Plaintiffs.  They made the $1 million profit, and kept the
24  undeveloped hotel lot where they later built a La Quinta hotel in Mount Pleasant,
25  Texas.

26      48.    At the 2007 meeting, Dhillon further represented that his management
27  company would manage the hotel during their ownership and that based upon his
28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

business analysis based on actual revenue and expenses, the Plaintiffs could expect to make at least 20% return on their investment from hotel operations.  These representations were false and Dhillon knew them to be false at the time they were made.  Dhillon's analysis was not based on actual hotel revenues and expenses. Also, Dhillon never disclosed that the Patel Defendants were building the La Quinta or Defendants' knowledge that competing Hampton Inn was also being constructed nearby.   As a result, Dhillon knew that the revenue numbers for the Mount Pleasant HIE did not support a $7 million sale price, nor would it yield a 20% return for Plaintiffs.  Furthermore, at the time he represented that his management company would manage the hotel, Dhillon did not intend to have his management company manage the hotel and intended to terminate his and his management company's involvement with the hotel once the loans he had arranged were funded.

49.    At the August 2007 meeting Dhillon further  represented to Plaintiff that he would act on behalf of the partnership with respect to arranging and financing the transaction and that he would be contributing $140,000 of his own money into the deal.   These representations were false.  Dhillon never intended to contribute $140,000 of his own money into the deal.  Rather, Dhillon intended to use his position of trust to conceal the fact that he profited somewhere between $250,000 and $750,000 for arranging the transaction with Plaintiffs.

50.    At the August 2007 meeting, Dhillon further represented to Plaintiffs that  the Sellers were not paying Dhillon any commissions, finder's fees or other profits in connection with the transaction.  Once again, this representation was false as Dhillon and the Patel Defendants had, at all times, an agreement in place whereby Dhillon would receive a share of the profits from the transaction and Dhillon, in fact, received a share of the profits which Defendants labeled as a "finder's fee."

- 12 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

51.    Dhillon made each and every representation made at the August 2007 meeting with the intent to induce Plaintiffs, and each of them, to rely upon the truth of those representations in agreeing to enter into a partnership and to invest money in connection with the purchase of the hotel and its operation.

52.    At the August 2007, meeting, Dhillon orally proposed that he and the Plaintiffs enter into a partnership to purchase the Mt. Pleasant HIE and share in the profits, losses and management. Relying upon the truth of the representations made by Dhillon, Plaintiffs agreed to enter into the partnership and to invest in the purchase of Mt. Pleasant HIE.  Had Plaintiffs known that Dhillon's representations were false, and had Plaintiffs known the true facts, Plaintiffs, and each of them, would not have agreed to enter into the partnership or to otherwise contribute funds toward the Mt. Pleasant business operation.  At that time it was also agreed that DMI would be hired as a management company to manage the day-to-day operations of the Mt. Pleasant HIE.

53.    The August 2007 meeting spilled over into dinner at Olive Garden Restaurant in Northridge, California.  Once again, Dhillon used the dinner meeting to espouse his religious beliefs and practices, knowing that all of the Plaintiffs would gain substantial confidence from that.

54.    On or about August 20, 2007, Plaintiffs signed that certain Contract for Sale in Surinder's office.  The Contract for Sale was between Signature Hospitality, LLC as the seller, and Dhillon, Surinder, Santokh, Parshotam, Ranjit, Darshan, Manmohan and Sherbir as the buyers.  The Contract for Sale called for a closing date of December 1, 2007.  The Contract for Sale required a $100,000 deposit which was paid to Fidelity National Title Company in Dallas, Texas ("Fidelity").  The Contract for Sale represented and warranted that no finders fees were being paid.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

55.     Here again, Plaintiffs relied upon the representations made by Dhillon in entering the Contract for Sale. Had Plaintiffs known that Dhillon's representations were false and had Plaintiffs known the true facts, Plaintiffs, and each of them, would not have signed the Contract for Sale.

56.     On or about October 15, 2007, Dhillon called Chhabra, Sant and Santokh separately and advised that he was having trouble financing the transaction. Further, Dhillon advised that M. Patel's transaction with his partner was closing earlier than the December 1, 2007, closing date stated in the August Mt. Pleasant HIE Contract. He stated that the seller did not want to operate the hotel pending the closing of Plaintiffs' transaction. Accordingly, Dhillon said he was negotiating an agreement for seller financing. Dhillon told all the partners to come to Texas for the negotiations.

57.     All of the foregoing representations were false. While it was true that Dhillon was having trouble financing the transaction, Dhillon failed to disclose to Plaintiffs that the reason was that no lender would finance a transaction involving a $1 million price increase as part of a flip transaction. Finally, Dhillon was not negotiating seller financing, but instead he and Patel Defendants devised the use of the so-called Contract for Deed, which is nothing more than a land sale contract. The contract for deed was Defendants' scheme to: (1) close the transaction with Plaintiffs and immediately take their money; and (2) put some time between the $1 million price increase and the financing.

58.     On or about October 25, 2007 Chhabra, Kamboj, R. Singh, D. Singh, Sant and Santokh met with Dhillon and M. Patel in Dallas, Texas. At that time, Surinder participated in the meeting by telephone.

59.     At that meeting, Dhillon disclosed for the first time that he had formed Mount Pleasant Properties, LLC to carry out the transaction for the partners, and made all the Plaintiffs members according to their percentage partnership interests.

- 14 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Dhillon made himself the Manager of Mount Pleasant Properties, LLC and he
2  informed the Plaintiffs that he entered into the Contract for Deed on behalf of
3  Mount Pleasant Properties, LLC for the purchase of the Mt. Pleasant HIE.  Dhillon
4  and M. Patel explained to Plaintiffs how a Contract for Deed functioned and
5  explained that Dhillon had until March 2008 to arrange financing for the
6  transactions.  During that meeting, M. Patel said he was assisting Dhillon with
7  obtaining a loan from M. Patel's local lender contacts.

8        60.    The Contract for Deed required a down payment of $1.4 million.
9  Collectively, Plaintiffs deposited with Fidelity $1.26 million, by cashier's checks
10  and wired funds as follows:  Chhabra- $280,000;  Sant- $280,000;  D. Singh-
11  $280,000;  Kamboj- $140,000;  R. Singh- $140,000; and Pacific Hospitality, LLC-
12  $140,000.  Dhillon claimed to be investing $140,000.  Plaintiffs are informed and
13  believe that Dhillon invested only $10,000.

14        61.    Unbeknown to Plaintiffs, on October 26, 2007, the Patel Defendants
15  transaction with Charles and Sharon Helm for the Mt. Pleasant HIE and the
16  undeveloped land at $6 million closed.  Three hours later, Plaintiffs' transaction for
17  only the Mt. Pleasant HIE and for $7 million closed.  Plaintiffs' $1.24 million was
18  disbursed by Fidelity to the Patel Defendants at that time.  Had Plaintiffs known
19  that Defendants were engaged in a flip transaction whereby Defendants were
20  making in excess of $1 million, they never would have: (1) entered into a
21  partnership with Dhillon; (2) Signed the August Mt. Pleasant HIE Contract; (3)
22  Paid $100,000 into Fidelity in August 2007; (4) Paid $1.24 Million to Fidelity on
23  October 26, 2007; or (5) Signed personal guaranties obligating them to pay
24  $6,146,250 to Mutual Bank (see *infra*).

25        62.    The Contract for Deed represented and warranted that no finders fees
26  or commissions were being paid.  Despite that, Dhillon was paid somewhere
27
28                                                        - 15 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 between $250,000 to $750,000.  The check for $250,000 contains a notation in the
2 memo section stating "finders fee."

3     63.    Dhillon separately gave Sant wiring instructions to Fidelity for him to
4 use to make his investment of $67,942.88 into the Mount Pleasant HIE.  Plaintiffs
5 have recently discovered that Defendants used Sant's funds in an entirely separate
6 transaction for a hotel located in Waxahachie, Texas involving the Dhillon
7 Defendants and the Patel Defendants.

