1 | **CRAIG R. SMITH (State Bar No. 180338)**
**SMITH LAW FIRM**
2 | **A Professional Law Corporation**
**21550 Oxnard Street, Suite 760**
3 | **Woodland Hills, California 91367**
**Telephone:        (818) 703-6057**
4 | **Facsimile:   (818) 703-6058 / csmith@smithlf.com**

FILED
CLERK, U.S. DISTRICT COURT
SEP 16 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

6 | Attorneys for Plaintiffs Manmohan Chhabra, Parshotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and Pacific Hospitality, LLC, a Texas limited liability company

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANMOHAN CHHABRA; PARSHOTAM KAMBOJ; RANJIT SINGH; DARSHAN SINGH; SHERBIR SANT; SURINDER-PAL ARORA; SANTOKH ARORA; and PACIFIC HOSPITALITY, LLC, a Texas limited liability company; <br><br> Plaintiffs, <br><br> vs. <br><br> MEHUL PATEL aka MIKE PATEL; CHIRAG PATEL aka CHUCK PATEL; JAGMOHAN DHILLON; DHILLON MANAGEMENT, INC., a California Corporation; NEW HOPE HOSPITALITY, LLC, a Texas Limited liability company; STARLITE HOTELS, LLC, a Texas Limited liability company; NEWCREST HOTELS, LTD a Texas limited partnership; SAGESTAR MANAGEMENT GP, LLC, a Texas limited liability company; SAGESTAR HOLDINGS, LTD, a Texas limited partnership; ENNIS LODGING, LLC, a Texas limited liability company; DENISON LODGING, LLC, a Texas limited liability company; CORSICANA LODGING, LLC, a Texas limited liability company; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. CV11-03724 RGK (VBKx) <br><br> ~~[PROPOSED]~~ <br> **SECOND AMENDED COMPLAINT FOR:** <br><br> **1)  BREACH OF FIDUCIARY DUTY;** <br> **2)  FRAUD;** <br> **3)  FRAUDULENT CONCEALMENT;** <br> **4)  FALSE PROMISE;** <br> **5)  VIOLATION OF 18 U.S.C. §1962(c) (RICO);** <br> **6)  UNFAIR BUSINESS PRACTICE IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 et seq.** <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  COMES NOW Plaintiffs Manmohan Chhabra, Parshotam Kamboj, Ranjit
2  Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and
3  Pacific Hospitality, LLC, a Texas limited liability company, for causes of action
4  against Defendants, and each of them, as follows:

5  **JURISDICTION AND VENUE**

6  1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C.
7  1441, as being removed from the Los Angeles Superior Court.  The action was
8  removed pursuant to Federal Question Jurisdiction under 18 U.S.C. §1962 and
9  Diversity Jurisdiction pursuant to 28 U.S.C. §1332.

10  2.   Venue is appropriate in this District based on 28 U.S.C. §1391(b)(3).

11  **THE PARTIES**

12  3.   Plaintiff MANMOHAN CHHABRA ("Chhabra") is and at all times
13  relevant herein was a resident of the County of Los Angeles, State of California.

14  4.   Plaintiff PARSHOTAM KAMBOJ ("Kamboj") is and at all times
15  relevant herein was a resident of the County of Los Angeles, State of California.

16  5.   Plaintiff RANJIT SINGH ("R. Singh") is and at all times relevant
17  herein was a resident of the County of Los Angeles, State of California.

18  6.   Plaintiff DARSHAN SINGH ("D. Singh") is and at all times relevant
19  herein was a resident of the County of Los Angeles, State of California.

20  7.   Plaintiff SHERBIR SANT ("Sant") is and at all times relevant herein
21  was a resident of the County of Los Angeles, State of California.

22  8.   Plaintiff SURINDER-PAL ARORA ("Surinder") is and at all times
23  relevant herein was a resident of the County of Los Angeles, State of California.

24  9.   Plaintiff SANTOKH ARORA ("Santokh") is and at all times relevant
25  herein was a resident of the County of Los Angeles, State of California.

26  10.   Plaintiff PACIFIC HOSPITALITY, LLC, ("Pacific Hospitality, LLC")
27  is a Texas limited liability company.

28  

- 2 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1      11.   Plaintiffs are informed and believe and on the basis of said

2  information and belief allege that Defendant MEHUL PATEL aka MIKE PATEL

3  ("M. Patel") is and at all times relevant herein was a resident of Dallas, Texas.

4      12.   Plaintiffs are informed and believe and on the basis of said

5  information and belief allege that Defendant CHIRAG PATEL aka CHUCK

6  PATEL ("C. Patel") is and at all times relevant herein was a resident of Dallas,

7  Texas.

8      13.   Plaintiffs are informed and believe and on the basis of said

9  information and belief allege that Defendant JAGMOHAN DHILLON ("Dhillon")

10 was at all times prior to mid-2009, a resident of Stanislaus County, State of

11 California.

12     14.   Plaintiffs are informed and believe and on the basis of said

13 information and belief allege that Defendant DHILLON MANAGEMENT, INC.

14 ("DMI") is a California corporation with its principal place of business in Modesto,

15 California.

16     15.   Plaintiffs are informed and believe and on the basis of said

17 information and belief allege that Defendant NEW HOPE HOSPITALITY, LLC

18 ("NHH") is a Texas limited liability company with its principal place of business in

19 Texas.

20     16.   Plaintiffs are informed and believe and on the basis of said

21 information and belief allege that Defendant STARLITE HOTELS, LLC

22 ("Starlite") is a Texas limited liability company with its principal place of business

23 in Texas.

24     17.   Plaintiffs are informed and believe and on the basis of said

25 information and belief allege that Defendant NEWCREST HOTELS, LTD

26 ("Newcrest") is a Texas limited partnership with its principal place of business in

27 Texas.

28

- 3 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1     18.    Plaintiffs are informed and believe and on the basis of said
2  information and belief allege that Defendant SAGESTAR MANAGEMENT GP,
3  LLC, ("Sagestar") is a Texas limited liability company.

4     19.    Plaintiffs are informed and believe and on the basis of said
5  information and belief allege that Defendant SAGESTAR HOLDINGS, LTD
6  ("Holdings"), is a Texas limited liability company.

7     20.    Plaintiffs are informed and believe and on the basis of said
8  information and belief allege that Defendant ENNIS LODGING, LLC ("Ennis") is
9  a Texas limited liability company.

10     21.    Plaintiffs are informed and believe and on the basis of said
11  information and belief allege that Defendant DENISON LODGING, LLC
12  ("Denison") is a Texas limited liability company.

13     22.    Plaintiffs are informed and believe and on the basis of said
14  information and belief allege that Defendant CORSICANA LODGING, LLC
15  ("Corsicana") is a Texas limited liability company.

16     23.    Plaintiffs are ignorant of the true names and capacities of Defendants
17  DOES 1 through 10.  Plaintiffs are informed and believe and on the basis of said
18  information and belief allege that all fictitiously named Defendants and each of
19  them have some connection with the activities herein complained of, and are
20  responsible in some way for the wrongful conduct herein alleged.

21     24.    Plaintiffs are informed and believe and on the basis of said
22  information and belief allege that Defendants and each of them are, and at all times
23  herein mentioned were, the agents, joint venturers, officers, members,
24  representatives, servants, consultants or employees of their co-Defendants, and in
25  committing the acts herein alleged, were acting within the scope of such affiliation
26  with the knowledge, permission, consent or subsequent ratification of their
27  co-Defendants.

28

- 4 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1    25.    Plaintiffs are informed and believe and on the basis of said
2  information and belief allege that M. Patel and C. Patel on the one hand, and
3  Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings on the other hand, at
4  certain times, all of which are relevant herein, have and had such unity of interest,
5  and that M. Patel and C. Patel controlled and dominated the businesses of Sagestar,
6  Corsicana, Newcrest, Ennis, Denison and Holdings, that there existed a unity of
7  ownership, interest and identity between these Defendants (collectively the "Patel
8  Defendants").

9    26.    Plaintiffs are informed and believe and on the basis of said
10 information and belief allege that adherence to the fiction of a separate existence of
11 Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings as entities distinct
12 from M. Patel and C. Patel would permit an abuse of corporate privilege and would
13 sanction fraud and promote injustice in that M. Patel and C. Patel were in fact so
14 intertwined with Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings so as
15 to make the Patel Defendants, Sagestar, Corsicana, Newcrest, Ennis, Denison and
16 Holdings one and the same. Plaintiffs are informed and believe and on the basis of
17 said information and belief alleges that Sagestar, Corsicana, Newcrest, Ennis,
18 Holdings and Denison are mere shells and a sham. Plaintiffs are informed and
19 believe and on the basis of said information and belief alleges that Sagestar,
20 Corsicana, Newcrest, Ennis, Denison and Holdings were, at certain relevant times
21 herein, the alter-egos of M. Patel and C. Patel in that M. Patel and C. Patel used the
22 assets of Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings for their own
23 use, freely transferred property between them, commingled funds, and kept
24 inadequate and deficient corporate records.

25    27.    Plaintiffs are informed and believe and on the basis of said
26 information and belief allege that Dhillon on the one hand, and Starlite, NHH, and
27 DMI on the other hand, at certain times, all of which are relevant herein, have and
28

- 5 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 had such unity of interest, and that controlled and dominated the businesses of
2 Starlite, NHH, and DMI that there existed a unity of ownership, interest and
3 identity between these Defendants (collectively the "Dhillon Defendants").

4      28.    Plaintiffs are informed and believe and on the basis of said
5 information and belief allege that adherence to the fiction of a separate existence of
6 Starlite, NHH, and DMI as entities distinct from Dhillon would permit an abuse of
7 corporate privilege and would sanction fraud and promote injustice in that Dhillon
8 was or is so intertwined with Starlite, NHH, and DMI so as to make Dhillon,
9 Starlite, NHH, and DMI one and the same.  Plaintiffs are informed and believe and
10 on the basis of said information and belief allege that Starlite, NHH, and DMI are
11 mere shells and a sham.  Plaintiffs are informed and believe and on the basis of said
12 information and belief allege that Starlite, NHH, and DMI were, at certain relevant
13 times herein, the alter-egos of Dhillon in that Dhillon used the assets of Starlite,
14 NHH, and DMI for their own use, freely transferred property between them,
15 commingled funds, and kept inadequate and deficient corporate records.