8     64.    Thereafter, Dhillon advised he was continuing to obtain bank
9 financing to fulfill the obligations of the Contract for Deed requiring that the seller
10 be paid in full by March 26, 2008.  Dhillon and DMI abandon all management
11 duties shortly after the loans funded.

12 **Specific Allegations Pertaining To The Corsicana Transactions**

13     65.    In or about October 2007, Dhillon presented to Plaintiff, Surinder and
14 Santokh another offer to partner with Dhillon in connection with two other hotel
15 properties.  This time it was two hotels on adjoining lots in Corsicana, Texas: A
16 Holiday Inn Express ("Corsicana HIE") and a Hampton Inn (the "Corsicana
17 Hampton").  The Corsicana HIE and the Corsicana Hampton are collectively
18 referred to as the ("Corsicana Properties").  Dhillon orally proposed to enter into a
19 partnership to purchase the Corsicana Properties and share in the profits, losses and
20 management.

21     66.    In or about October 2007, Dhillon advised Surinder and Santokh that
22 some of his partners did not have sufficient funds to complete their share of the
23 purchase.  Dhillon asked Surinder and Santokh to buy a 10% share of the
24 properties.  Dhillon asked for $75,000 immediately even if Surinder and Santokh
25 did not want to buy into the property and he would refund it later.  On or about
26 November 29, 2007, Dhillon emailed the wiring instructions for the Corsicana
27
28

- 16 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 | Properties purchase to Santokh.  In or about January 2008, Surinder and Santokh
2 | agree to buy a 10% interest, which is later increased to 17 percent.

3 |     67.    Dhillon represented to Surinder and Santokh that the sale price was
4 | $14.25 million, which was below the market price for the Corsicana Properties.
5 | However, Dhillon's representation was false.

6 |     68.    The contracts for the purchase of the Corsicana Properties revealed
7 | that the purchase price was actually $15.25 million.  However, Plaintiffs did not
8 | see the contracts used for the Corsicana Properties at any time before buying into
9 | the properties. While the contracts each contained representations and warranties
10 | that no finder's fees were being paid, the Patel Defendants paid the Dhillon
11 | Defendants $1,050,000 as "finders fees" for these transactions.  Defendants did not
12 | disclose to Plaintiffs the agreement between the Patel Defendants and Dhillon
13 | relating to the secret profits to be paid by Dhillon.  As a result of this arrangement,
14 | the price for the Corsicana Properties was overstated by at least $1 million.
15 | Newcrest was the seller of Corsicana HIE and title was delivered to Starlite; and
16 | Corsicana was the seller of Corsicana Hampton and title was delivered to New
17 | Hope.  Dhillon was the actual Manager of New Hope and the ostensible Manager
18 | of Starlite.  While the operating agreement for Starlite was purportedly signed by
19 | Dhillon's father Harminder Dhillon, the truth is that Dhillon was signing
20 | documents in the name of Harminder Dhillon.  Dhillon was using the name of
21 | Harminder Dhillon to conceal his involvement on the Corsicana HIE transaction.

22 |     69.    Dhillon further represented that the seller was not paying Dhillon any
23 | commissions, finders fees or other profits in connection with the transactions.  That
24 | representation was false.  At all times it was agreed and understood by and between
25 | Dhillon and the Patel Defendants that Dhillon would share in the profits with the
26 | Patel Defendants as part of the transaction.

27

28

- 17 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

70.     Dhillon made the aforementioned representations regarding the Corsicana Transaction with the intent to induce Plaintiffs, Surinder and Santokh, to partner with Dhillon and to contribute funds toward the purchase of the Corsicana Properties.  Relying on the truth of Dhillon's representation, Surinder and Santokh – by and through Pacific Hospitality, LLC, invested $510,000.  Had Plaintiffs Surinder and Santokh known the truth of Dhillon's representations and known of the facts concealed by Dhillon, Plaintiffs would not have partnered with Dhillon and would not have contributed funds toward the purchase of the Corsicana Properties.

71.     Newcrest and Corsicana took their profits from the transactions by directing Fidelity to wire transfer the funds.  The Patel Defendants received wire transfers from Fidelity in connection with the Corsicana Properties, including but not limited to: $100,000 on May 23, 2007; $75,000 on July 10, 2007; $50,000 on July 18, 2007; $75,000 on November 2, 2007; $100,000 on November 5, 2007; $150,000 on December 20, 2007.

72.     On January 24, 2008, Dhillon made Pacific Hospitality, LLC a member in Starlite and New Hope.

**Specific Allegations Pertaining to The Denison Transaction**

73.     In or about April 2008, Dhillon pitched another partnership opportunity to Plaintiffs, Kamboj, Ranjit, Surinder and Santokh involving the purchase of a newly constructed Holiday Inn Express in Denison, Texas ("Denison HIE").    The purchase price was $7.5 million.   Dhillon represented to Parshotam, Ranjit, Surinder and Santokh that he had already negotiated the $7.5 million purchase price and that $7.5 million was below market price for the Denison HIE. At that meeting, Dhillon orally proposed that he and Kamboj, Ranjit and Pacific Hospitality, LLC enter into a partnership to purchase the Denison HIE and share in the profits, losses and management. Relying upon the truth of the representations

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 made by Dhillon, Kamboj, Ranjit and Pacific Hospitality, LLC agreed to enter into
2 the partnership and to invest in the purchase of Denison HIE with Dhillion.  Had
3 Plaintiffs known that Dhillon's representations were false, and had Plaintiffs
4 known the true facts, Kamboj, Ranjit and Pacific Hospitality, LLC would not have
5 agreed to enter into the partnership or to otherwise contribute funds toward the
6 Denison HIE.

7     74.    Like the Mt. Pleasant HIE transaction, Defendants again used a
8 Contract for Deed land sale contract.  On the basis of Dhillon's representations,
9 Kamboj paid to Fidelity $80,000, R. Singh paid to Fidelity $80,000 and Pacific
10 Hospitality, LLC paid to Fidelity $85,000, all toward the purchase and operations
11 of the Denison HIE.  Some of the funds were wired to Fidelity.  Dhillon
12 represented and warranted that he was investing $350,000 of his own money.  In
13 order to deceive Plaintiffs, Dhillon issued a check on April 14, 2008 drawn on
14 DMI's account for $350,000 and provided the check to the Patel Defendants.  The
15 Patel Defendants never attempted to negotiate the check.

16     75.    At this time, Dhillon further represented to Plaintiffs that the seller
17 was not paying Dhillon any commissions, finders fees or other profits in
18 connection with the transactions.  That representation was false.  At all times it was
19 agreed and understood by and between Dhillon and the Patel Defendants that
20 Dhillon would share in the profits with the Patel Defendants as part of the
21 transaction.

22     76.    Dhillon made the representations regarding Denison with the intent to
23 induce Kamboj, R. Singh and Pacific Hospitality, LLC to enter into the partnership
24 and to induce Plaintiffs to contribute funds toward the purchase Denison. Relying
25 upon the truth of Dhillon's representations, Kamboj, R. Singh and Pacific
26 Hospitality paid $245,000 toward the purchase and operations of the Denison HIE.
27 Had Kamboj, R. Singh and Pacific Hospitality known the true facts and had
28

- 19 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Kamboj, R. Singh and Pacific Hospitality known of Dhillon's arrangement to

2  receive secret profits in connection with the transaction, Kamboj, R. Singh and

3  Pacific Hospitality would not have contributed the aforementioned funds.

4      77.    The Patel Defendants turned over possession of the property to

5  Plaintiffs on April 11, 2008. The Contract for Deed required that the Patel

6  Defendants be paid in full by January 11, 2009.

7      78.    Ultimately, financing to pay off the Patel Defendants could not be

8  obtained because the sale price was far in excess of what the hotel revenues would

9  substantiate. Because a land sale contract was used, Patel Defendants reclaimed

10 title and instituted unlawful detainer proceedings to remove Plaintiffs from the

11 hotel. The Patel Defendants took back the Denison HIE in July 2009.