16                       **BACKGROUND ALLEGATIONS**

17      29.    This case involves the fraud and other wrongful conduct perpetrated
18 on the Plaintiffs as investors in six hotels owned and sold by the Patel Defendants
19 and sold by Dhillon.  In their Complaint, the Plaintiffs allege that Dhillon, working
20 together with the Patel Defendants, caused Plaintiffs to invest approximately
21 $2,015,000 and sign loan guaranties in the amount of $6,146,250 in connection
22 with the sale by the Patel Defendants of four hotel properties in Texas– The
23 Holiday Inn Express in Mt. Pleasant, Texas (the "Mt. Pleasant HIE"), the Hampton
24 Inn in Corsicana, Texas (the "Corsicana Hampton"), the Holiday Inn Express in
25 Corsicana, Texas (the "Corsicana HIE") and a Holiday Inn Express in Denison,
26 Texas (the "Denison HIE").

27

28

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

30.    M. Patel and C. Patel are partners and co-owners of Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings.  The Patel Defendants are real estate developers who build and sell hotels in Texas.  At all times relevant herein, Dhillon was the acting in concert with the Patel Defendants, as their partner, employee or undisclosed agent in the sale of the Patel Defendants hotel properties. The Patel Defendants would pay Dhillion, directly or through his various entities, profits denominated by the Patel Defendants as "finders fees" that ranged between $250,000 to $750,000 for each sale transaction he arranged.  See paragraphs 89 through 98.  The Patel Defendants denominated the payments as "finder's fees" on their checks to DMI and the Patel Defendants caused the escrow holder to denominate the payments to DMI on escrow statements as "finder's fees."

31.    At the same time, Dhillon posed as Plaintiffs' partner in the various transactions alleged herein, but concealed his relationship with the Patel Defendants.

32.    Dhillon represented to the Plaintiffs that he negotiated deals with the Patel Defendants; that the hotels were being purchase below fair market value; that he was investing his own money in the transactions; and that he was not being paid any commissions or finders fees.  All of Dhillon's representations were false.

33.    Dhillon would arrange financing for the transaction to pay off the Patel Defendants, who in turn paid Dhillon his share of the profits.  Plaintiffs' funds were used as the down payment necessary to qualify for those loans. Plaintiffs are informed and believe and on the basis of said information and belief allege that as part of that effort, forged signatures and false financial information as to the hotel's performance and profitability was provided to lenders.  The secret payments by the Patel Defendants to Dhillon were also concealed from the lenders, as each contract represented and warranted that no undisclosed commissions or finders fees were being paid as part of each transaction.

- 7 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1     34.    The Defendants worked together to defraud Plaintiffs, by express

2 misrepresentations and concealment of facts to cause Plaintiffs to invest in the

3 subject transactions.

4 **Foundations of the Scheme**

5     35.    On March 27, 2007, Dhillon was introduced to Surinder and Santokh

6 by Jasbir Sangha ("Sangha") in Surinder's Los Angeles offices.

7     36.    At the meeting, Dhillon described his successful partnership with

8 Sangha in a hotel transaction in Palestine, Texas.  Dhillon said he was looking for

9 other partners for hotel property acquisitions he was negotiating with some Texas

10 hotel developers he had been doing business with for some time.

11     37.    At that March 2007 meeting in Surinder's office, Dhillon represented

12 that he orchestrated several successful hotel property acquisitions in Texas hotels

13 he had previously done with other Sikh Indians known by Surinder, Santokh and

14 Sangha. Dhillon represented that these partners always earned at least 20% return

15 on their investment.  Dhillon further represented that his partners made money even

16 if funds were being borrowed on home equity lines or credit cards.

17     38.    Surinder, Santokh and Sangha are devout Sikh Indians.  Dhillon

18 represented that he was a follower of Baba Ji Suraj Pal.  In Sikh Indian culture and

19 religion, a Baba Ji is a very holy figure in Sikn Indian culture.  Dhillon represented

20 that he had a close personal relationship with Baba Ji Suraj Pal.  He further

21 represented that Baba Ji Suraj Pal would stay in his home in Modesto, California.

22 Dhillon used his alleged devotion and relationship with Baba Ji Suraj Pal to make

23 Surinder, Santokh and Sangha believe that Dhillon's honestly and trustworthiness

24 was beyond repute.  Consistent with his representations, Dhillon demonstrated his

25 devote religious orthodox practices, including wearing a turban and facial hair and

26 observing a devout diet of avoiding meat and alcohol.

27

28

- 8 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1    39.    Dhillon described several transactions involving hotels he owned in
2  Texas and Nevada.  He also described his hotel management company DMI, which
3  Dhillon used to manage day-to-day hotel business.  Dhillon represented that
4  because of his many years of experience as an owner and operator, and because of
5  the economies of scale achieved by DMI, Dhillon's hotel investments consistently
6  made 20% return on investment.

7    40.    Dhillon further represented that he invested his own money in the
8  deals as "partner" with the other investors.  In reality, Plaintiffs would come to
9  discover that instead, Dhillon was in business with the Patel Defendants and was
10  paid millions of dollars for arranging the transactions with Plaintiffs.

11    41.    After the meeting, Dhillon, Surinder, Santokh and Sangha had lunch at
12  an Indian restaurant.  At lunch, Dhillon used his Sikh Indian culture and devoted
13  religious orthodox practices, including diet and observance of prayers, as part of
14  his confidence scheme.  Dhillon successfully persuaded Surinder and Santokh that
15  he was genuine.  As a result, Surinder and Santokh had the utmost of trust in
16  Dhillon.

17  **Sweetwater and Ennis Transactions**

18    42.    In or about July 2007, Dhillon presented to Surinder investments in
19  two soon to be built hotel properties: one being a Hampton Inn in Sweetwater,
20  Texas ("Sweetwater") and the other being a Holiday Inn Express in Ennis, Texas
21  ("Ennis").  Dhillon used these investment opportunities to lure Surinder and the
22  other Plaintiffs with promises of high returns and "guarantees that they could get
23  their money back at anytime within the first year" if they were unsatisfied.   Dhillon
24  presented the transaction to Santokh, Surinder and Sangha, Roger Singha
25  ("Singha").  Dhillon included one Harwant Dhillon as one of the buyers, to whom
26  Dhillon represented was his father.  At no time did any of the Buyers meet or have
27  any prior contact with Harwant Dhillon.

28

- 9 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

43.     Identical contracts for Sweetwater and Ennis were presented by Dhillon to Santokh and Surinder in the form of that certain Contract for Sale. Dhillon represented that he had already negotiated the price and therefore price was non-negotiable. The seller of Sweetwater was West Texas Hotels, LLC and the seller of Ennis was Ennis Lodging, LLC. The buyers in both contracts were Santokh and Surinder, and Roger Sangha and Singha. At first, the contracts were not acceptable to the Santokh and Surinder, who sought to renegotiate the terms. For instance, the contacts did not contain typical provisions for contingencies, such as for financing, franchise approval and valuation. Dhillon informed Surinder and Santokh that the seller would not negotiate the form of the contract. Dhillon said he was already committed to purchasing the hotels and as pledge to Santokh, Surinder and Sangha he would return 100% of the investment of any buyer in the hotels at anytime. This was done to induce Santokh and Surinder, Sangha and Singha to sign the contracts without contingencies.

44.     In order to build further confidence in the scheme, Dhillon recommended the services of an attorney by the name of James Patterson ("Patterson") to act on the Buyers' behalf in reviewing the Contract for Deed. Dhillon concealed from the Buyers that Patterson was in truth working for Dhillon. Patterson advised the Buyers to sign the Contract for Deed, which in fact was signed by the Buyers in or about July 2007. Furthermore, Dhillon advised Santokh and Surinder to sign the contract and promised that if they were unsatisfied at any time, Dhillon would give them their money back. Accordingly, on or about July 30, 2007, Santokh and Surinder signed the Sweetwater and Ennis contracts in Surinder's Los Angeles office. Santokh and Surinder each delivered to Dhillon $50,000. Commencement of construction of the Sweetwater and Ennis deals was indefinite.

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

45. In May 2008, Santokh and Surinder demanded their money back. M. Patel returned their money in or about December 2008.

**Specific Allegation Pertaining To The Mt. Pleasant Transaction**

46. In or about August 2007, Dhillon set up a meeting with the Plaintiffs, Surinder, Chhabra, Kamboj, R. Singh, D. Singh, Santokh and Sant to induce Plaintiffs to partner with Dhillon and each other in the purchase and operate a hotel in Mt. Pleasant, Texas, referred to as Mt. Pleasant HIE. The meeting was held in Surinder's office in Los Angeles. During the meeting, Dhillon described a hotel purchase transaction he had negotiated with developers with whom he had done several other deals.

47. During the August 2007, meeting, Dhillon stated that there was a hotel deal coming up that would throw off immediate profits. He stated M.Patel was the owner of the Mt. Pleasant HIE with a partner, who M. Patel was in a transaction to buy out that partner. Dhillon said M. Patel, as owner, gave him detailed information regarding the hotel's performance which was very profitable. Dhillon said M.Patel was a hotel developer and builder and did not like to operate hotels. His main business was building and selling. As a result, Dhillon was able to negotiate a sale price of $7 million, which he said was well below the market price.

48. Dhillon's representations were false at the time the representations were made. First, M. Patel did not own Mt. Pleasant HIE and was not partners with the then current owner, Charles and Sharon Helm. Instead, in August 2007, the Patel Defendants had the Mt. Pleasant HIE under contract with the Helms, together with a parcel of undeveloped land in Mount Pleasant, Texas, for $6 million. In August 2007, the Patel Defendants and Dhillon intended only to flip the Mt. Pleasant HIE to Plaintiffs for $7 million, and for the Patel Defendants to keep the parcel of undeveloped land to build a competing hotel, and make a $1million profit. The Patel Defendants took title to the Mt. Pleasant HIE on the same day they

- 11 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  transferred it to Plaintiffs. They made the $1 million profit, and kept the
2  undeveloped hotel lot where they later built a La Quinta hotel in Mount Pleasant,
3  Texas.