12 **The Mount Pleasant Bank Financing**

13     79.    In February 2008, Dhillon told Plaintiffs that financing could not be

14 arranged for Mount Pleasant HIE with Dhillon as Manager because of SBA

15 individual loan limitations. A new entity was formed.

16     80.    In May 2008, the Mount Pleasant HIE was financed by a first loan by

17 Mutual Bank in the amount of $4,346,250 and a second loan by Mutual Bank and

18 guarantied by the SBA in the amount of $1,800,000. Mutual Bank, and this loan,

19 have since been taken over by the FDIC. These loans were arranged by Dhillon

20 through his affiliate Todd Hanan of Legacy Funding. In order to close these loans

21 Surinder, Santokh, Ranjit, Parshotam, Manmohan and Pacific Hospitality, LLC

22 were required to personally guaranty loan obligations in the amount of $6,146,250.

23 Dhillon, however, maneuvered out of any personal liability on those loans.

24     81.    On the eve of the funding of these loans, Plaintiffs discovered that the

25 Dhillon Defendants and the Patel Defendants concealed from Plaintiffs the flip

26 transaction and the $1 million profit. Because the Defendants already had

27 Plaintiffs' $1.24 million, Plaintiffs were required to proceed or they would lose the

28

- 20 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  $1.24 million already paid to Fidelity.  In any event, Plaintiffs believed that the
2  lender was provided accurate information concerning the transaction.  On May 20,
3  2008, Fidelity wire transferred $980,991.32 to the Patel Defendants in connection
4  with the Mount Pleasant HIE transaction. Dhillon and DMI abandon all
5  management duties shortly after the loans funded.  On April 30, 2010, United
6  Central Bank, successor to Mutual Bank (through the FDIC) declared a default on
7  the loan and commenced proceedings to foreclose on Mt. Pleasant.  Also, on June
8  26, 2011, the SBA made demand upon Surinder, Santokh, Ranjit, Parshotam,
9  Manmohan and Pacific Hospitality, LLC, pursuant to the guaranties.

10  **The Corsicana HIE Bank Financing**

11      82.    The Corsicana HIE transaction was financed in part by a loan arranged
12  by Dhillon from Temecula Valley Bank.  A first loan by Temecula Valley Bank in
13  the amount of $4,426,423, and a second loan by Bank of Las Vegas in the amount
14  of $2,000,000.  These loans were arranged by Dhillon through his affiliate Todd
15  Hanan of Legacy Funding.

16  **The Corsicana Hampton Bank Financing**

17      83.    The Corsicana Hampton transaction was financed in part by a loan
18  arranged by Dhillon from Excel Bank in the amount of $5,000,000 through a
19  United States Department of Agriculture loan guarantee program.  The Patel
20  Defendants carried back of $1,320,000 pending a loan being arranged by
21  Defendants.

22      84.    Plaintiffs are informed and believe and based upon said information
23  and belief allege that in the course of obtaining financing from Excel Bank, Dhillon
24  submitted false financial information about the Corsicana Hampton to Excel Bank.
25  Such information and believe is based upon portions of a profit and loss statement
26  signed by Dhillon obtained by Plaintiffs which indicated that false revenue and
27  profitability numbers were submitted.

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**One World Bank Fraud**

85.     In or about August 2009, Sangha discovered that his signatures on the loan documents for the loan to pay off the Patel Defendants on the Ennis HIE transaction were forged and that financials used by the bank to support the approval of a $5,000.000 loan were false.  This revelation blew the lid off the entire scam and the Defendants immediately went into action to put out the fire.

86.     The unraveling of the events concerning the Ennis HIE loan fraud caused Plaintiffs to demand their money back from the various transactions. Defendants refused.

87.     In or about August or September 2009, Elhouty revealed to Plaintiffs that he obtained damaging information about Defendants' scheme.  As a result, M. Patel and C. Patel flew to Los Angeles to have a meeting with Elhouty concerning the Denison HIE.  M. Patel made a second trip to Los Angeles in October 2009, which resulted in his agreement, for the Patel Defendants, to pay Elhouty $1,100,000.

**Defendants' Share in Profits**

88.     In or about 2010, Plaintiffs discovered the secret relationship between the Patel Defendants and the Dhillon Defendants.  Plaintiffs discovered that the Patel Defendants were paying the Dhillon Defendants millions of the dollars in profits denominated by the Patel Defendants as so-called "finders fees" for selling the various properties to Plaintiffs.  For many of the same transactions, the Patel Defendants paid their real estate broker only a small fraction of what they paid Dhillon.

    1.     **Patels Secretly Pay Dhillon a "Finders Fees" For Mount Pleasant**

89.     The Contract for Deed dated October 27, 2007 expressly represents and warrants that no "finders fees" were being paid.  Contrary to that

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  representation, the Patel Defendants paid DMI $250,000 by check dated May 28,

2  2008.  The memo section of the check states "finders fees."

3      90.   Plaintiffs are informed and believe and based upon said information

4  and belief allege that the Patel Defendants made a further payment to the Dhillon

5  Defendants in connection with the Mount Pleasant Transaction.  DMI's Wells

6  Fargo bank statement for the period ending October 31, 2007, establishes that on

7  October 29, 2007, Fidelity wire transferred $500,000 to Dhillon's account.

8      91.   At no time did Defendants disclose to Plaintiffs that any of the Dhillon

9  Defendants were being paid anything from anybody in connection with the Mount

10  Pleasant HIE transaction.  In fact it was the complete opposite.  Dhillon represented

11  to Plaintiffs and to Mutual Bank that he contributed $140,000 as capital.

12      92.   Plaintiffs are informed and believe and based upon said information

13  and belief allege that Defendants did not disclose to Mutual Bank any payments

14  between the Patel Defendants and the Dhillon Defendants in connection with the

15  Mount Pleasant HIE transaction.   This information and belief is based upon the

16  fact that the payments were actually made, but were made outside of escrow and

17  were paid to DMI, Dhillon's management company.

18      **2.**    **Patels Secretly Pay Dhillon a "Finders Fee" for Corsicana HIE**

19      93.   At no time did Defendants disclose to Plaintiffs that any of the Dhillon

20  Defendants were being paid anything from anybody in connection with the

21  Corsicana HIE.  In fact, Dhillon represented to Surinder and Santokh back in

22  November 2007 that he was investing his own money into the transaction. Despite

23  that representation, the Patel Defendants secretly paid Dhillon $550,000.  Like the

24  Mt. Pleasant money, these funds were transmitted by wire transfer from Fidelity to

25  Dhillon on or about January 25, 2008.

26      94.   Plaintiffs are informed and believe and based upon said information

27  and belief allege that Defendants did not disclose to Temecula Valley Bank any

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 payments between the Patel Defendants and the Dhillon Defendants in connection
2 with the Corsicana HIE transaction.  This information and belief is based upon the
3 fact that the payments made to DMI and Dhillon's management company were not
4 disclosed on the buyer's closing statement, which is what is submitted to the lender
5 for funding.

6     **3.**     **Patels Secretly Pay Dhillon a "Finders Fee" for Corsicana**
7                **Hampton**

8      95.    For the Corsicana Hampton, Dhillon was paid $500,000 directly by the
9 Patel Defendants and outside of the Fidelity escrow.

10      96.    At no time did Defendants disclose to Plaintiffs that any of the Dhillon
11 Defendants were being paid anything from anybody in connection with the
12 Corsicana Hampton.  In fact, it was the complete opposite.  Again, Dhillon
13 represented to Surinder and Santokh back in November 2007 that he was investing
14 his own money into the transaction.