4       49.    At the 2007 meeting, Dhillon further represented that his management
5  company would manage the hotel during their ownership and that based upon his
6  business analysis based on actual revenue and expenses, the Plaintiffs could expect
7  to make at least 20% return on their investment from hotel operations. These
8  representations were false and Dhillon knew them to be false at the time they were
9  made. Dhillon's analysis was not based on actual hotel revenues and expenses.
10  Also, Dhillon never disclosed that the Patel Defendants were building the La
11  Quinta or Defendants' knowledge that competing Hampton Inn was also being
12  constructed nearby.   As a result, Dhillon knew that the revenue numbers for the
13  Mount Pleasant HIE did not support a $7 million sale price, nor would it yield a
14  20% return for Plaintiffs. Furthermore, at the time he represented that his
15  management company would manage the hotel, Dhillon did not intend to have his
16  management company manage the hotel and intended to terminate his and his
17  management company's involvement with the hotel once the loans he had arranged
18  were funded.

19       50.    At the August 2007 meeting Dhillon further  represented to Plaintiff
20  that he would act on behalf of the partnership with respect to arranging and
21  financing the transaction and that he would be contributing $140,000 of his own
22  money into the deal.   These representations were false. Dhillon never intended to
23  contribute $140,000 of his own money into the deal. Rather, Dhillon intended to
24  use his position of trust to conceal the fact that he profited somewhere between
25  $250,000 and $750,000 for arranging the transaction with Plaintiffs.

26       51.    At the August 2007 meeting, Dhillon further represented to Plaintiffs
27  that  the Sellers were not paying Dhillon any commissions, finder's fees or other
28

- 12 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 profits in connection with the transaction. Once again, this representation was false
2 as Dhillon and the Patel Defendants had, at all times, an agreement in place
3 whereby Dhillon would receive a share of the profits from the transaction and
4 Dhillon, in fact, received a share of the profits which Defendants labeled as a
5 "finder's fee."

6       52. Dhillon made each and every representation made at the August 2007
7 meeting with the intent to induce Plaintiffs, and each of them, to rely upon the truth
8 of those representations in agreeing to enter into a partnership and to invest money
9 in connection with the purchase of the hotel and its operation.

10       53. At the August 2007, meeting, Dhillon orally proposed that he and the
11 Plaintiffs enter into a partnership to purchase the Mt. Pleasant HIE and share in the
12 profits, losses and management. Relying upon the truth of the representations made
13 by Dhillon, Plaintiffs agreed to enter into the partnership and to invest in the
14 purchase of Mt. Pleasant HIE. Had Plaintiffs known that Dhillon's representations
15 were false, and had Plaintiffs known the true facts, Plaintiffs, and each of them,
16 would not have agreed to enter into the partnership or to otherwise contribute funds
17 toward the Mt. Pleasant business operation. At that time it was also agreed that
18 DMI would be hired as a management company to manage the day-to-day
19 operations of the Mt. Pleasant HIE.

20       54. The August 2007 meeting spilled over into dinner at Olive Garden
21 Restaurant in Northridge, California. Once again, Dhillon used the dinner meeting
22 to espouse his religious beliefs and practices, knowing that all of the Plaintiffs
23 would gain substantial confidence from that.

24       55. On or about August 20, 2007, Plaintiffs signed that certain Contract
25 for Sale in Surinder's office. The Contract for Sale was between Signature
26 Hospitality, LLC as the seller, and Dhillon, Surinder, Santokh, Kamboj, R. Singh,
27 D. Singh, Chhabra and Sant as the buyers. The Contract for Sale called for a

28

- 13 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 closing date of December 1, 2007.  The Contract for Sale required a $100,000
2 deposit which was paid to Fidelity National Title Company in Dallas, Texas
3 ("Fidelity").  The Contract for Sale represented and warranted that no finders fees
4 were being paid.

5    56.    Here again, Plaintiffs relied upon the representations made by Dhillon
6 in entering the Contract for Sale.  Had Plaintiffs known that Dhillon's
7 representations were false and had Plaintiffs known the true facts, Plaintiffs, and
8 each of them, would not have signed the Contract for Sale.

9    57.    On or about October 15, 2007, Dhillon called Chhabra, Sant and
10 Santokh separately and advised that he was having trouble financing the
11 transaction.  Further, Dhillon advised that M. Patel's transaction with his partner
12 was closing earlier than the December 1, 2007, closing date stated in the August
13 Mt. Pleasant HIE Contract.  He stated that the seller did not want to operate the
14 hotel pending the closing of Plaintiffs' transaction.  Accordingly, Dhillon said he
15 was negotiating an agreement for seller financing.  Dhillon told all the partners to
16 come to Texas for the negotiations.

17    58.    All of the foregoing representations were false.  While it was true that
18 Dhillon was having trouble financing the transaction, Dhillon failed to disclose to
19 Plaintiffs that the reason was that no lender would finance a transaction involving a
20 $1 million price increase as part of a flip transaction.  Finally, Dhillon was not
21 negotiating seller financing, but instead he and Patel Defendants devised the use of
22 the so-called Contract for Deed, which is nothing more than a land sale contract.
23 The contract for deed was Defendants' scheme to: (1) close the transaction with
24 Plaintiffs and immediately take their money; and (2) put some time between the $1
25 million price increase and the financing.

26
27
28

- 14 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

59. On or about October 25, 2007 Chhabra, Kamboj, R. Singh, D. Singh, Sant and Santokh met with Dhillon and M. Patel in Dallas, Texas. At that time, Surinder participated in the meeting by telephone.

60. At that meeting, Dhillon disclosed for the first time that he had formed Mount Pleasant Properties, LLC to carry out the transaction for the partners, and made all the Plaintiffs members according to their percentage partnership interests. Dhillon made himself the Manager of Mount Pleasant Properties, LLC and he informed the Plaintiffs that he entered into the Contract for Deed on behalf of Mount Pleasant Properties, LLC for the purchase of the Mt. Pleasant HIE. Dhillon and M. Patel explained to Plaintiffs how a Contract for Deed functioned and explained that Dhillon had until March 2008 to arrange financing for the transactions. During that meeting, M. Patel said he was assisting Dhillon with obtaining a loan from M. Patel's local lender contacts.

61. The Contract for Deed required a down payment of $1.4 million. Collectively, Plaintiffs deposited with Fidelity $1.26 million, by cashier's checks and wired funds as follows: Chhabra- $280,000; Sant- $280,000; D. Singh- $280,000; Kamboj- $140,000; R. Singh- $140,000; and Pacific Hospitality, LLC- $140,000. Dhillon claimed to be investing $140,000. Plaintiffs are informed and believe that Dhillon invested only $10,000.

62. Unbeknown to Plaintiffs, on October 26, 2007, the Patel Defendants transaction with Charles and Sharon Helm for the Mt. Pleasant HIE and the undeveloped land at $6 million closed. Three hours later, Plaintiffs' transaction for only the Mt. Pleasant HIE and for $7 million closed. Plaintiffs' $1.24 million was disbursed by Fidelity to the Patel Defendants at that time. Had Plaintiffs known that Defendants were engaged in a flip transaction whereby Defendants were making in excess of $1 million, they never would have: (1) entered into a partnership with Dhillon; (2) Signed the August Mt. Pleasant HIE Contract; (3)

- 15 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Paid $100,000 into Fidelity in August 2007; (4) Paid $1.24 Million to Fidelity on

2  October 26, 2007; or (5) Signed personal guaranties obligating them to pay

3  $6,146,250 to Mutual Bank (see *infra*).

4      63.    The Contract for Deed represented and warranted that no finders fees

5  or commissions were being paid.  Despite that, Dhillon was paid somewhere

6  between $250,000 to $750,000.  The check for $250,000 contains a notation in the

7  memo section stating "finders fee."

8      64.    Dhillon separately gave Sant wiring instructions to Fidelity for him to

9  use to make his investment of $67,942.88 into the Mount Pleasant HIE.  Plaintiffs

10  have recently discovered that Defendants used Sant's funds in an entirely separate

11  transaction for a hotel located in Waxahachie, Texas involving the Dhillon

12  Defendants and the Patel Defendants.

13      65.    Thereafter, Dhillon advised he was continuing to obtain bank

14  financing to fulfill the obligations of the Contract for Deed requiring that the seller

15  be paid in full by March 26, 2008.  Dhillon and DMI abandon all management

16  duties shortly after the loans funded.

17  **Specific Allegations Pertaining To The Corsicana Transactions**

18      66.    In or about October 2007, Dhillon presented to Plaintiff, Surinder and

19  Santokh another offer to partner with Dhillon in connection with two other hotel

20  properties.  This time it was two hotels on adjoining lots in Corsicana, Texas: A

21  Holiday Inn Express ("Corsicana HIE") and a Hampton Inn (the "Corsicana

22  Hampton").  The Corsicana HIE and the Corsicana Hampton are collectively

23  referred to as the ("Corsicana Properties").  Dhillon orally proposed to enter into a

24  partnership to purchase the Corsicana Properties and share in the profits, losses and

25  management.

26      67.    In or about October 2007, Dhillon advised Surinder and Santokh that

27  some of his partners did not have sufficient funds to complete their share of the

28                                    - 16 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 purchase. Dhillon asked Surinder and Santokh to buy a 10% share of the
2 properties. Dhillon asked for $75,000 immediately even if Surinder and Santokh
3 did not want to buy into the property and he would refund it later. On or about
4 November 29, 2007, Dhillon emailed the wiring instructions for the Corsicana
5 Properties purchase to Santokh. In or about January 2008, Surinder and Santokh
6 agree to buy a 10% interest, which is later increased to 17 percent.

7      68.    Dhillon represented to Surinder and Santokh that the sale price was
8 $14.25 million, which was below the market price for the Corsicana Properties.
9 However, Dhillon's representation was false.

10     69.    The contracts for the purchase of the Corsicana Properties revealed
11 that the purchase price was actually $15.25 million. However, Plaintiffs did not
12 see the contracts used for the Corsicana Properties at any time before buying into
13 the properties. While the contracts each contained representations and warranties
14 that no finder's fees were being paid, the Patel Defendants paid the Dhillon
15 Defendants $1,050,000 as "finders fees" for these transactions. Defendants did not
16 disclose to Plaintiffs the agreement between the Patel Defendants and Dhillon
17 relating to the secret profits to be paid by Dhillon. As a result of this arrangement,
18 the price for the Corsicana Properties was overstated by at least $1 million.
19 Newcrest was the seller of Corsicana HIE and title was delivered to Starlite; and
20 Corsicana was the seller of Corsicana Hampton and title was delivered to NHH.
21 Dhillon was the actual Manager of NHH and the ostensible Manager of Starlite.
22 While the operating agreement for Starlite was purportedly signed by Dhillon's
23 father Harminder Dhillon, the truth is that Dhillon was signing documents in the
24 name of Harminder Dhillon. Dhillon was using the name of Harminder Dhillon to
25 conceal his involvement on the Corsicana HIE transaction.