15      97.    Plaintiffs are informed and believe and based upon said information
16 and belief allege that Defendants did not disclose to Temecula Valley Bank any
17 payments between the Patel Defendants and the Dhillon Defendants in connection
18 with the Corsicana HIE transaction.   This information and belief is based upon the
19 fact that the payments were actually made, but were made outside of escrow and
20 were paid to DMI, Dhillon's management company.

21 **Defendants Wrongly Obtain Pacific Hospitality LLC's Interest in New Hope**

22      98.    In October 2009, M. Patel came to Los Angeles again to meet with
23 Elhouty who attended on his behalf and on behalf of Surinder, Santokh, Kamboj,
24 R, Singh and Pacific Hospitality, LLC.  At that time, Defendants were working to
25 refinance the Patel Defendants' $1,320,000 carry-back financing used to
26 consummate the sale transaction back in January 2008.  With Pacific Hospitality,
27 LLC as a member, however, its consent to the transaction was required.  As a result

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 of the revelations regarding Defendants wrongful activities, Surinder and Santokh,
2 on behalf of Pacific Hospitality, LLC refused to consent to the transaction.

3     99.    At the October 2009 meeting with Elhouty, M. Patel for himself and
4 claiming to act on behalf of the other Defendants, represented that Defendants
5 would pay Pacific Hospitality $510,000 with respect to the Corsicana Properties,
6 and pay Pacific Hospitality, LLC, Kamboj and R. Singh $245,000 with respect to
7 the Denison HIE in exchange for an assignment of Pacific Hospitality, LLC interest
8 in New Hope Hospitality, LLC.  Defendants sought the assignment so that Pacific
9 Hospitality, LLC's consent would no longer be needed for the Patel Defendants'
10 refinancing of the carry-back financing referenced above.  Patel represented that
11 the payments would be made as follows: $410,000 by promissory notes issued by
12 Dhillon, Gurender Sahani and Tarlochan S. Kataria, which notes were to be
13 secured by second trust deeds on certain hotel properties, and $100,000 cash paid
14 by M. Patel.  Defendants caused written agreements to be prepared memorializing
15 the foregoing, including that certain Assignment of Membership Interest
16 Agreement (the "New Hope Assignment") which was provided to Surinder for
17 signature.

18     100.    Relying upon Defendants' representation and promises, Pacific
19 Hospitality LLC executed the New Hope Assignment assigning Pacific Hospitality,
20 LLC's interest in New Hope.  Surinder emailed the New Hope Assignment to M.
21 Patel with specific instructions that he could not use it unless and until all
22 agreements concerning repayment to Pacific Hospitality, LLC, Kamboj and R.
23 Singh were finalized, executed and delivered by all parties.

24     101.    Following transmittal of the New Hope Assignment, Surinder
25 discovered that Defendants had impaired the security to be used to secure payment
26 of the $410,000 promissory notes by placing false liens against the properties.
27 Those false liens wiped out any equity that could have secured the repayment.
28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

102. Despite the fact that the transaction was never consummated, Defendants used the New Hope Assignment to obtain an SBA guaranteed loan used to pay off the Patel Defendants' loan.

103. Had Plaintiffs known Defendants' promises were false at the time they were made, Pacific Hospitality LLC would not deliver the New Hope Assignment to M. Patel.

## FIRST CLAIM FOR RELIEF

## FOR BREACH OF FIDUCIARY DUTY

### Against All Defendants

104. Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 103 above, as though fully set forth herein.

105. At all times relevant herein, Dhillon was acting on behalf of all Defendants in his dealings with Plaintiffs.

**Mt. Pleasant HIE**

106. Dhillon was a partner with Plaintiffs in the Mt. Pleasant HIE transaction. Dhillon later unilaterally formed Mt. Pleasant Properties, LLC and placed the partnership interests into the limited liability company, with Dhillon as Manager. As a result, Dhillon owed Plaintiffs a fiduciary duty to act in the highest of good faith and to act in a fair, honest and open manner.

107. Defendants breached that duty, by, among other things:

    a. Failing to disclose his relationship between the Defendants;

    b. Failing to disclose the $1 million price increase for Mount Pleasant HIE;

    c. That Dhillon never intended to invest $140,000 of his own money. Instead, Dhillon was being paid profits by the Patel Defendants from, *inter alia*, funds invested by Plaintiffs.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

d.    Using Sant's down payment money for the Mount Pleasant HIE for Defendants' other transaction for a hotel transaction in Waxihachie, Texas, not involving Plaintiffs;

e.    Failing to disclose all material information he had concerning the transaction, including

     i.    The sale price was not below market, but was well above the $6 million that the Patel Defendants paid. In addition to the Mt. Pleasant HIE, the $6 million purchase price also included an undeveloped hotel lot (the Patel Defendants would later construct a competing hotel).

     ii.    That a competing Hampton Inn was opening nearby the Mt. Pleasant HIE.

     iii.    That the Patel Defendants intended to construct and operate a competing hotel, so the revenue numbers for the Mt. Pleasant HIE did not reflect what Plaintiffs could expect.

     iv.    Dhillon never intended to manage the day-to-day operations of the hotel once the loans he arranged were funded.

f.    That the sales price was inflated to, *inter alia*, pay secret profits to Dhillon;

g.    Dhillon's self-dealing in receiving undisclosed profits.

**Corsicana Properties**

108.   Dhillon was the Manger of New Hope and was the ostensible Manager of Starlite. As a result, Dhillon owed Pacific Hospitality, LLC a fiduciary duty to act in the highest of good faith and to act in a fair, honest and open manner.

109.   Defendants breached that duty, by, among other things:

- 27 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

a.    Failing to disclose his relationship between the Defendants;

b.    Failing to disclose the $1 million price increase between the Corsicana HIE and Corsicana Hampton;

c.    Failing to disclose all material information he had concerning the transaction, including that the sale price was well above market.

d.    That the sales price was inflated to, *inter alia*, pay secret kickbacks to Dhillon;

e.    Dhillon's self-dealing in receiving undisclosed kickbacks.

**The Denison HIE**

110.   Dhillon was partners with Kamboj, R, Singh and Pacific Hospitality, LLC in the Denison HIE transaction. As a result, Dhillon owed Kamboj, R, Singh and Pacific Hospitality, LLC a fiduciary duty to act in the highest of good faith and to act in a fair, honest and open manner.

111.   Defendants breached that duty, by, among other things:

a.    Failing to disclose his relationship between the Defendants;

b.    That the sales price was inflated to, *inter alia*, pay secret kickbacks to Dhillon;

c.    Dhillon's self-dealing in receiving undisclosed kickbacks.

**As to All Transactions**

112.   Defendants and other unnamed co-conspirators, knowingly and willfully conspired and agreed among themselves and worked in concert with one another toward the common goal of damaging Plaintiffs by the aforementioned breaches of fiduciary duty. The actions taken in furtherance of the conspiracy resulted in direct benefits to Defendants in that they have received personal financial benefits they would not have otherwise received. The actions of Defendants resulted in direct harm to Plaintiffs.

- 28 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

113.   Further, Defendants aided and abetted the breaches of fiduciary duty by Dhillon by knowingly giving substantial assistance or encouragement to Dhillon in the commission of those acts.

114.   As a direct and proximate result of the conduct of Defendants, Plaintiffs have been damaged in an amount according to proof at trial, but in excess of the following amounts:

| Name | Mt. Pleasant HIE | Corsicana HIE and Hampton | Denison HIE | Total |
|---|---|---|---|---|
| Chhabra | $280,000 | | | $280,000 |
| Sant | $280,000 | | | $280,000 |
| D. Singh | $280,000 | | | $280,000 |
| Kamboj | $140,000 | | $80,000 | $220,000 |
| R. Singh | $140,000 | | $80,000 | $220,000 |
| Pacific Hosp. | $140,000 | $510,000 | $85,000 | $735,000 |
| | | | **TOTAL** | **$2,015,00** |

115.   In addition to the foregoing, each of the Plaintiffs signed personal guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount of $1,800,000.