26     70.    Dhillon further represented that the seller was not paying Dhillon any
27 commissions, finders fees or other profits in connection with the transactions. That
28

- 17 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1 representation was false.  At all times it was agreed and understood by and between

2 Dhillon and the Patel Defendants that Dhillon would share in the profits with the

3 Patel Defendants as part of the transaction.

4      71.    Dhillon made the aforementioned representations regarding the

5 Corsicana Transaction with the intent to induce Plaintiffs, Surinder and Santokh, to

6 partner with Dhillon and to contribute funds toward the purchase of the Corsicana

7 Properties.  Relying on the truth of Dhillon's representation, Surinder and Santokh

8 – by and through Pacific Hospitality, LLC, invested $510,000.  Had Plaintiffs

9 Surinder and Santokh known the truth of Dhillon's representations and known of

10 the facts concealed by Dhillon, Plaintiffs would not have partnered with Dhillon

11 and would not have contributed funds toward the purchase of the Corsicana

12 Properties.

13      72.    Newcrest and Corsicana took their profits from the transactions by

14 directing Fidelity to wire transfer the funds.  The Patel Defendants received wire

15 transfers from Fidelity in connection with the Corsicana Properties, including but

16 not limited to: $100,000 on May 23, 2007; $75,000 on July 10, 2007; $50,000 on

17 July 18, 2007; $75,000 on November 2, 2007; $100,000 on November 5, 2007;

18 $150,000 on December 20, 2007.

19      73.    On January 24, 2008, Dhillon made Pacific Hospitality, LLC a

20 member in Starlite and NHH.

21 **Specific Allegations Pertaining to The Denison Transaction**

22      74.    In or about April 2008, Dhillon pitched another partnership

23 opportunity to Plaintiffs, Kamboj, R. Singh, Surinder and Santokh involving the

24 purchase of a newly constructed Holiday Inn Express in Denison, Texas ("Denison

25 HIE").   The purchase price was $7.5 million.   Dhillon represented to Kamboj, R.

26 Singh, Surinder and Santokh that he had already negotiated the $7.5 million

27 purchase price and that $7.5 million was below market price for the Denison HIE.

28

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1    At that meeting, Dhillon orally proposed that he and Kamboj, R. Singh and Pacific

2    Hospitality, LLC enter into a partnership to purchase the Denison HIE and share in

3    the profits, losses and management. Relying upon the truth of the representations

4    made by Dhillon, Kamboj, R. Singh and Pacific Hospitality, LLC agreed to enter

5    into the partnership and to invest in the purchase of Denison HIE  with Dhillion.

6    Had Plaintiffs known that Dhillon's representations were false, and had Plaintiffs

7    known the true facts, Kamboj, R. Singh and Pacific Hospitality, LLC would not

8    have agreed to enter into the partnership or to otherwise contribute funds toward

9    the Denison HIE.

10        75.    Like the Mt. Pleasant HIE transaction, Defendants again used a

11   Contract for Deed land sale contract.  On the basis of Dhillon's representations,

12   Kamboj paid to Fidelity $80,000, R. Singh paid to Fidelity $80,000 and Pacific

13   Hospitality, LLC paid to Fidelity $85,000, all toward the purchase and operations

14   of the Denison HIE.  Some of the funds were wired to Fidelity.  Dhillon

15   represented and warranted that he was investing $350,000 of his own money.  In

16   order to deceive Plaintiffs, Dhillon issued a check on April 14, 2008 drawn on

17   DMI's account for $350,000 and provided the check to the Patel Defendants.  The

18   Patel Defendants never attempted to negotiate the check.

19        76.    At this time, Dhillon further represented to Plaintiffs that the seller

20   was not paying Dhillon any commissions, finders fees or other profits in

21   connection with the transactions.  That representation was false.  At all times it was

22   agreed and understood by and between Dhillon and the Patel Defendants that

23   Dhillon would share in the profits with the Patel Defendants as part of the

24   transaction.

25        77.    Dhillon made the representations regarding Denison with the intent to

26   induce Kamboj, R. Singh and Pacific Hospitality, LLC to enter into the partnership

27   and to induce Plaintiffs to contribute funds toward the purchase Denison. Relying

28                                         - 19 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  upon the truth of Dhillon's representations, Kamboj, R. Singh and Pacific

2  Hospitality, LLC paid $245,000 toward the purchase and operations of the Denison

3  HIE.  Had Kamboj, R. Singh and Pacific Hospitality, LLC known the true facts and

4  had Kamboj, R. Singh and Pacific Hospitality, LLC known of Dhillon's

5  arrangement to receive secret profits in connection with the transaction, Kamboj, R.

6  Singh and Pacific Hospitality, LLC would not have contributed the aforementioned

7  funds.

8      78.    The Patel Defendants turned over possession of the property to

9  Plaintiffs on April 11, 2008.  The Contract for Deed required that the Patel

10  Defendants be paid in full by January 11, 2009.

11      79.    Ultimately, financing to pay off the Patel Defendants could not be

12  obtained because the sale price was far in excess of what the hotel revenues would

13  substantiate.  Because a land sale contract was used, Patel Defendants reclaimed

14  title and instituted unlawful detainer proceedings to remove Plaintiffs from the

15  hotel.  The Patel Defendants took back the Denison HIE in July 2009.

16  **The Mount Pleasant Bank Financing**

17      80.    In February 2008, Dhillon told Plaintiffs that financing could not be

18  arranged for Mount Pleasant HIE with Dhillon as Manager because of SBA

19  individual loan limitations.  A new entity was formed.

20      81.    In May 2008, the Mount Pleasant HIE was financed by a first loan by

21  Mutual Bank in the amount of $4,346,250 and a second loan by Mutual Bank and

22  guarantied by the SBA in the amount of $1,800,000.  Mutual Bank, and this loan,

23  have since been taken over by the FDIC.  These loans were arranged by Dhillon

24  through his affiliate Todd Hanan of Legacy Funding.  In order to close these loans

25  Surinder, Santokh, R. Singh, Kamboj, Chhabra and Pacific Hospitality, LLC were

26  required to personally guaranty loan obligations in the amount of $6,146,250.

27  Dhillon, however, maneuvered out of any personal liability on those loans.

28

- 20 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

82. On the eve of the funding of these loans, Plaintiffs discovered that the Dhillon Defendants and the Patel Defendants concealed from Plaintiffs the flip transaction and the $1 million profit. Because the Defendants already had Plaintiffs'$1.24 million, Plaintiffs were required to proceed or they would lose the $1.24 million already paid to Fidelity. In any event, Plaintiffs believed that the lender was provided accurate information concerning the transaction. On May 20, 2008, Fidelity wire transferred $980,991.32 to the Patel Defendants in connection with the Mount Pleasant HIE transaction. Dhillon and DMI abandon all management duties shortly after the loans funded. On April 30, 2010, United Central Bank, successor to Mutual Bank (through the FDIC) declared a default on the loan and commenced proceedings to foreclose on Mt. Pleasant. Also, on June 26, 2011, the SBA made demand upon Surinder, Santokh, R. Singh, Kamboj, Chhabra and Pacific Hospitality, LLC, pursuant to the guaranties.

**The Corsicana HIE Bank Financing**

83. The Corsicana HIE transaction was financed in part by a loan arranged by Dhillon from Temecula Valley Bank. A first loan by Temecula Valley Bank in the amount of $4,426,423, and a second loan by Bank of Las Vegas in the amount of $2,000,000. These loans were arranged by Dhillon through his affiliate Todd Hanan of Legacy Funding.

**The Corsicana Hampton Bank Financing**

84. The Corsicana Hampton transaction was financed in part by a loan arranged by Dhillon from Excel Bank in the amount of $5,000,000 through a United States Department of Agriculture loan guarantee program. The Patel Defendants carried back of $1,320,000 pending a loan being arranged by Defendants.

85. Plaintiffs are informed and believe and based upon said information and belief allege that in the course of obtaining financing from Excel Bank, Dhillon

- 21 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  submitted false financial information about the Corsicana Hampton to Excel Bank.

2  Such information and believe is based upon portions of a profit and loss statement

3  signed by Dhillon obtained by Plaintiffs which indicated that false revenue and

4  profitability numbers were submitted.

5  **One World Bank Fraud**

6      86.    In or about August 2009, Sangha discovered that his signatures on the

7  loan documents for the loan to pay off the Patel Defendants on the Ennis HIE

8  transaction were forged and that financials used by the bank to support the

9  approval of a $5,000.000 loan were false.  This revelation blew the lid off the entire

10  scam and the Defendants immediately went into action to put out the fire.

11      87.    The unraveling of the events concerning the Ennis HIE loan fraud

12  caused Plaintiffs to demand their money back from the various transactions.

13  Defendants refused.

14      88.    In or about August or September 2009, Kamies Elhouty ("Elhouty")

15  revealed to Plaintiffs that he obtained damaging information about Defendants'

16  scheme.  As a result, M. Patel and C. Patel flew to Los Angeles to have a meeting

17  with Elhouty concerning the Denison HIE.  M. Patel made a second trip to Los

18  Angeles in October 2009, which resulted in his agreement, for the Patel

19  Defendants, to pay Elhouty $1,100,000.

20  **Defendants' Share in Profits**

21      89.    In or about 2010, Plaintiffs discovered the secret relationship between

22  the Patel Defendants and the Dhillon Defendants.  Plaintiffs discovered that the

23  Patel Defendants were paying the Dhillon Defendants millions of the dollars in

24  profits denominated by the Patel Defendants as so-called "finders fees" for selling

25  the various properties to Plaintiffs.  For many of the same transactions, the Patel

26  Defendants paid their real estate broker only a small fraction of what they paid

27  Dhillon.

28

- 22 -

**[PROPOSED]
SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1        **1.    Patels Secretly Pay Dhillon a "Finders Fees" For Mount Pleasant**

2        90.    The Contract for Deed dated October 27, 2007 expressly represents

3   and warrants that no "finders fees" were being paid.  Contrary to that

4   representation, the Patel Defendants paid DMI $250,000 by check dated May 28,

5   2008.  The memo section of the check states "finders fees."