116.   In addition to the foregoing, Plaintiffs are entitled to interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.

117.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants' conduct was taken with the intent to injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and property. Plaintiffs are informed and believe and on the basis of said information and belief allege that such fraudulent conduct constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to

- 29 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 | California *Civil Code* §3294. As such, Plaintiffs are entitled to punitive damages
2 | and exemplary damages against Defendants herein for the sake of example and to
3 | punish Defendants for their unlawful conduct.

### SECOND CLAIM FOR RELIEF

### FOR FRAUD

### Against all Defendants

7 | 118. Plaintiffs incorporate by this reference each and every allegation
8 | contained in paragraphs 1 through 117 above, as though fully set forth herein.

**A.  Mt. Pleasant Transaction Misrepresentations**

11 | 119. Defendants made the misrepresentations as alleged herein concerning
12 | the Mt. Pleasant HIE transaction, including but not limited to the allegations
13 | contained in paragraphs 46, 47, 48, 49, 50, 50, 51, 56, 57, 58, 59, and 60.

**Intent to Defraud**

15 | 120. Defendants made each and every representation made at the August
16 | 2007 meeting with the intent to induce Plaintiffs, and each of them, to rely upon the
17 | truth of those representations in agreeing to enter into a partnership and to invest
18 | money in connection with the purchase of the Mt. Pleasant HIE and its operation.
19 | Defendants made each and every representation in the October 15, 2007 telephone
20 | call and the October 26, 2007 meeting with the intent to induce Plaintiffs to pay
21 | $1.26 million into Fidelity.

**Reliance**

23 | 121. Plaintiffs' relied upon the truth of the representations made by Dhillon
24 | at the August 2007, meeting in agreeing to enter into a partnership with Dhillon
25 | concerning the Mt. Pleasant HIE, in signing the August Mt. Pleasant Contract, in
26 | paying $100,000 to Fidelity as the deposit, and in paying into Fidelity  $1.26
27 | million.  Had Plaintiffs known that Dhillon's representations were false and had

- 30 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1   Plaintiffs known the true facts, they never would have: (1) entered into a
2   partnership with Dhillon; (2) Signed the August Mt. Pleasant HIE Contract; (3)
3   Paid $100,000 into Fidelity in August 2007; (4) Paid $1.24 Million to Fidelity on
4   October 26, 2007; or (5) Signed personal guaranties obligating them to pay
5   $6,146,250 to Mutual Bank.

6       122.   Dhillon exploited Plaintiffs devout religious beliefs and practices to
7   cause Plaintiffs to rely on Defendants' representations.  Morever, Dhillon used his
8   claimed experience and expertise in order to induce Plaintiffs to rely on
9   Defendants' representations.  Moreover, Plaintiffs had no information as to the real
10  estate market in Texas, and in particular the hotel real estate market in Texas.
11  Accordingly, Plaintiffs were justified in relying on Dhillon and the other
12  Defendants.

13  **Damages**

14      123.   As a result of Defendants conduct, Plaintiffs suffered damages.
15  Collectively, Plaintiffs deposited with Fidelity $1.26 million, by cashier's checks
16  and wired funds as follows:  Chhabra- $280,000;  Sant- $280,000;  D. Singh-
17  $280,000;  Kamboj- $140,000;  R. Singh- $140,000; and Pacific Hospitality, LLC-
18  $140,000.

19      124.   In addition to the foregoing, each of the Plaintiffs signed personal
20  guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual
21  Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount
22  of $1,800,000.

23  **B.**     <u>**The Corsicana Property Transactions**</u>

24  **Misrepresentations**

25      125.   Defendants made the misrepresentations as alleged herein concerning
26  the Corsicana Property transactions, including, but not limited to, the allegations
27  contained in paragraphs 65 through 72.

28

- 31 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Intent to Defraud**

120.   Defendants made each and every one of the above misrepresentations with the intent to induce Pacific Hospitality, LLC to rely upon the truth of those representations in agreeing to invest $510,000 into the Corsicana HIE and Corsicana Hampton properties.

121.   Further, M. Patel falsely promised to pay Pacific Hospitality $510,000 and pay Pacific Hospitality, LLC, Kamboj and R. Singh $245,000 in order to induce Pacific Hospitality, LLC to give M. Patel that certain Assignment of Membership Interest Agreement assigning Pacific Hospitality, LLC's interest in New Hope Hospitality, LLC to Dhillon, Gurender Sahani and Tarlochan S. Kataria.

**Reliance**

122.   Pacific Hospitality, LLC relied upon the truth of the representations made by Dhillon in agreeing invest $510,000 into the Corsicana HIE and Corsicana Hampton properties.  In reliance, Pacific Hospitality, LLC paid $484,500 into Fidelity separately invested an additional $16,150.

123.   Dhillon exploited Plaintiffs devout religious beliefs and practices to cause Plaintiffs to rely on Defendants' representations.  Morever, Dhillon used his claimed experience and expertise in order to induce Plaintiffs to rely on Defendants' representations.  Moreover, Plaintiffs had no information as to the real estate market in Texas, and in particular the hotel real estate market in Texas.  Accordingly, Plaintiffs were justified in relying on Dhillon and the other Defendants.

124.   Dhillon exploited Surinder and Santokh's devout religious beliefs and practices to cause them to rely on Defendants' representations.  Morever, Dhillon used his claimed experience and expertise in order to induce Plaintiffs to rely on Defendants' representations.  Moreover, Plaintiffs had no information as to the real estate market in Texas, and in particular the hotel real estate market in Texas.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 Accordingly, Plaintiffs were justified in relying on Dhillon and the other

2 Defendants.

3 **Damages**

4      125.   As a result of Defendants conduct, Pacific Hospitality, LLC suffered

5 damages in the amount of $510,000.

6 **C.      The Denison HIE Transaction**

7 **Misrepresentations**

8      126.   Defendants made the misrepresentations as alleged herein concerning

9 the Denison HIE transaction, including but not limited to the allegations contained

10 in paragraphs 73 through 77.

11 **Intent to Defraud**

12      120.   Defendants made each and every one of the above misrepresentations

13 with the intent to induce Parshotam, Ranjit and Pacific Hospitality, LLC to invest

14 $245,000 into the Denison HIE as follows: Kamboj- $80,000; R. Singh- $80,000;

15 and Pacific Hospitality, LLC– $85,000.

16 **Reliance**

17      121.   Parshotam, Ranjit and Pacific Hospitality, LLC relied upon the truth of

18 the representations made by Dhillon in or about April 2008 in agreeing to invest

19 $245,000 into the Denison HIE.

20      122.   Dhillon exploited Plaintiffs devout religious beliefs and practices to

21 cause Plaintiffs to rely on Defendants' representations.  Morever, Dhillon used his

22 claimed experience and expertise in order to induce Plaintiffs to rely on

23 Defendants' representations.  Moreover, Plaintiffs had no information as to the real

24 estate market in Texas, and in particular the hotel real estate market in Texas.

25 Accordingly, Plaintiffs were justified in relying on Dhillon and the other

26 Defendants.

27

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

123.   Dhillon exploited Plaintiffs' devout religious beliefs and practices to cause them to rely on Defendants' representations.  Morever, Dhillon used his claimed experience and expertise in order to induce Plaintiffs to rely on Defendants' representations.  Moreover, Plaintiffs had no information as to the real estate market in Texas, and in particular the hotel real estate market in Texas. Accordingly, Plaintiffs were justified in relying on Dhillon and the other Defendants.

**Damages**

124.   As a result of Defendants conduct, Pacific Hospitality, LLC suffered damages in the amount of $85,000, Kamboj suffered damages in the amount of $80,000 and R. Singh suffered damages in the amount of $80,000.

**As Additional Damages**

125.   In addition to the foregoing, Plaintiffs are entitled to interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.