6        91.    Plaintiffs are informed and believe and based upon said information

7   and belief allege that the Patel Defendants made a further payment to the Dhillon

8   Defendants in connection with the Mount Pleasant Transaction.  DMI's Wells

9   Fargo bank statement for the period ending October 31, 2007, establishes that on

10  October 29, 2007, Fidelity wire transferred $500,000 to Dhillon's account.

11       92.    At no time did Defendants disclose to Plaintiffs that any of the Dhillon

12  Defendants were being paid anything from anybody in connection with the Mount

13  Pleasant HIE transaction.  In fact it was the complete opposite.  Dhillon represented

14  to Plaintiffs and to Mutual Bank that he contributed $140,000 as capital.

15       93.    Plaintiffs are informed and believe and based upon said information

16  and belief allege that Defendants did not disclose to Mutual Bank any payments

17  between the Patel Defendants and the Dhillon Defendants in connection with the

18  Mount Pleasant HIE transaction.   This information and belief is based upon the

19  fact that the payments were actually made, but were made outside of escrow and

20  were paid to DMI, Dhillon's management company.

21       **2.    Patels Secretly Pay Dhillon a "Finders Fee" for Corsicana HIE**

22       94.    At no time did Defendants disclose to Plaintiffs that any of the Dhillon

23  Defendants were being paid anything from anybody in connection with the

24  Corsicana HIE.  In fact, Dhillon represented to Surinder and Santokh back in

25  November 2007 that he was investing his own money into the transaction. Despite

26  that representation, the Patel Defendants secretly paid Dhillon $550,000.  Like the

27

28
                                        - 23 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Mt. Pleasant money, these funds were transmitted by wire transfer from Fidelity to

2  Dhillon on or about January 25, 2008.

3      95.    Plaintiffs are informed and believe and based upon said information

4  and belief allege that Defendants did not disclose to Temecula Valley Bank any

5  payments between the Patel Defendants and the Dhillon Defendants in connection

6  with the Corsicana HIE transaction.  This information and belief is based upon the

7  fact that the payments made to DMI and Dhillon's management company were not

8  disclosed on the buyer's closing statement, which is what is submitted to the lender

9  for funding.

10     **3.    Patels Secretly Pay Dhillon a "Finders Fee" for Corsicana**

11            **Hampton**

12     96.    For the Corsicana Hampton, Dhillon was paid $500,000 directly by the

13  Patel Defendants and outside of the Fidelity escrow.

14     97.    At no time did Defendants disclose to Plaintiffs that any of the Dhillon

15  Defendants were being paid anything from anybody in connection with the

16  Corsicana Hampton.  In fact, it was the complete opposite.  Again, Dhillon

17  represented to Surinder and Santokh back in November 2007 that he was investing

18  his own money into the transaction.

19     98.    Plaintiffs are informed and believe and based upon said information

20  and belief allege that Defendants did not disclose to Temecula Valley Bank any

21  payments between the Patel Defendants and the Dhillon Defendants in connection

22  with the Corsicana HIE transaction.   This information and belief is based upon the

23  fact that the payments were actually made, but were made outside of escrow and

24  were paid to DMI, Dhillon's management company.

25  **Defendants Wrongly Obtain Pacific Hospitality LLC's Interest in NHH**

26     99.    In October 2009, M. Patel came to Los Angeles again to meet with

27  Elhouty who attended on his behalf and on behalf of Surinder, Santokh, Kamboj,

28

- 24 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  R, Singh and Pacific Hospitality, LLC.  At that time, Defendants were working to
2  refinance the Patel Defendants' $1,320,000 carry-back financing used to
3  consummate the sale transaction back in January 2008.  With Pacific Hospitality,
4  LLC as a member, however, its consent to the transaction was required.  As a result
5  of the revelations regarding Defendants wrongful activities, Surinder and Santokh,
6  on behalf of Pacific Hospitality, LLC refused to consent to the transaction.

7         100.   At the October 2009 meeting with Elhouty, M. Patel for himself and
8  claiming to act on behalf of the other Defendants, represented that Defendants
9  would pay Pacific Hospitality, LLC $510,000 with respect to the Corsicana
10  Properties, and pay Pacific Hospitality, LLC, Kamboj and R. Singh $245,000 with
11  respect to the Denison HIE in exchange for an assignment of Pacific Hospitality,
12  LLC interest in New Hope Hospitality, LLC.  Defendants sought the assignment so
13  that Pacific Hospitality, LLC's consent would no longer be needed for the Patel
14  Defendants' refinancing of the carry-back financing referenced above.  Patel
15  represented that the payments would be made as follows: $410,000 by promissory
16  notes issued by Dhillon, Gurender Sahani and Tarlochan S. Kataria, which notes
17  were to be secured by second trust deeds on certain hotel properties, and $100,000
18  cash paid by M. Patel.   Defendants caused written agreements to be prepared
19  memorializing the foregoing, including that certain Assignment of Membership
20  Interest Agreement (the "NHH Assignment") which was provided to Surinder for
21  signature.

22         101.   Relying upon Defendants' representation and promises, Pacific
23  Hospitality LLC executed the NHH Assignment assigning Pacific Hospitality,
24  LLC's interest in NHH.  Surinder emailed the NHH Assignment to M. Patel with
25  specific instructions that he could not use it unless and until all agreements
26  concerning repayment to Pacific Hospitality, LLC, Kamboj and R. Singh were
27  finalized, executed and delivered by all parties.

28
- 25 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1   102.   Following transmittal of the NHH Assignment, Surinder discovered
2   that Defendants had impaired the security to be used to secure payment of the
3   $410,000 promissory notes by placing false liens against the properties.  Those
4   false liens wiped out any equity that could have secured the repayment.

5   103.   Despite the fact that the transaction was never consummated,
6   Defendants used the NHH Assignment to obtain an SBA guaranteed loan used to
7   pay off the Patel Defendants' loan.

8   104.   Had Plaintiffs known Defendants' promises were false at the time they
9   were made, Pacific Hospitality LLC would not deliver the NHH Assignment to M.
10  Patel.

11                        **FIRST CLAIM FOR RELIEF**
12                     **FOR BREACH OF FIDUCIARY DUTY**
13                           Against All Defendants

14  105.   Plaintiffs incorporate by this reference each and every allegation
15  contained in paragraphs 1 through 104 above, as though fully set forth herein.

16  106.   At all times relevant herein, Dhillon was acting on behalf of all
17  Defendants in his dealings with Plaintiffs.

18  **Mt. Pleasant HIE**

19  107.   Dhillon was a partner with Plaintiffs in the Mt. Pleasant HIE
20  transaction.  Dhillon later unilaterally formed Mt. Pleasant Properties, LLC and
21  placed the partnership interests into the limited liability company, with Dhillon as
22  Manager.  As a result, Dhillon owed Plaintiffs a fiduciary duty to act in the highest
23  of good faith and to act in a fair, honest and open manner.

24  108.   Defendants breached that duty, by, among other things:
25              a.      Failing to disclose his relationship between the Defendants;
26              b.      Failing to disclose the $1 million price increase for Mount
27                      Pleasant HIE;

28                                                    - 26 -
     [PROPOSED]
     **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

c.  That Dhillon never intended to invest $140,000 of his own money.  Instead, Dhillon was being paid profits by the Patel Defendants from, *inter alia*, funds invested by Plaintiffs.

d.  Using Sant's down payment money for the Mount Pleasant HIE for Defendants' other transaction for a hotel transaction in Waxihachie, Texas, not involving Plaintiffs;

e.  Failing to disclose all material information he had concerning the transaction, including

    i.  The sale price was not below market, but was well above the $6 million that the Patel Defendants paid.  In addition to the Mt. Pleasant HIE, the $6 million purchase price also included an undeveloped hotel lot (the Patel Defendants would later construct a competing hotel).

    ii.  That a competing Hampton Inn was opening nearby the Mt. Pleasant HIE.

    iii.  That the Patel Defendants intended to construct and operate a competing hotel, so the revenue numbers for the Mt. Pleasant HIE did not reflect what Plaintiffs could expect.

    iv.  Dhillon never intended to manage the day-to-day operations of the hotel once the loans he arranged were funded.

f.  That the sales price was inflated to, *inter alia*, pay secret profits to Dhillon;

g.  Dhillon's self-dealing in receiving undisclosed profits.

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Corsicana Properties**

109.   Dhillon was the Manger of NHH and was the ostensible Manager of Starlite.  As a result, Dhillon owed Pacific Hospitality, LLC a fiduciary duty to act in the highest of good faith and to act in a fair, honest and open manner.

110.   Defendants breached that duty, by, among other things:

   a.   Failing to disclose his relationship between the Defendants;

   b.   Failing to disclose the $1 million price increase between the Corsicana HIE and Corsicana Hampton;

   c.   Failing to disclose all material information he had concerning the transaction, including that the sale price was well above market.

   d.   That the sales price was inflated to, *inter alia*, pay secret kickbacks to Dhillon;

   e.   Dhillon's self-dealing in receiving undisclosed kickbacks.

**The Denison HIE**

111.   Dhillon was partners with Kamboj, R. Singh and Pacific Hospitality, LLC in the Denison HIE transaction.  As a result, Dhillon owed Kamboj, R. Singh and Pacific Hospitality, LLC a fiduciary duty to act in the highest of good faith and to act in a fair, honest and open manner.

112.   Defendants breached that duty, by, among other things:

   a.   Failing to disclose his relationship between the Defendants;

   b.   That the sales price was inflated to, *inter alia*, pay secret kickbacks to Dhillon;

   c.   Dhillon's self-dealing in receiving undisclosed kickbacks.

**As to All Transactions**

113.   Defendants and other unnamed co-conspirators, knowingly and willfully conspired and agreed among themselves and worked in concert with one

- 28 -

1 another toward the common goal of damaging Plaintiffs by the aforementioned

2 breaches of fiduciary duty. The actions taken in furtherance of the conspiracy

3 resulted in direct benefits to Defendants in that they have received personal

4 financial benefits they would not have otherwise received. The actions of

5 Defendants resulted in direct harm to Plaintiffs.

6      114. Further, Defendants aided and abetted the breaches of fiduciary duty

7 by Dhillon by knowingly giving substantial assistance or encouragement to Dhillon

8 in the commission of those acts.