126.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants' conduct was taken with the intent to injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and property.  Plaintiffs are informed and believe and on the basis of said information and belief allege that such fraudulent conduct constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to California *Civil Code* §3294.  As such, Plaintiffs are entitled to punitive damages and exemplary damages against Defendants herein for the sake of example and to punish Defendants for their unlawful conduct.

///
///
///

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**THIRD CLAIM FOR RELIEF**

**FOR FRAUDULENT CONCEALMENT**

Against all Defendants

127.   Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 126 above, as though fully set forth herein.

128.   Defendants owed a duty to disclose all facts and information concerning the transactions.  That duty arose from (1) Dhillon's fiduciary relationship with Plaintiffs (see paragraphs 52, 59, 65, 72 and 73).  Furthermore, Dhillon asserted as a fact that which he knew to be untrue.  Finally, Dhillon suppressed facts after giving Plaintiffs information which was likely to mislead them by suppressing such facts.

129.   Defendants should have disclosed, including but not limited to: (1) Defendants' relationship to one another as alleged herein; (2) Defendants' financial arrangements between themselves as alleged herein, including but not limited to the secret kickbacks; (3) Defendants' self-dealing as alleged herein; (4) That Defendants were engaged in a flip of the Mount Pleasant HIE as alleged herein; (5) The inflated value of the real estate being purchased as alleged herein as alleged herein; and (6) Defendants' competing businesses in same market as alleged herein;

130.   Defendants intentionally concealed the above-referenced facts from Plaintiffs.   Defendants concealed their financial arrangements by (1) including in each contract that no finders fees were being paid; (2) by not disclosing the payments made by the Patel Defendant to the Dhillon Defendants despite the duty to disclose; and (3) feigning investments by Dhillon by claiming to have made them outside of the various escrows.  Defendants concealed the flip of the Mount Pleasant HIE by (1) concealing that the Patel Defendants did not own the property at the time they contracted to sell it; (2) representing to Plaintiffs that Mike Patel

- 35 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

was partners with the current owner; and (3) representing to Plaintiffs that they needed to close in October 2007 because of a partnership buyout involving Mike Patel.  Defendants concealed the $1 million price increase of the Mount Pleasant HIE.  Defendants concealed that they used Sant's funds for the Mount Pleasant HIE transaction in Defendants' transaction for a hotel located in Waxahachie, Texas.

131.  Defendants and other unnamed co-conspirators, knowingly and willfully conspired and agreed among themselves and worked in concert with one another toward the common goal of damaging Plaintiffs by the aforementioned fraud.  The actions taken in furtherance of the conspiracy resulted in direct benefits to Defendants in that they have received personal financial benefits they would not have otherwise received.  The actions of Defendants resulted in direct harm to Plaintiffs.

132.  Further, Defendants aided and abetted the fraud by Dhillon by knowingly giving substantial assistance or encouragement to Dhillon in the commission of those acts.

133.  As a direct and proximate result of the conduct of Defendants, Plaintiffs have been damaged in an amount according to proof, but in excess of the following amounts:

| Name | Mt. Pleasant HIE | Corsicana HIE and Hampton | Denison HIE | Total |
|---|---|---|---|---|
| Chhabra | $280,000 | | | $280,000 |
| Sant | $280,000 | | | $280,000 |
| D. Singh | $280,000 | | | $280,000 |
| Kamboj | $140,000 | | $80,000 | $220,000 |
| R. Singh | $140,000 | | $80,000 | $220,000 |
| Pacific Hosp. | $140,000 | $510,000 | $85,000 | $735,000 |
| | | | **TOTAL** | **$2,015,00** |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

134.   In addition to the foregoing, each of the Plaintiffs signed personal guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount of $1,800,000.

135.   In addition to the foregoing, Plaintiffs are entitled to interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.

136.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants' conduct was taken with the intent to injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and property.  Plaintiffs are informed and believe and on the basis of said information and belief allege that such fraudulent conduct constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to California *Civil Code* §3294.  As such, Plaintiffs are entitled to punitive damages and exemplary damages against Defendants herein for the sake of example and to punish Defendants for their unlawful conduct.

## FOURTH CLAIM FOR RELIEF

### FALSE PROMISE

Against all Defendants

137.   Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 136 above, as though fully set forth herein.

138.   Defendants promise to pay Pacific Hospitality $510,000 in exchange for an assignment of Pacific Hospitality, LLC's interest in New Hope as alleged in paragraphs 99 through 104.  Defendants made the promise to pay Pacific Hospitality with the intent to induce Plaintiffs to rely upon the promise and execute the aforementioned assignment.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1    139.   At the time Defendants made the aforementioned promise, Defendants

2  had no intent to perform as promised. Defendants' lack on intent to perform is

3  demonstrated by Defendants' efforts to impair the security to be used to secure

4  payment of the $410,000 in promissory notes.

5    140.   Defendants did not perform as promised as Defendants did not pay

6  Plaintiffs the promised amounts.  As a direct and proximate result of the conduct of

7  Defendants, Pacific Hospitality, LLC was damaged in an amount at according to

8  proof, but in excess of $510,000.

9    141.   In addition to the foregoing, Plaintiffs are entitled to interest at the

10  legal rate from and after October 2009, plus incidental and consequential damages

11  according to proof.

12    142.   Plaintiffs are informed and believe and on the basis of said

13  information and belief allege that Defendants' conduct was taken with the intent to

14  injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and

15  property.  Plaintiffs are informed and believe and on the basis of said information

16  and belief allege that such fraudulent conduct constitutes clear and convincing

17  evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to

18  California *Civil Code* §3294.  As such, Plaintiffs are entitled to punitive damages

19  and exemplary damages against Defendants herein for the sake of example and to

20  punish Defendants for their unlawful conduct.

21    **FIFTH CLAIM FOR RELIEF**

22    **FOR VIOLATION OF 18 U.S.C. §1962(c) (RICO)**

23    Against all Defendants

24    143.   Plaintiffs incorporate by this reference each and every allegation

25  contained in paragraphs 1 through 142 above, as though fully set forth herein.

26    144.   Defendants M. Patel, C. Patel and Dhillon are "persons" within the

27  meaning of 18 U.S.C. §§1961(3) and 1961(4).

28

- 38 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

145.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants M. Patel C. and Dhillon, together with other persons constitute an enterprise within the meaning of 18 U.S.C. 1961(4), that is, a group of individuals associated in fact which engaged in the conduct alleged herein, including violations of 18 U.S.C. §1344, 18 U.S.C. §1952 and 18 U.S.C. §1344.   The association in fact of Defendants M. Patel C. and Dhillon acted together with the named entity Defendants.  The Patel Defendants used Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings.  Dhillon entities, including but not limited to DMI, New Hope and Starlite.

146.   Plaintiffs are informed and believe and on the basis of said information and belief allege that M. Patel, C. Patel and Dhillon were each employed by or associated with the enterprises and did conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, including but not limited to:

(1)    **Wire Fraud in violation of 18 U.S.C. §1344.**

Between July 2007 and at least May 2008, Defendants engaged in multiple instances of wire fraud in violation of 18 U.S.C. §1344 by causing wire transactions to occur in connection with the fraud perpetrated upon Plaintiffs. Obtaining the money from the transactions was obviously an essential part of the scheme perpetrated by Defendants.  As an integral part of the scheme to defraud Plaintiffs, Defendants used the services of Fidelity National Title Company ("Fidelity"), in Dallas, Texas, to cause Plaintiffs to wire the funds for the purchase of the properties and to obtain bank financing.  As even more integral to the scheme, Defendants used the services of Fidelity to wire the profits obtained from each sale transaction engaged in by Defendant.  The wire transactions engaged in by Defendants or on their behalf are as follows:

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

(a)  On or about October 30, 2007, Dhillon gave Plaintiff Sant wiring instructions to Fidelity for him to use to make his investment of $67,942.88 into the Mount Pleasant HIE. Unbeknownst to Plaintiffs, the wiring instructions given to Sant by Dhillon was for an unrelated transaction Dhillon and the Patel Defendants were engaged in Waxahachie, Texas.  Sant wired the funds and Fidelity applied to the funds to both the Mt. Pleasant HIE transaction and the Waxahachie transaction.