9      115. As a direct and proximate result of the conduct of Defendants,

10 Plaintiffs have been damaged in an amount according to proof at trial, but in excess

11 of the following amounts:

| Name | Mt. Pleasant HIE | Corsicana HIE and Hampton | Denison HIE | Total |
|------|------|------|------|------|
| Chhabra | $280,000 | | | $280,000 |
| Sant | $280,000 | | | $280,000 |
| D. Singh | $280,000 | | | $280,000 |
| Kamboj | $140,000 | | $80,000 | $220,000 |
| R. Singh | $140,000 | | $80,000 | $220,000 |
| Pacific Hosp. | $140,000 | $510,000 | $85,000 | $735,000 |
| | | | **TOTAL** | **$2,015,00** |

20      116. In addition to the foregoing, each of the Plaintiffs signed personal

21 guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual

22 Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount

23 of $1,800,000.

24      117. In addition to the foregoing, Plaintiffs are entitled to interest at the

25 legal rate from and after August 2007, plus incidental and consequential damages

26 according to proof.

- 29 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1      118.  Plaintiffs are informed and believe and on the basis of said

2  information and belief allege that Defendants' conduct was taken with the intent to

3  injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and

4  property.  Plaintiffs are informed and believe and on the basis of said information

5  and belief allege that such fraudulent conduct constitutes clear and convincing

6  evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to

7  California *Civil Code* §3294.  As such, Plaintiffs are entitled to punitive damages

8  and exemplary damages against Defendants herein for the sake of example and to

9  punish Defendants for their unlawful conduct.

10                  **SECOND CLAIM FOR RELIEF**

11                      **FOR FRAUD**

12                Against all Defendants

13      119.  Plaintiffs incorporate by this reference each and every allegation

14  contained in paragraphs 1 through 118 above, as though fully set forth herein.

15  **A.**    **Mt. Pleasant Transaction**

16  **Misrepresentations**

17      120.  Defendants made the misrepresentations as alleged herein concerning

18  the Mt. Pleasant HIE transaction, including but not limited to the allegations

19  contained in paragraphs 47, 48, 49, 50, 51, 52, 57, 58, 59, 60, and 61.

20  **Intent to Defraud**

21      121.  Defendants made each and every representation made at the August

22  2007 meeting with the intent to induce Plaintiffs, and each of them, to rely upon the

23  truth of those representations in agreeing to enter into a partnership and to invest

24  money in connection with the purchase of the Mt. Pleasant HIE and its operation.

25  Defendants made each and every representation in the October 15, 2007 telephone

26  call and the October 26, 2007 meeting with the intent to induce Plaintiffs to pay

27  $1.26 million into Fidelity.

28

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Reliance**

122.   Plaintiffs' relied upon the truth of the representations made by Dhillon at the August 2007, meeting in agreeing to enter into a partnership with Dhillon concerning the Mt. Pleasant HIE, in signing the August Mt. Pleasant Contract, in paying $100,000 to Fidelity as the deposit, and in paying into Fidelity  $1.26 million.   Had Plaintiffs known that Dhillon's representations were false and had Plaintiffs known the true facts, they never would have: (1) entered into a partnership with Dhillon; (2) Signed the August Mt. Pleasant HIE Contract; (3) Paid $100,000 into Fidelity in August 2007; (4) Paid $1.24 Million to Fidelity on October 26, 2007; or (5) Signed personal guaranties obligating them to pay $6,146,250 to Mutual Bank.

123.   Dhillon exploited Plaintiffs devout religious beliefs and practices to cause Plaintiffs to rely on Defendants' representations.  Morever, Dhillon used his claimed experience and expertise in order to induce Plaintiffs to rely on Defendants' representations.  Moreover, Plaintiffs had no information as to the real estate market in Texas, and in particular the hotel real estate market in Texas. Accordingly, Plaintiffs were justified in relying on Dhillon and the other Defendants.

**Damages**

124.   As a result of Defendants conduct, Plaintiffs suffered damages. Collectively, Plaintiffs deposited with Fidelity $1.26 million, by cashier's checks and wired funds as follows:  Chhabra- $280,000;  Sant- $280,000;  D. Singh- $280,000;  Kamboj- $140,000;  R. Singh- $140,000; and Pacific Hospitality, LLC- $140,000.

125.   In addition to the foregoing, each of the Plaintiffs signed personal guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual

- 31 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount

2  of $1,800,000.

3  **B.      The Corsicana Property Transactions**

4  **Misrepresentations**

5          126.   Defendants made the misrepresentations as alleged herein concerning

6  the Corsicana Property transactions, including, but not limited to, the allegations

7  contained in paragraphs 66 through 73.

8  **Intent to Defraud**

9          127.   Defendants made each and every one of the above misrepresentations

10  with the intent to induce Pacific Hospitality, LLC to rely upon the truth of those

11  representations in agreeing to invest $510,000 into the Corsicana HIE and

12  Corsicana Hampton properties.

13          128.   Further, M. Patel falsely promised to pay Pacific Hospitality, LLC

14  $510,000 and pay Pacific Hospitality, LLC, Kamboj and R. Singh $245,000 in

15  order to induce Pacific Hospitality, LLC to give M. Patel that certain Assignment

16  of Membership Interest Agreement assigning Pacific Hospitality, LLC's interest in

17  New Hope Hospitality, LLC to Dhillon, Gurender Sahani and Tarlochan S. Kataria.

18  **Reliance**

19          129.   Pacific Hospitality, LLC relied upon the truth of the representations

20  made by Dhillon in agreeing invest $510,000 into the Corsicana HIE and Corsicana

21  Hampton properties.  In reliance, Pacific Hospitality, LLC paid $484,500 into

22  Fidelity separately invested an additional $16,150.

23          130.   Dhillon exploited Plaintiffs devout religious beliefs and practices to

24  cause Plaintiffs to rely on Defendants' representations.  Morever, Dhillon used his

25  claimed experience and expertise in order to induce Plaintiffs to rely on

26  Defendants' representations.  Moreover, Plaintiffs had no information as to the real

27  estate market in Texas, and in particular the hotel real estate market in Texas.

28

- 32 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Accordingly, Plaintiffs were justified in relying on Dhillon and the other
2  Defendants.

3      131.   Dhillon exploited Surinder and Santokh's devout religious beliefs and
4  practices to cause them to rely on Defendants' representations.  Morever, Dhillon
5  used his claimed experience and expertise in order to induce Plaintiffs to rely on
6  Defendants' representations.  Moreover, Plaintiffs had no information as to the real
7  estate market in Texas, and in particular the hotel real estate market in Texas.
8  Accordingly, Plaintiffs were justified in relying on Dhillon and the other
9  Defendants.

10  **Damages**

11      132.   As a result of Defendants conduct, Pacific Hospitality, LLC suffered
12  damages in the amount of $510,000.

13  **C.     The Denison HIE Transaction**

14  **Misrepresentations**

15      133.   Defendants made the misrepresentations as alleged herein concerning
16  the Denison HIE transaction, including but not limited to the allegations contained
17  in paragraphs 74 through 79.

18  **Intent to Defraud**

19      134.   Defendants made each and every one of the above misrepresentations
20  with the intent to induce Kamboj, R. Singh and Pacific Hospitality, LLC to invest
21  $245,000 into the Denison HIE as follows: Kamboj- $80,000; R. Singh- $80,000;
22  and Pacific Hospitality, LLC– $85,000.

23  **Reliance**

24      135.   Kamboj, R. Singh and Pacific Hospitality, LLC relied upon the truth
25  of the representations made by Dhillon in or about April 2008 in agreeing to invest
26  $245,000 into the Denison HIE.

27

28

- 33 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

136.   Dhillon exploited Plaintiffs devout religious beliefs and practices to cause Plaintiffs to rely on Defendants' representations.  Morever, Dhillon used his claimed experience and expertise in order to induce Plaintiffs to rely on Defendants' representations.  Moreover, Plaintiffs had no information as to the real estate market in Texas, and in particular the hotel real estate market in Texas. Accordingly, Plaintiffs were justified in relying on Dhillon and the other Defendants.

137.   Dhillon exploited Plaintiffs' devout religious beliefs and practices to cause them to rely on Defendants' representations.  Morever, Dhillon used his claimed experience and expertise in order to induce Plaintiffs to rely on Defendants' representations.  Moreover, Plaintiffs had no information as to the real estate market in Texas, and in particular the hotel real estate market in Texas. Accordingly, Plaintiffs were justified in relying on Dhillon and the other Defendants.

**Damages**

138.   As a result of Defendants conduct, Pacific Hospitality, LLC suffered damages in the amount of $85,000, Kamboj suffered damages in the amount of $80,000 and R. Singh suffered damages in the amount of $80,000.

**As Additional Damages**

139.   In addition to the foregoing, Plaintiffs are entitled to interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.

140.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants' conduct was taken with the intent to injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and property.  Plaintiffs are informed and believe and on the basis of said information and belief allege that such fraudulent conduct constitutes clear and convincing

- 34 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to
2  California *Civil Code* §3294. As such, Plaintiffs are entitled to punitive damages
3  and exemplary damages against Defendants herein for the sake of example and to
4  punish Defendants for their unlawful conduct.

5  ## THIRD CLAIM FOR RELIEF

6  ### FOR FRAUDULENT CONCEALMENT

7  Against all Defendants

8  141. Plaintiffs incorporate by this reference each and every allegation
9  contained in paragraphs 1 through 140 above, as though fully set forth herein.

10  142. Defendants owed a duty to disclose all facts and information
11  concerning the transactions. That duty arose from (1) Dhillon's fiduciary
12  relationship with Plaintiffs (see paragraphs 53, 60, 66, 73 and 74). Furthermore,
13  Dhillon asserted as a fact that which he knew to be untrue. Finally, Dhillon
14  suppressed facts after giving Plaintiffs information which was likely to mislead
15  them by suppressing such facts.

16  143. Defendants should have disclosed, including but not limited to: (1)
17  Defendants' relationship to one another as alleged herein; (2) Defendants' financial
18  arrangements between themselves as alleged herein, including but not limited to
19  the secret kickbacks; (3) Defendants' self-dealing as alleged herein; (4) That
20  Defendants were engaged in a flip of the Mount Pleasant HIE as alleged herein;
21  (5) The inflated value of the real estate being purchased as alleged herein as alleged
22  herein; and (6) Defendants' competing businesses in same market as alleged
23  herein;

24  144. Defendants intentionally concealed the above-referenced facts from
25  Plaintiffs. Defendants concealed their financial arrangements by (1) including in
26  each contract that no finders fees were being paid; (2) by not disclosing the
27  payments made by the Patel Defendant to the Dhillon Defendants despite the duty

28  - 35 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  to disclose; and (3) feigning investments by Dhillon by claiming to have made
2  them outside of the various escrows.  Defendants concealed the flip of the Mount
3  Pleasant HIE by (1) concealing that the Patel Defendants did not own the property
4  at the time they contracted to sell it; (2) representing to Plaintiffs that Mike Patel
5  was partners with the current owner; and (3) representing to Plaintiffs that they
6  needed to close in October 2007 because of a partnership buyout involving Mike
7  Patel.  Defendants concealed the $1 million price increase of the Mount Pleasant
8  HIE.  Defendants concealed that they used Sant's funds for the Mount Pleasant HIE
9  transaction in Defendants' transaction for a hotel located in Waxahachie, Texas.