(b)  Defendants caused Plaintiffs to wire funds to Fidelity for use in the subject transactions, including but not limited to: $230,000 by Plaintiff Santokh Arora on October 26, 2007 (Mt. Pleasant HIE); $67,942.88 on October 30, 2007 by Plaintiff Sant; $204,000 by Plaintiff Surinder-pal Arora on January 24, 2008 (Corsicana HIE).

(c)  Fidelity wired profits from the various transactions to the Patel Defendants, including but not limited to: $2,818,541.47 on January 25, 2008 (to Newcrest Hotels, LTD);$980,991.32 on May 20, 2008 (to Sagestar Holdings, LTD); $100,000 on May 23, 2007 (to Newcrest Hotels, LTD); $75,000 on July 10, 2007 (to Newcrest Hotels, LTD); $50,000 on July 18, 2007 (to Newcrest Hotels, LTD); $230,000 on October 26, 2007 (to Sagestar Holdings, LTD); $880,000 on October 27, 2007 (to Sagestar Holdings, LTD); $75,000 on November 2, 2007 (to Newcrest Hotels, LTD); $100,000 on November 5, 2007 (to Newcrest Hotels, LTD); $150,000 on December 20, 2007 (to Corsicana Lodging, LLC); $50,000 on April 2, 2008 to (to Newcrest Hotels, LTD).

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

       (d)    Defendants caused Fidelity to wire kickbacks from the various transactions to the Dhillon Defendants, including but not limited to: $500,000 on October 29, 2007 (to DMI); $550,000 on January 25, 2008 (to DMI).

       (e)    Defendants caused Fidelity to wire commissions to Bruce Patel, the Patel Defendants' broker, including but not limited to: $50,000 on January 25, 2008.

**(2)    Wire Fraud in violation of 18 U.S.C. §1344.**

From March 2007 through at least October 2009, Defendants engaged in multiple instances of wire fraud in violation of 18 U.S.C. §1344 by sending and receiving emails to facilitate their fraud and scheme, including sending business summaries and business projections for the various hotels, hotel occupancy rates, communications and general correspondence concerning the transactions. Defendants used email to communicate with Fidelity, Plaintiffs and themselves. The number of emails exceed 1000 in number.

**(3)    Bank Fraud in violation of 18 U.S.C. §1344.**

On or about May 2008, Defendants knowingly executed the scheme to obtain funds under custody and control of financial institution by means of false or fraudulent pretenses in violation of 18 U.S.C. §1344. Defendants submitted a contract to Mutual Bank of Harvey Illinois in connection with the $4,346,250 loan used to pay off the Patel Defendants on the Mt. Pleasant HIE transaction. The contract submitted to the bank, signed by Mehul Patel aka Mike Patel, on behalf of Sagestar Holdings, LTD (seller) and by Dhillon as manager of Mount Pleasant Properties, LLC (buyer) represented and warranted that no finder's fees were being paid. Defendants knowingly misrepresenting and concealing from the bank that the Patel Defendants were paying Dhillion, through DMI so-called finders' fees ranging from $250,000 to $750,000.

- 41 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

(4)   **Interstate Travel in violation of 18 U.S.C. §1952.**

In September and October 2009, Defendants conducted and participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity and traveled in interstate commerce in violation of 18 U.S.C. §1952 as follows:

(a)   Dhillon made numerous trips between California and Texas in carrying out the acts alleged herein.

(b)   In September 2009, Mike Patel and Chuck Patel came to Los Angeles to meet with Elhouty regarding the Denison HIE transaction and with Sangha regarding his ownership in the Ennis HIE and Corsicana properties.  In August 2009, Sangha discovered that as part of Dhillon's efforts to finance the Ennis HIE transaction, One World Bank was provided a loan application with Sangha's forged signature and false financial statements for the purpose of obtaining a loan for the Ennis HIE to pay off Mike Patel.

(c)   In October 2009, Mike Patel was in Los Angeles again to meet with Elhouty.  At that time, Mike Patel engaged in discussions with Elhouty on behalf of some of the Plaintiffs.  Mike Patel, on behalf of himself and Dhillon, Gurender Sahani and Tarlochan S. Kataria, agreed pay Pacific Hospitality $510,000 and pay Pacific Hospitality, LLC, Parshotam Kamboj and Ranjit Singh $245,000 ($410,000 by promissory notes issued by Dhillon, Gurender Sahani and Tarlochan S. Kataria (secured by other Dhillon hotel properties) and $100,000 cash paid by Mike Patel) representing the return of their collective investments in Denison HIE and the Corsicana Properties.  In exchange, Mike Patel required, *inter alia*, that Pacific Hospitality, LLC assign its

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1    interest in New Hope Hospitality, LLC to Dhillon, Gurender

2    Sahani and Tarlochan S. Kataria.  That assignment was

3    necessary for New Hope Hospitality, LLC to refinance the

4    $1,320,000 second mortgage of the Patel Defendants' entity

5    Corsicana Lodging, LLC secured against the Corsicana

6    Hampton.  Pacific Hospitality, LLC would not participate in any

7    part of a loan transaction.  On the basis of Mike Patel's

8    promises made in Los Angeles, on October 2, 2009, Surinder-

9    Pal Arora emailed Mike Patel that certain Assignment of

10    Membership Interest Agreement assigning Pacific Hospitality,

11    LLC's interest in New Hope Hospitality, LLC to Dhillon,

12    Gurender Sahani and Tarlochan S. Kataria, which he was

13    specifically instructed he could not use unless and until the

14    settlement was finalized.  The settlement fell apart after

15    Plaintiffs discovered that Dhillon impaired the security with

16    false liens.  Nevertheless, Defendants used the Assignment of

17    Membership Interest Agreement as part of their efforts to obtain

18    an SBA loan used to pay off the Patel Defendants.

19    147.   The conduct of Defendants forms a "pattern of racketeering activity".

20    Relatedness

21    The conduct of the Defendants has the same or similar purposes, results,

22    participants, victims, or methods of commission, or otherwise are interrelated by

23    distinguishing characteristics.

24    The purpose of each transaction was to use Plaintiffs to purchase hotels from

25    the Patel Defendants at extraordinary prices whereby bank loans were be obtained

26    using Plaintiffs' money as the down payment and whereby the Patel Defendants

27    and Dhillon would share in the profits.  Every transaction alleged herein involved

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1   transactions for the sale of hotels owned by the Patel Defendants.  Every

2   transaction alleged herein was set up by Dhillon.  Every transaction was nearly

3   identical in form, proceeding in the same manner and all were transacted through

4   Fidelity using Maggie Vogeler as the escrow officer.  The same victims were

5   harmed by Defendants' conduct.

6       Continuity

7       The conduct of the Defendants as alleged herein went from at least March

8   2007 to October 2009.  The "continuity" in this case could be either a closed period

9   of repeated conduct, or evidences conduct, that by its very nature, has a threat of

10  repetition.  Id. at 241.

11      Indeed, these Defendants have perpetrated the same scheme on others– both

12  within the transactions alleged herein and regarding other hotel transactions not

13  part of this action.    Several of the Defendants in this case are parties to that certain

14  action styled Soni v. Jagmohan Dhillon, Mehul Patel aka Mike Patel, Newcrest

15  Hotels, LTD, Premium Hotel Management, Inc., Harminder Dhillon, Harwant

16  Dhillon and Bawa Dhillon, Cause No. 10-14506.  Dr. Soni is a California resident

17  who was lured by Dhillon into two hotel transactions for hotels owned by the Patel

18  Defendants in Sherman, Texas and Fort Worth Texas.

19      148.   Plaintiffs are informed and belief that the Patel Defendants and

20  Dhillon uniformly operate to inflate hotel sales prices for bank financed

21  transactions by the amount paid to Dhillon as a secret profit.  Defendants uniformly

22  used Fidelity for all transactions.  Defendants uniformly used Maggie Vogeler as

23  the escrow officer for all transactions.  Defendants uniformly wired and caused

24  wiring of funds in and out of Fidelity on all transactions.