10      145.  Defendants and other unnamed co-conspirators, knowingly and
11  willfully conspired and agreed among themselves and worked in concert with one
12  another toward the common goal of damaging Plaintiffs by the aforementioned
13  fraud.  The actions taken in furtherance of the conspiracy resulted in direct benefits
14  to Defendants in that they have received personal financial benefits they would not
15  have otherwise received.  The actions of Defendants resulted in direct harm to
16  Plaintiffs.

17      146.  Further, Defendants aided and abetted the fraud by Dhillon by
18  knowingly giving substantial assistance or encouragement to Dhillon in the
19  commission of those acts.

20      147.  As a direct and proximate result of the conduct of Defendants,
21  Plaintiffs have been damaged in an amount according to proof, but in excess of the
22  following amounts:

| Name | Mt. Pleasant HIE | Corsicana HIE and Hampton | Denison HIE | Total |
|---|---|---|---|---|
| Chhabra | $280,000 | | | $280,000 |
| Sant | $280,000 | | | $280,000 |
| D. Singh | $280,000 | | | $280,000 |

- 36 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

| | | | | |
|---|---|---|---|---|
| Kamboj | $140,000 | | $80,000 | $220,000 |
| R. Singh | $140,000 | | $80,000 | $220,000 |
| Pacific Hosp. | $140,000 | $510,000 | $85,000 | $735,000 |
| | | | **TOTAL** | **$2,015,00** |

148.   In addition to the foregoing, each of the Plaintiffs signed personal guaranties for the financing for the Mt. Pleasant HIE loans as follows: Mutual Bank loan in the amount of $4,346,250; and Mutual Bank/SBA loan in the amount of $1,800,000.

149.   In addition to the foregoing, Plaintiffs are entitled to interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.

150.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants' conduct was taken with the intent to injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and property. Plaintiffs are informed and believe and on the basis of said information and belief allege that such fraudulent conduct constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to California *Civil Code* §3294. As such, Plaintiffs are entitled to punitive damages and exemplary damages against Defendants herein for the sake of example and to punish Defendants for their unlawful conduct.

### FOURTH CLAIM FOR RELIEF

### FALSE PROMISE

### Against all Defendants

151.   Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 150  above, as though fully set forth herein.

152.   Defendants promise to pay Pacific Hospitality, LLC $510,000 in exchange for an assignment of Pacific Hospitality, LLC's interest in NHH as

- 37 -

1  alleged in paragraphs 99 through 104.  Defendants made the promise to pay Pacific
2  Hospitality, LLC with the intent to induce Plaintiffs to rely upon the promise and
3  execute the aforementioned assignment.

4      153.  At the time Defendants made the aforementioned promise, Defendants
5  had no intent to perform as promised. Defendants' lack on intent to perform is
6  demonstrated by Defendants' efforts to impair the security to be used to secure
7  payment of the $410,000 in promissory notes.

8      154.  Defendants did not perform as promised as Defendants did not pay
9  Plaintiffs the promised amounts.  As a direct and proximate result of the conduct of
10  Defendants, Pacific Hospitality, LLC was damaged in an amount at according to
11  proof, but in excess of $510,000.

12      155.  In addition to the foregoing, Plaintiffs are entitled to interest at the
13  legal rate from and after October 2009, plus incidental and consequential damages
14  according to proof.

15      156.  Plaintiffs are informed and believe and on the basis of said
16  information and belief allege that Defendants' conduct was taken with the intent to
17  injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights and
18  property.  Plaintiffs are informed and believe and on the basis of said information
19  and belief allege that such fraudulent conduct constitutes clear and convincing
20  evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to
21  California *Civil Code* §3294.  As such, Plaintiffs are entitled to punitive damages
22  and exemplary damages against Defendants herein for the sake of example and to
23  punish Defendants for their unlawful conduct.

24  ///
25  ///
26  ///
27
28

- 38 -

[PROPOSED]
SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## FIFTH CLAIM FOR RELIEF

### FOR VIOLATION OF 18 U.S.C. §1962(c) (RICO)

Against all Defendants

157.   Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 156 above, as though fully set forth herein.

158.   Defendants M. Patel, C. Patel and Dhillon are "persons" within the meaning of 18 U.S.C. §§1961(3) and 1961(4).

159.   Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants M. Patel C. and Dhillon, together with other persons constitute an enterprise within the meaning of 18 U.S.C. 1961(4), that is, a group of individuals associated in fact which engaged in the conduct alleged herein, including violations of 18 U.S.C. §1344, 18 U.S.C. §1952 and 18 U.S.C. §1344.   The association in fact of Defendants M. Patel C. and Dhillon acted together with the named entity Defendants.  The Patel Defendants used Sagestar, Corsicana, Newcrest, Ennis, Denison and Holdings.  Dhillon entities, including but not limited to DMI, NHH and Starlite.

160.   Plaintiffs are informed and believe and on the basis of said information and belief allege that M. Patel, C. Patel and Dhillon were each employed by or associated with the enterprises and did conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, including but not limited to:

**(1)     Wire Fraud in violation of 18 U.S.C. §1344.**

Between July 2007 and at least May 2008, Defendants engaged in multiple instances of wire fraud in violation of 18 U.S.C. §1344 by causing wire transactions to occur in connection with the fraud perpetrated upon Plaintiffs. Obtaining the money from the transactions was obviously an essential part of the scheme perpetrated by Defendants.  As an integral part of the scheme to defraud

- 39 -

1  Plaintiffs, Defendants used the services of Fidelity National Title Company
2  ("Fidelity"), in Dallas, Texas, to cause Plaintiffs to wire the funds for the purchase
3  of the properties and to obtain bank financing.  As even more integral to the
4  scheme, Defendants used the services of Fidelity to wire the profits obtained from
5  each sale transaction engaged in by Defendant.  The wire transactions engaged in
6  by Defendants or on their behalf are as follows:

7          (a)   On or about October 30, 2007, Dhillon gave Plaintiff Sant
8               wiring instructions to Fidelity for him to use to make his
9               investment of $67,942.88 into the Mount Pleasant HIE.
10              Unbeknownst to Plaintiffs, the wiring instructions given to Sant
11              by Dhillon was for an unrelated transaction Dhillon and the
12              Patel Defendants were engaged in Waxahachie, Texas.  Sant
13              wired the funds and Fidelity applied to the funds to both the Mt.
14              Pleasant HIE transaction and the Waxahachie transaction.

15         (b)   Defendants caused Plaintiffs to wire funds to Fidelity for use in
16              the subject transactions, including but not limited to: $230,000
17              by Plaintiff Santokh Arora on October 26, 2007 (Mt. Pleasant
18              HIE); $67,942.88 on October 30, 2007 by Plaintiff Sant;
19              $204,000 by Plaintiff Surinder-pal Arora on January 24, 2008
20              (Corsicana HIE).

21         (c)   Fidelity wired profits from the various transactions to the Patel
22              Defendants, including but not limited to: $2,818,541.47 on
23              January 25, 2008 (to Newcrest Hotels, LTD);$980,991.32 on
24              May 20, 2008 (to Sagestar Holdings, LTD); $100,000 on May
25              23, 2007 (to Newcrest Hotels, LTD); $75,000 on July 10, 2007
26              (to Newcrest Hotels, LTD); $50,000 on July 18, 2007 (to
27              Newcrest Hotels, LTD); $230,000 on October 26, 2007 (to

28

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1        Sagestar Holdings, LTD); $880,000 on October 27, 2007 (to

2        Sagestar Holdings, LTD); $75,000 on November 2, 2007 (to

3        Newcrest Hotels, LTD); $100,000 on November 5, 2007 (to

4        Newcrest Hotels, LTD); $150,000 on December 20, 2007 (to

5        Corsicana Lodging, LLC); $50,000 on April 2, 2008 to (to

6        Newcrest Hotels, LTD).

7    (d)    Defendants caused Fidelity to wire kickbacks from the various

8        transactions to the Dhillon Defendants, including but not limited

9        to: $500,000 on October 29, 2007 (to DMI); $550,000 on

10        January 25, 2008 (to DMI).

11    (e)    Defendants caused Fidelity to wire commissions to Bruce Patel,

12        the Patel Defendants' broker, including but not limited to:

13        $50,000 on January 25, 2008.

14    **(2)    Wire Fraud in violation of 18 U.S.C. §1344.**

15    From March 2007 through at least October 2009, Defendants engaged in

16 multiple instances of wire fraud in violation of 18 U.S.C. §1344 by sending and

17 receiving emails to facilitate their fraud and scheme, including sending business

18 summaries and business projections for the various hotels, hotel occupancy rates,

19 communications and general correspondence concerning the transactions.

20 Defendants used email to communicate with Fidelity, Plaintiffs and themselves.

21 The number of emails exceed 1000 in number.

22    **(3)    Bank Fraud in violation of 18 U.S.C. §1344.**

23    On or about May 2008, Defendants knowingly executed the scheme to obtain

24 funds under custody and control of financial institution by means of false or

25 fraudulent pretenses in violation of 18 U.S.C. §1344.  Defendants submitted a

26 contract to Mutual Bank of Harvey Illinois in connection with the $4,346,250 loan

27 used to pay off the Patel Defendants on the Mt. Pleasant HIE transaction. The

28

- 41 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  contract submitted to the bank, signed by Mehul Patel aka Mike Patel, on behalf of

2  Sagestar Holdings, LTD (seller) and by Dhillon as manager of Mount Pleasant

3  Properties, LLC (buyer) represented and warranted that no finder's fees were being

4  paid.  Defendants knowingly misrepresenting and concealing from the bank that

5  the Patel Defendants were paying Dhillion, through DMI so-called finders' fees

6  ranging from $250,000 to $750,000.