25      149.   As a direct and proximate result of the conduct of Defendants,

26  Plaintiffs have been damaged.  Plaintiffs have been damaged in the amount of

27  approximately $8.2 million, together with interest at the legal rate from and after

28

- 44 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 │ August 2007, plus incidental and consequential damages according to proof. The

2 │ damages consist of $1.26 million invested in the Mount Pleasant HIE transaction;

3 │ loan guaranties on the Mount Pleasant HIE bank loans in the amount of

4 │ $6,146,250; $510,000 invested in the Corsicana Properties; and $245,000 invested

5 │ and expended in the Denison HIE.

6 │     150.  As a result of Defendants' conduct, Plaintiffs are entitled to recover

7 │ threefold the damages sustained, costs of suit and attorneys fees.

8 │     151.  Plaintiffs are seeking appropriate orders, including, but not limited to:

9 │ That Defendants, and each of them, divest themselves of any interest, direct or

10 │ indirect, in each of the enterprises alleged herein; that this Court impose reasonable

11 │ restrictions on the future activities of Defendants, including, but not limited to,

12 │ prohibiting Defendants from engaging in the same type of endeavor as the

13 │ enterprise engaged in, the activities of which affect interstate or foreign commerce;

14 │ and ordering dissolution or reorganization of the enterprises alleged herein.

15 │ **<u>SIXTH CLAIM FOR RELIEF</u>**

16 │ **FOR UNFAIR BUSINESS PRACTICE IN**

17 │ **VIOLATION OF CALIFORNIA BUSINESS &**

18 │ **PROFESSIONS CODE §17200 *et seq.***

19 │ Against all Defendants

20 │     152.  Plaintiffs incorporate by this reference each and every allegation

21 │ contained in paragraphs 1 through 151 above, as though fully set forth herein.

22 │     153.  Each of the acts alleged herein is either unfair, illegal or fraudulent

23 │ and has damaged Plaintiffs as set forth herein.

24 │     154.  Plaintiffs are entitled to recovery of the funds rightfully belonging to

25 │ them but taken by Defendants as a result of their unfair competition and are entitled

26 │ to the disgorgement of said ill gotten gains and the restitution thereof, pursuant to

27 │

28 │

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  both principles of common law and the provisions of California Business & Professions Code §17203.

2

3  **WHEREFORE,** Plaintiffs pray for judgment against the Defendants, and each of them as follows:

4

5  ### ON THE FIRST CLAIM FOR RELIEF

6  1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $8,200,000;

7

8  2.   For consequential and incidental damages according to proof;

9  3.   For punitive and exemplary damages according to proof at trial.

10  ### ON THE SECOND CLAIM FOR RELIEF

11  1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $8,200,000;

12

13  2.   For consequential and incidental damages according to proof;

14  3.   For punitive and exemplary damages according to proof at trial.

15  ### ON THE THIRD CLAIM FOR RELIEF

16  1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $8,200,000;

17

18  2.   For consequential and incidental damages according to proof;

19  3.   For punitive and exemplary damages according to proof at trial.

20  ### ON THE FOURTH CLAIM FOR RELIEF

21  1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $510,000;

22

23  2.   For consequential and incidental damages according to proof;

24  3.   For punitive and exemplary damages according to proof at trial.

25  ### ON THE FIFTH CLAIM FOR RELIEF

26  1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $8,200,000;

27

28

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  2.  For consequential and incidental damages according to proof;

2  3.  For threefold damages according to proof at trial.

3  **ON THE SIXTH CLAIM FOR RELIEF**

4  1.  For injunctive and equitable relief;

5  2.  For disgorgement of profits

6  3.  For consequential and incidental damages according to proof;

7  **ON ALL CAUSES OF ACTION**

8  1.  For reasonable attorneys fees as permitted by law or otherwise

9  according to proof;

10  2.  For prejudgment interest according to proof;

11  3.  For costs of suit herein incurred; and

12  4.  For such other and further relief as the Court may deem proper.

13

14  DATED: September 2, 2011                    SMITH LAW FIRM
                                              A Professional Law Corporation
15

16

17                                            By: _____
                                              CRAIG R. SMITH
18                                            Attorneys for Plaintiffs
                                              MANMOHAN CHHABRA;
19                                            PARSHOTAM KAMBOJ; RANJIT
                                              SINGH; DARSHAN SINGH;
20                                            SHERBIR SANT; SURINDER-PAL
                                              ARORA; SANTOKH ARORA; and
21                                            PACIFIC HOSPITALITY, LLC, a
                                              Texas limited liability company

22

23

24

25

26

27

28
                                    - 47 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1

**DEMAND FOR JURY TRIAL**

2        Plaintiffs, MANMOHAN CHHABRA; PARSHOTAM KAMBOJ; RANJIT

3  SINGH; DARSHAN SINGH; SHERBIR SANT; SURINDER-PAL ARORA;

4  SANTOKH ARORA; and PACIFIC HOSPITALITY, LLC, a Texas limited

5  liability company, hereby demand a jury trial as provided by Rule 38(a) of the

6  Federal Rules of Civil Procedure.

7

8  DATED: September 2, 2011        SMITH LAW FIRM
A Professional Law Corporation

9

10

11                               By: _____

12                                 CRAIG R. SMITH
Attorneys for Plaintiffs

13                                 MANMOHAN CHHABRA;
PARSHOTAM KAMBOJ; RANJIT

14                                 SINGH; DARSHAN SINGH;
SHERBIR SANT; SURINDER-PAL

15                                 ARORA; SANTOKH ARORA; and
PACIFIC HOSPITALITY, LLC, a

16                                 Texas limited liability company

17

18

19

20

21

22

23

24

25

26

27

28

- 48 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and am not a party to the within action; my business address is 21550 Oxnard Street, Suite 760, Woodland Hills, California 91367.

      On September 2, 2011, I served the following document(s) described as **FIRST AMENDED COMPLAINT FOR:1) BREACH OF FIDUCIARY DUTY; 2) FRAUD; 3) FRAUDULENT CONCEALMENT; 4) FALSE PROMISE; 5)VIOLATION OF 18 U.S.C. §1962(c) (RICO); 6)UNFAIR BUSINESS PRACTICE IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 et seq.; DEMAND FOR JURY TRIAL** on all interested parties to this action, as follows:

☒    by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒    **BY MAIL**: By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with our office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY EXPRESS MAIL**: I caused such envelope to be delivered by Overnite Express and/or FedEx to the addressee(s) listed in the attached Service List.

☐    **BY PERSONAL SERVICE**: I caused such envelope to be delivered by hand to the addressee(s) listed in the Service List.

      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed September 2, 2011 at Woodland Hills, California.

MELISSA STOUGH-TAMURA

- 49 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

## SERVICE LIST

Ryan D. Lapidus
Daniel C. Lapidus
Lapidus & Lapidus
177 South Beverly Drive
Beverly Hills, CA 90212
Telephone No.: 310-550-8700
Fax: 310-943-2471
rlapidus@lapiduslaw.com
dlapidus@lapidus.com

Jed White
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Tel:  310-576 2100
Fax:  310-576 2200

Aurzada, Keith
Tom Adair
Bryan Cave LLP
JP Morgan Chase Tower
2200 Ross Avenue, Suite 3300
Dallas, TX 75201
Tel: 214.721.8033
Fax: 214.220-6733
Keith.Aurzada@BryanCave.com
Thomas.Adair@BryanCave.com

- 50 -

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**