7      **(4)    Interstate Travel in violation of 18 U.S.C. §1952.**

8          In September and October 2009, Defendants conducted and participated in

9  the conduct of the affairs of the enterprise through a pattern of racketeering activity

10  and traveled in interstate commerce in violation of 18 U.S.C. §1952 as follows:

11          (a)    Dhillon made numerous trips between California and Texas in

12                 carrying out the acts alleged herein.

13          (b)    In September 2009, Mike Patel and Chuck Patel came to Los

14                 Angeles to meet with Elhouty regarding the Denison HIE

15                 transaction and with Sangha regarding his ownership in the

16                 Ennis HIE and Corsicana properties.  In August 2009, Sangha

17                 discovered that as part of Dhillon's efforts to finance the Ennis

18                 HIE transaction, One World Bank was provided a loan

19                 application with Sangha's forged signature and false financial

20                 statements for the purpose of obtaining a loan for the Ennis HIE

21                 to pay off Mike Patel.

22          (c)    In October 2009, Mike Patel was in Los Angeles again to meet

23                 with Elhouty.  At that time, Mike Patel engaged in discussions

24                 with Elhouty on behalf of some of the Plaintiffs.  Mike Patel, on

25                 behalf of himself and Dhillon, Gurender Sahani and Tarlochan

26                 S. Kataria, agreed pay Pacific Hospitality, LLC $510,000 and

27                 pay Pacific Hospitality, LLC, Parshotam Kamboj and R. Singh

28

- 42 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

$245,000 ($410,000 by promissory notes issued by Dhillon, Gurender Sahani and Tarlochan S. Kataria (secured by other Dhillon hotel properties) and $100,000 cash paid by Mike Patel) representing the return of their collective investments in Denison HIE and the Corsicana Properties. In exchange, Mike Patel required, *inter alia*, that Pacific Hospitality, LLC assign its interest in New Hope Hospitality, LLC to Dhillon, Gurender Sahani and Tarlochan S. Kataria. That assignment was necessary for New Hope Hospitality, LLC to refinance the $1,320,000 second mortgage of the Patel Defendants' entity Corsicana Lodging, LLC secured against the Corsicana Hampton. Pacific Hospitality, LLC would not participate in any part of a loan transaction. On the basis of Mike Patel's promises made in Los Angeles, on October 2, 2009, Surinder-Pal Arora emailed Mike Patel that certain Assignment of Membership Interest Agreement assigning Pacific Hospitality, LLC's interest in New Hope Hospitality, LLC to Dhillon, Gurender Sahani and Tarlochan S. Kataria, which he was specifically instructed he could not use unless and until the settlement was finalized. The settlement fell apart after Plaintiffs discovered that Dhillon impaired the security with false liens. Nevertheless, Defendants used the Assignment of Membership Interest Agreement as part of their efforts to obtain an SBA loan used to pay off the Patel Defendants.

161. The conduct of Defendants forms a "pattern of racketeering activity".

///

///

- 43 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1    Relatedness

2        The conduct of the Defendants has the same or similar purposes, results,

3 participants, victims, or methods of commission, or otherwise are interrelated by

4 distinguishing characteristics.

5        The purpose of each transaction was to use Plaintiffs to purchase hotels from

6 the Patel Defendants at extraordinary prices whereby bank loans were be obtained

7 using Plaintiffs' money as the down payment and whereby the Patel Defendants

8 and Dhillon would share in the profits. Every transaction alleged herein involved

9 transactions for the sale of hotels owned by the Patel Defendants. Every

10 transaction alleged herein was set up by Dhillon. Every transaction was nearly

11 identical in form, proceeding in the same manner and all were transacted through

12 Fidelity using Maggie Vogeler as the escrow officer. The same victims were

13 harmed by Defendants' conduct.

14    Continuity

15        The conduct of the Defendants as alleged herein went from at least March

16 2007 to October 2009. The "continuity" in this case could be either a closed period

17 of repeated conduct, or evidences conduct, that by its very nature, has a threat of

18 repetition.

19        Indeed, these Defendants have perpetrated the same scheme on others– both

20 within the transactions alleged herein and regarding other hotel transactions not

21 part of this action.    Several of the Defendants in this case are parties to that certain

22 action styled <u>Soni v. Jagmohan Dhillon, Mehul Patel aka Mike Patel, Newcrest</u>

23 <u>Hotels, LTD, Premium Hotel Management, Inc., Harminder Dhillon, Harwant</u>

24 <u>Dhillon and Bawa Dhillon</u>, Cause No. 10-14506. Dr. Soni is a California resident

25 who was lured by Dhillon into two hotel transactions for hotels owned by the Patel

26 Defendants in Sherman, Texas and Fort Worth Texas.

27

28
                                    - 44 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

162.   Plaintiffs are informed and belief that the Patel Defendants and Dhillon uniformly operate to inflate hotel sales prices for bank financed transactions by the amount paid to Dhillon as a secret profit.  Defendants uniformly used Fidelity for all transactions.  Defendants uniformly used Maggie Vogeler as the escrow officer for all transactions.  Defendants uniformly wired and caused wiring of funds in and out of Fidelity on all transactions.

163.   As a direct and proximate result of the conduct of Defendants, Plaintiffs have been damaged.  Plaintiffs have been damaged in the amount of approximately $8.2 million, together with interest at the legal rate from and after August 2007, plus incidental and consequential damages according to proof.  The damages consist of $1.26 million invested in the Mount Pleasant HIE transaction; loan guaranties on the Mount Pleasant HIE bank loans in the amount of $6,146,250; $510,000 invested in the Corsicana Properties; and $245,000 invested and expended in the Denison HIE.

164.   As a result of Defendants' conduct, Plaintiffs are entitled to recover threefold the damages sustained, costs of suit and attorneys fees.

165.   Plaintiffs are seeking appropriate orders, including, but not limited to: That Defendants, and each of them, divest themselves of any interest, direct or indirect, in each of the enterprises alleged herein; that this Court impose reasonable restrictions on the future activities of Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; and ordering dissolution or reorganization of the enterprises alleged herein.

///

///

///

- 45 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

## SIXTH CLAIM FOR RELIEF

## FOR UNFAIR BUSINESS PRACTICE IN

## VIOLATION OF CALIFORNIA BUSINESS &

## PROFESSIONS CODE §17200 *et seq.*

Against all Defendants

166.   Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 165 above, as though fully set forth herein.

167.   Each of the acts alleged herein is either unfair, illegal or fraudulent and has damaged Plaintiffs as set forth herein.

168.   Plaintiffs are entitled to recovery of the funds rightfully belonging to them but taken by Defendants as a result of their unfair competition and are entitled to the disgorgement of said ill gotten gains and the restitution thereof, pursuant to both principles of common law and the provisions of California Business & Professions Code §17203.

**WHEREFORE,** Plaintiffs pray for judgment against the Defendants, and each of them as follows:

## ON THE FIRST CLAIM FOR RELIEF

1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $8,200,000;

2.   For consequential and incidental damages according to proof;

3.   For punitive and exemplary damages according to proof at trial.

## ON THE SECOND CLAIM FOR RELIEF

1.   That Defendants be ordered to pay to Plaintiff's damages in an amount according to proof, but in an amount estimated to be approximately $8,200,000;

2.   For consequential and incidental damages according to proof;

3.   For punitive and exemplary damages according to proof at trial.

- 46 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1

### ON THE THIRD CLAIM FOR RELIEF

2  1. That Defendants be ordered to pay to Plaintiff's damages in an amount

3 according to proof, but in an amount estimated to be approximately $8,200,000;

4  2. For consequential and incidental damages according to proof;

5  3. For punitive and exemplary damages according to proof at trial.

6

### ON THE FOURTH CLAIM FOR RELIEF

7  1. That Defendants be ordered to pay to Plaintiff's damages in an amount

8 according to proof, but in an amount estimated to be approximately $510,000;

9  2. For consequential and incidental damages according to proof;

10  3. For punitive and exemplary damages according to proof at trial.

11

### ON THE FIFTH CLAIM FOR RELIEF

12  1. That Defendants be ordered to pay to Plaintiff's damages in an amount

13 according to proof, but in an amount estimated to be approximately $8,200,000;

14  2. For consequential and incidental damages according to proof;

15  3. For threefold damages according to proof at trial.

16

### ON THE SIXTH CLAIM FOR RELIEF

17  1. For injunctive and equitable relief;

18  2. For disgorgement of profits

19  3. For consequential and incidental damages according to proof.

20 ///

21 ///

22 ///

23

24

25

26

27

28

[PROPOSED]

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

## ON ALL CAUSES OF ACTION

1.      For reasonable attorneys fees as permitted by law or otherwise according to proof;

2.      For prejudgment interest according to proof;

3.      For costs of suit herein incurred; and

4.      For such other and further relief as the Court may deem proper.


DATED: September 14, 2011              SMITH LAW FIRM
                                      A Professional Law Corporation


                              By:      /s Craig R. Smith
                                      CRAIG R. SMITH
                                      Attorneys for Plaintiffs
                                      MANMOHAN CHHABRA;
                                      PARSHOTAM KAMBOJ; RANJIT
                                      SINGH; DARSHAN SINGH;
                                      SHERBIR SANT; SURINDER-PAL
                                      ARORA; SANTOKH ARORA; and
                                      PACIFIC HOSPITALITY, LLC, a
                                      Texas limited liability company

- 48 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1   **DEMAND FOR JURY TRIAL**

2       Plaintiffs, MANMOHAN CHHABRA; PARSHOTAM KAMBOJ; RANJIT

3   SINGH; DARSHAN SINGH; SHERBIR SANT; SURINDER-PAL ARORA;

4   SANTOKH ARORA; and PACIFIC HOSPITALITY, LLC, a Texas limited

5   liability company, hereby demand a jury trial as provided by Rule 38(a) of the

6   Federal Rules of Civil Procedure.

7

8   DATED: September 14, 2011          SMITH LAW FIRM
                                       A Professional Law Corporation
9

10

11                                     By:      /s Craig R. Smith
                                                CRAIG R. SMITH
12                                              Attorneys for Plaintiffs
                                                MANMOHAN CHHABRA;
13                                              PARSHOTAM KAMBOJ; RANJIT
                                                SINGH; DARSHAN SINGH;
14                                              SHERBIR SANT; SURINDER-PAL
                                                ARORA; SANTOKH ARORA; and
15                                              PACIFIC HOSPITALITY, LLC, a
                                                Texas limited liability company
16

17

18

19

20

21

22

23

24

25

26

27

28
                                       - 49 -

**[PROPOSED]**
**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**