1   DANIEL C. LAPIDUS (Bar No. 227170)
    dan@lapiduslaw.com
2   JIM D. BAUCH (Bar No. 199454)
    jim@lapiduslaw.com
3   EVAN PITCHFORD (Bar No. 256536)
    evan@lapiduslaw.com
4   LAPIDUS & LAPIDUS
    A PROFESSIONAL LAW CORPORATION
5   177 SOUTH BEVERLY DRIVE
    BEVERLY HILLS, CALIFORNIA 90212
6   TEL: 310-550-8700
    FAX: 310-943-2471
7
    Attorneys for Defendant Jagmohan Dhillon
8
                    UNITED STATES DISTRICT COURT
9
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11  MANMOHAN CHHABRA; PARHOTAM        CASE NO.: 2:11-cv-03724-RGK (VBKx)
    KAMBOJ; RANJIT SINGH; DARSHAN
12  SINGH; SHERBIR SANT; SURINDER-    **DEFENDANT JAGMOHAN
    PAL ARORA; SANTOKH ARORA; and     DHILLON'S NOTICE OF MOTION
13  PACIFIC HOSPITALITY, LLC a Texas  AND MOTION TO DISMISS
    limited liability company;        SECOND AMENDED COMPLAINT;
14                                    MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT
15          Plaintiffs,              THEREOF**

16      vs.                          [Fed. R. Civ. Proc. 12(b)(6) & 9(b).]

17  MEHUL PATEL aka MIKE PATEL;       [[Proposed] Order lodged concurrently
    CHIRAG PATEL aka CHUCK PATEL;     herewith.]
18  JAGMOHAN DHILLON; DHILLON
    MANAGEMENT, INC., a California
19  corporation; NEW HOPE HOSPITALITY,            Hearing
    LLC, a Texas limited liability company;  Date:      November 7, 2011
20  STARLITE HOTELS, LLC, a Texas limited  Time:      9:00 a.m.
    liability company; NEWCREST HOTELS,  Dep't:     840
21  LTD, a Texas limited partnership;     Judge:     The Hon. R. Gary Klausner
    SAGESTAR MANAGEMENT GP, LLC, a
22  Texas limited liability company;      Action Filed:   May 25, 2010
    SAGESTAR HOLDINGS, LTD, a Texas   Removal Date:   April 29, 2011
23  limited partnership; DENISON LODGING,  SAC Filed:      September 16, 2011
    LLC, a Texas limited liability company;  Trial Date:     May 1, 2012
24  CORSICANA LODGING, LLC, a Texas
    limited liability company; and DOES 3
25  through 100, inclusive,

26          Defendants.

27

28

_____

DEFENDANT JAGMOHAN DHILLON'S NOTICE OF MOTION
AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 7, 2011 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable R. Gary Klausner in Courtroom 840 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California, Defendant Jagmohan Dhillon ("Dhillon"), will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b) to dismiss the first, second, third, fourth, fifth, and sixth causes of action contained in the Second Amended Complaint (the "SAC") filed by Plaintiffs Manmohan Chhabra, Parhotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and Pacific Hospitality, LLC (collectively, "Plaintiffs").

Good cause exists to grant this motion because the SAC fails to allege sufficient facts to state a cause of action, and fails to allege fraud with particularity.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the SAC, the original Complaint, the Court's August 8, 2011 Order regarding Dhillon's Motion to Dismiss the original Complaint, and such further evidence and arguments as may be presented at or before the hearing on this matter.

This Motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which was initiated on September 7, 2011, and was completed on September 14, 2011.

DATED: October 6, 2011                    LAPIDUS & LAPIDUS
                                          A PROFESSIONAL LAW CORPORATION


                                           /s/ Jim D. Bauch
                                          JIM D. BAUCH
                                          Attorneys for Defendant
                                          Jagmohan Dhillon

DEFENDANT JAGMOHAN DHILLON'S NOTICE OF MOTION
AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# **TABLE OF CONTENTS**

I. Introduction and Factual Summary ........................................................................... 1

II. Legal Standard For Motion to Dismiss ................................................................... 3

III. Plaintiffs' Fraud Cause of Action Fails to State a Claim as Plaintiffs Have Not and Cannot Plead Their Fraud Allegations With the Required Level of Specificity, Nor Can They Plead Each Element of Fraud ....................................... 4

IV. Plaintiffs' Fraudulent Concealment Cause of Action Fails to State a Claim as Plaintiffs Have Not and Cannot Plead Their Fraud Allegations With the Required Level of Specificity, Nor Can They Plead Each Element of Fraud ......................... 6

V. Plaintiffs' False Promise Cause of Action Fails to State a Claim as Plaintiffs Have Not and Cannot Allege any Misrepresentation by Dhillon or any Correlated Damages ................................................................................................................. 8

VI. Plaintiffs' RICO Cause of Action Fails to State a Claim as Plaintiffs Have Not Pled the Elements of a RICO Claim and Cannot Plead Their Underlying Fraud Allegations With the Required Level of Specificity, Nor Can They Plead Each Element of Fraud ................................................................................................... 10

VII. Plaintiffs' Breach of Fiduciary Duty Cause of Action is Fatally Defective As It Fails to Allege a Fiduciary Relationship With Respect to Dhillon or to Define the Scope of Such a Fiduciary Relationship ............................................................... 13

VIII. Plaintiffs' Unfair Business Practices Cause of Action Fails to State a Claim as Plaintiffs Have Not and Cannot Plead Their Underlying Fraud Allegations With the Required Level of Specificity, Nor Can They Plead Each Element of Fraud ....... 16

IX. Plaintiffs' Alterations to the Fundamental Underlying Facts in the Pleadings are Impermissible and Should Not be Taken as True ................................................. 16

X. Conclusion ........................................................................................................... 18

# TABLE OF AUTHORITIES

## *Cases*

*Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988).... 10, 11

*Amtower v. Photon Dynamics, Inc.*, 158 Cal.App.4th 1582 (2008)....................... 13

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226 (2007)................................................................................................................... 15

*Bank of California v. Connelly*, 36 Cal.App.3d 350 (1973).................................... 14

*Belden v. Henriques*, 8 Cal. 87 (1857) ....................................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 3

*Bruns v. Ledbetter*, 583 F.Supp. 1050 (S.D. Cal. 1984) ......................................... 10

*Cal-Agrex, Inc. v. Van Tassell*, 2008 WL 191330 (N.D. Cal. 2008) ....................... 8

*City of Hope Nat'l. Med. Center v. Genentech, Inc.*, 43 Cal.4th 375 (2008) .......... 16

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000)...................................... 3

*Gervase v. Superior Court*, 31 Cal.App.4th 1218 (1995) ....................................... 10

*Goldrich v. Natural Y Surgical Specialties, Inc.*, 25 Cal.App.4th 772 (1994).......... 4

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).......... 10, 12, 13

*Hakopian v. Mukasey*, 551 F.3d 843 (9th Cir. 2008) .............................................. 17

*Harazim v. Lynam*, 267 Cal.App.2d 127, 131 (1968) ............................................... 6

*Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002 (C.D. Cal. 1982)................................................................................................................... 10

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)................................. 9, 16

*Kirschner Brothers Oil, Inc. v. Natomas Co.*, 185 Cal.App.3d 784 (1986).......13-14

*Lazar v. Superior Court*, 12 Cal.4th 631, 49 Cal.Rptr.2d 377 (1996) .................. 4, 8

*Levine v. Blue Shield of California*, 189 Cal.App.4th 1117 (2010) ........................... 7

*Luedde v. Devon Robotics, LLC*, 2010 WL 2712293 (S.D. Cal. 2010) .................. 17

*Moore v. Brewster*, 96 F.3d 1240 (9th Cir. 1996)...................................................... 4

*Oakland Raiders v. National Football League*, 131 Cal.App.4th 621 (2005)........ 16

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010)....................11, 17-18

*Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 65 P.3d 1255 (2003) ..................... 4

*Spear v. Cyprus*, No. CV09-5860-CAS (AJWx), 2010 WL 883834 (C.D. Cal. Mar. 5, 2010) .................................................................................................... 12

*Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128 (N.D. Cal 2010) ...... 18

*Stephenson v. Argonaut Insurance Co.*, 125 Cal.App.4th 962 (2004) ...................... 9

*Weiner v. Fleischman*, 54 Cal.3d 476 (1991) ........................................................... 14

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) ........................ 4

## <u>*Rules*</u>

Federal Rule of Civil Procedure 9(b) ......................................................................... 3

TABLE OF AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction and Factual Summary

In response to the Court's August 8, 2011 Order (the "Order") granting Defendant Jagmohan Dhillon's ("Dhillon") previously-filed Motion to Dismiss Plaintiffs Manmohan Chhabra, Parhotam Kamboj, Ranjit Singh, Darshan Singh, Sherbir Sant, Surinder-Pal Arora, Santokh Arora, and Pacific Hospitality, LLC (collectively, "Plaintiffs") originally-filed Complaint (the "Original Complaint"), Plaintiffs filed a Second Amended Complaint (the "SAC"), which continues to suffer from the lack of particularity required to support its various fraud-based claims.

In the SAC, Plaintiffs continue to base essential elements of their claims against Defendant (as one of several defendants (collectively, "Defendants")) for fraud, fraudulent concealment, false promise, violation of 18 U.S.C. § 1962 (c) (the "RICO claim" or "RICO"), and breach of fiduciary duty on vague allegations, conjecture, and unsubstantiated conclusions. Plaintiffs do not and cannot properly plead every element of any of these causes of action – much less with the specificity required for their claims alleging Defendants' fraud.

Dhillon brings this motion to dismiss Plaintiffs' specified causes of action in the SAC for the following reasons:

*First*, Plaintiffs again fail to plead the elements of a fraud claim, a fraudulent concealment claim, or a false promise claim with the required level of specificity or otherwise. Indeed, as the Court noted in its Order (Doc. No. 48), Plaintiffs' rote allegations that Dhillon represented himself as a successful real estate investor, "promised" high returns on hotel investments, and represented himself to be a devout Sikh still have not been (and cannot be) shown to be false and/or still do not support the elements of misrepresentation, scienter, or justifiable reliance. *See, e.g.,* SAC at ¶¶ 37-39, 41-42, 49; *compare to* Original Complaint at ¶¶ 24-26. Likewise, Plaintiffs' conclusory allegations regarding their purported "partnerships" with

1  Dhillon – unsupported by any evidence as to the actual terms of and roles within the
2  partnerships –  do not support any element of duty. *See* SAC at ¶¶ 53, 66, 74.
3  Further, Plaintiffs, by using vague, catch-all language, continue to obscure the facts
4  as to how, when, and to whom Dhillon made each of his alleged representations –
5  indicating a substantial lack of support for the claims of misrepresentation. *See,*
6  *e.g., id.* at ¶ 42 (Dhillon "presented" transactions to certain Plaintiffs).  Without the
7  required elements and the required specificity, Plaintiffs' fraud claims are defective
8  and cannot proceed.

9  *Second*, Plaintiffs fail to adequately allege the existence of each element for a
10  cause of action under RICO because, as elsewhere in the SAC, they do not
11  adequately plead the elements of the underlying allegations of fraud (with the
12  required level of specificity or otherwise), nor do they adequately allege a pattern of
13  racketeering activity (*i.e.*, an enterprise engaged in racketeering through related and
14  continuous predicate acts).  Since Plaintiffs do not make the threshold pleading of
15  the underlying predicate acts with adequate particularity, the claim must fail.
16  Plaintiffs, however, also fail to show the secondary elements of existence of an
17  "enterprise" engaged in racketeering, of sufficient relatedness between the acts
18  alleged in the SAC, or of sufficient continuity of the alleged acts.

19  *Third*, Plaintiffs' breach of fiduciary duty claim fails because the SAC fails to
20  allege with any degree of particularity that a fiduciary duty existed between Dhillon
21  and Plaintiffs.  Plaintiffs state in the most general manner that Dhillon "orally
22  proposed" that the parties enter into a "partnership agreement," without providing
23  any details whatsoever as to the substance of the supposed agreements or the
24  parties' roles with respect to the purported partnerships. *See* SAC at ¶¶ 53, 66, 74.
25  Further, the SAC identifies certain entities that Dhillon purportedly "managed," but
26  generally fails to allege that any of the Plaintiffs are or were members of the
27  entities, nor does it describe the various members' duties or powers within the
28  entities. *Id.* at ¶ 53.  The one entity that the SAC alleges that Dhillon "managed"

1 | *and* of which Plaintiffs were purported "members" (without any further detail
2 | given) was not alleged to have conducted actual business but rather was alleged to
3 | have been replaced by a "new entity" that was not described in any way or further
4 | identified. *Id.* at ¶¶ 60, 80. As such, it is impossible to discern whether Dhillon
5 | actually had the control over Plaintiffs' property required to establish a fiduciary
6 | duty. Further, even if some duty did exist, Plaintiffs do not allege that the scope of
7 | that duty encompasses Dhillon's or the other Defendants' purported conduct.

8 | *Fourth*, many of the allegations in the SAC are in direct contradiction to
9 | allegations previously made in the Original Complaint, seemingly changed to
10 | superficially "address" the issues raised in the Order. The SAC, however, offers no
11 | explanation as to why the new allegations contradict the old allegations, and, as
12 | such, the Court need not and should not accept these new allegations as true.
13 | Plaintiffs cannot simply change the underlying facts on which their purported case
14 | is based simply to skirt pleading adequacy requirements.

15 | Based on these grounds, those articulated below, and on those that may be
16 | presented in further briefing and at hearing, Defendant Dhillon respectfully requests
17 | that the Court grant this Motion without leave to amend as to the first, second, third,
18 | fourth, fifth, and sixth causes of action in Plaintiffs' SAC.

19 |

20 | **II.** **Legal Standard For Motion to Dismiss**

21 | A complaint must provide "more than labels and conclusions"; it must make
22 | "factual allegations" that "raise a right to relief above the speculative level" to the
23 | "plausible" level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007).
24 | Furthermore, where a complaint alleges fraud, it must "state with particularity the
25 | circumstances constituting fraud. . . ." Fed. R. Civ. P. 9(b). Fraud must be pled
26 | "with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d
27 | 1020, 1022-23 (9th Cir. 2000). In diversity cases, a federal court applies state law
28 | as to the substantive elements of fraud, but those elements must be pleaded with the

specificity required by federal law. *See Moore v. Brewster*, 96 F.3d 1240, 1245-46 (9th Cir. 1996).

**III.   Plaintiffs' Fraud Cause of Action Fails to State a Claim as Plaintiffs Have Not and Cannot Plead Their Fraud Allegations With the Required Level of Specificity, Nor Can They Plead Each Element of Fraud**

Under California law, the elements of an action for fraud are: (1) misrepresentation; (2) scienter (knowledge of falsity); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *See Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 173 (2003).

Here, Plaintiffs' fraud cause of action is subject to dismissal for multiple reasons. First, Plaintiffs fail to specifically state the time, place or manner of the majority of the purported fraudulent acts Defendants committed. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("the who, what, when, and where must be laid out before access to the discovery process is granted."); *Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996) (plaintiff must plead facts that "show how, when, where, to whom, and by what means the representations were tendered"); *Goldrich v. Natural Y Surgical Specialties, Inc.*, 25 Cal.App.4th 772, 783 (1994) (where plaintiff merely alleged that defendants "falsely and fraudulently" represented that their products were safe, court found pleading failed to meet the required specificity for fraud since it could not be determined what was said or by whom or in what manner).

In the SAC, as in the Original Complaint (and identified by the Court in the Order), Plaintiffs only vaguely describe the who-what-when-where-how as to Dhillon's alleged misrepresentations regarding the various transactions. Indeed, though Plaintiffs are able to state with some specificity that Dhillon made representations as to his investment successes and Sikh heritage in March 2007 at Surinder's office and at an Indian restaurant (*see* SAC at ¶¶ 35-37, 41), Plaintiffs

1    are often only able to allege that Dhillon "presented" or "pitched" certain Plaintiffs
2    with potential investments and transactions, without stating the means of
3    communications, the place, time, or setting of communication, or the content of the
4    "presentation." *See* SAC at ¶¶ 42, 66, 74; *see also* Order ("Plaintiffs do not allege,
5    with any specificity, [or] identify the times or dates Dhillon made these
6    representations").

7         Further, between the Original Complaint and the SAC, Plaintiffs have
8    curiously and inexplicably changed the identities of the Plaintiffs alleged to have
9    been part of the communications with Dhillon. *See, e.g.,* Original Complaint at ¶¶
10   29, 37 (Surinder was the *only* Plaintiff who discussed certain potential transactions
11   with Dhillon at the alleged "meetings"); *compare to* SAC at ¶¶ 46, 74 (alleging that
12   Dhillon simultaneously discussed these same transactions with multiple Plaintiffs).
13   If the Plaintiffs cannot consistently allege how Dhillon allegedly "presented" the
14   various Plaintiffs with information – or precisely what that information was or who
15   it was presented to – then the Plaintiffs clearly do not have the type of specific
16   evidence required to support a claim sounding in fraud. *See also* Section IX, *infra*.

17        Further, the vast bulk of Plaintiffs' allegations regarding Dhillon's
18   representations fail to allege that the representations were false, that Dhillon knew
19   them to be false, that Plaintiffs justifiably relied on them, or that they had any
20   adverse impact on Plaintiffs. For example – as was the case with the Original
21   Complaint – Plaintiffs state that "Dhillon represented that he orchestrated several
22   successful hotel property acquisitions in Texas hotels," but do not allege facts that
23   demonstrate that this was false (*i.e.*, that Dhillon had *not* orchestrated successful
24   hotel acquisitions) or that Dhillon knew it to be false. *See* SAC at ¶ 37; *compare to*
25   Original Complaint at ¶ 25. Likewise, Plaintiffs' repeated allegations regarding
26   Dhillon's Sikh heritage and beliefs are not (and cannot be) alleged to be false, and
27   therefore cannot be the basis for justifiable reliance. With respect to the alleged
28   "money back" promises, the Order identified that Plaintiffs *did* indeed receive their

DEFENDANT JAGMOHAN DHILLON'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1 money back with respect to the Sweetwater and Ennis transactions, and, as such,
2 were not misled or damaged. *See* Order; *see also* SAC at ¶ 45.

3    The Order further held that "promises of high returns do not constitute
4 misrepresentations" and that "Plaintiffs' reliance on [Dhillon's representations
5 regarding past and future investment success] was not justifiable." In response,
6 Plaintiffs change their allegations: where the Original Complaint alleged that
7 Dhillon represented that he was "able" to deliver profitable hotel investments of at
8 least 20%, the SAC alleges that Dhillon represented that he "always" delivered
9 profits of at least 20%. *See* SAC at ¶ 37; *compare to* Original Complaint at ¶ 25.
10 However, this alteration does not overcome the fact that "'opinions that future
11 profits will be realized on investments' are not actionable" (Order, citing *Harazim*
12 *v. Lynam*, 267 Cal.App.2d 127, 131 (1968).

13    Because Plaintiffs have failed to adequately allege misrepresentation, there
14 can be no scienter, justifiable reliance, or a direct connection to any purported
15 damages. *See Belden v. Henriques*, 8 Cal. 87, 89 (1857) (in order to sustain
16 allegations of fraud, it is necessary to prove that the representations alleged to have
17 been fraudulent and deceitful were not true). Because Plaintiffs' fraud claim suffers
18 from fatal defects which have not been and cannot be cured, Dhillon's motion to
19 dismiss this claim should be granted.

20

21 **IV.   Plaintiffs' Fraudulent Concealment Cause of Action Fails to State a**
22 **Claim as Plaintiffs Have Not and Cannot Plead Their Fraud Allegations**
23 **With the Required Level of Specificity, Nor Can They Plead Each**
24 **Element of Fraud**

25    "[T]he elements of a cause of action for fraud based on concealment are: (1)
26 the defendant must have concealed or suppressed a material fact, (2) the defendant
27 must have been under a duty to disclose the fact to the plaintiff, (3) the defendant
28 must have intentionally concealed or suppressed the fact with the intent to defraud

1  the plaintiff, (4) the plaintiff must have been unaware of the fact and would not
2  have acted as he did if he had known of the concealed or suppressed fact, and (5) as
3  a result of the concealment or suppression of the fact, the plaintiff must have
4  sustained damage." *Levine v. Blue Shield of Cal.*, 189 Cal.App.4th 1117, 1126
5  (2010) (emphasis, quotations, and citations omitted).  As with Plaintiffs' breach of
6  fiduciary duty and fraud claims, Plaintiffs cannot establish the elements of their
7  fraudulent concealment action.

8      Here, Plaintiffs – as with their claim for breach of fiduciary duty, discussed
9  in Section VII, *infra* – fail to sufficiently describe or define the various parties'
10  relationships with one another and with the various alleged entities sufficient to
11  establish the source of a duty running from Dhillon to the Plaintiffs.  For example,
12  Plaintiffs vaguely allege in the SAC that Dhillon "orally proposed" that he and the
13  Plaintiffs "enter into a partnership" with respect to the various hotel transactions,
14  but offer absolutely no details or evidence as to the terms or scope of the alleged
15  partnership agreements, including but not limited to the management structure,
16  profit-and-loss shares, or any other terms of the alleged investments.  *See* SAC at ¶¶
17  53, 66, 74; *see also* Order ("There is no discussion of Plaintiffs' participation or
18  control of the business.  Likewise … the Complaint makes few factual allegations
19  about the investments and their terms").

20      Further, the SAC identifies certain entities that Dhillon purportedly
21  "managed," but generally fails to allege that any of the Plaintiffs are or were
22  members of the entities, nor does it describe the various members' duties or powers
23  within the entities.  *See* SAC at ¶ 53; *see also* Order ("[Plaintiffs] have not made
24  allegations that would create a fiduciary duty owed to Plaintiffs by Dhillon in his
25  capacity as manager").  The one entity that the SAC alleges that Dhillon "managed"
26  *and* of which Plaintiffs were purported "members" (without any further detail
27  given) was not alleged to have conducted actual business but rather was alleged to
28  have been replaced by a "new entity" that was not described in any way or further

DEFENDANT JAGMOHAN DHILLON'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   identified.  *See* SAC at ¶¶ 60, 80.  As such, it is impossible to discern whether

2   Dhillon actually had the control over Plaintiffs' property required to establish a

3   fiduciary duty, nor do Plaintiffs establish the scope of any such duty in order to

4   demonstrate that the purported concealments should have been disclosed.

5       Because Plaintiffs' fraudulent concealment claim suffers from the above-

6   referenced defects, Dhillon's motion to dismiss this claim should be granted.

7

8   **V.   Plaintiffs' False Promise Cause of Action Fails to State a Claim as**

9       **Plaintiffs Have Not and Cannot Allege any Misrepresentations by**

10       **Dhillon or any Correlated Damages**

11       "False promise" is a species of fraud and therefore requires satisfaction of the

12   same elements as a fraud claim and requires heightened specificity.  *See, e.g., Cal-*

13   *Agrex, Inc. v. Van Tassell*, 2008 WL 191330 at *2 (N.D. Cal 2008) (elements of

14   false promise are the same as elements of fraud and subject to "the heightened

15   pleading requirements of Rule 9(b)" (citing, *inter alia*, *Lazar v. Superior Court*, 12

16   Cal.4th 631, 638 (1996)).  Here, Plaintiffs' false promise cause of action, confined

17   by Plaintiffs to the allegations in ¶¶ 99-104 and 151-156 of the SAC, has not

18   alleged any wrongful conduct on the part of Dhillon and does not allege any

19   damages stemming from the conduct alleged.  As such, the claim should be

20   dismissed.

21       Indeed, the SAC alleges that "In October 2009, M. Patel came to Los

22   Angeles … to meet with Elhouty" and that "at the October 2009 meeting with

23   Elhouty, M. Patel for himself and claiming to act on behalf of the other Defendants,

24   represented that Defendants would pay Pacific Hospitality, LLC $510,000 with

25   respect to the Corsicana Properties and pay Pacific Hospitality, LLC, Kamboj and

26   R. Singh $245,000 with respect to the Denison HIE in exchange for an assignment

27   of Pacific Hospitality, LLC's interest in New Hope Hospitality, LLC. "  *See* SAC at

28   ¶¶ 99-100.  The SAC does *not* allege that Dhillon made any such representations,

1 | that Dhillon knew of, approved, or later ratified Defendant Patel's representations,
2 | or that Dhillon actually participated in any way in the conduct alleged – before,
3 | during, or after the alleged Patel misrepresentations.  Merely stating that Defendant
4 | Patel "claimed" that he was acting on behalf of the other Defendants does not,
5 | without more, implicate Dhillon with the type of who-what-where-when-how
6 | specificity required in fraud-related pleadings or provide Dhillon with the "notice of
7 | the particular misconduct" so that he can "defend against the charge." *See* Order,
8 | citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

9 |      Further, Plaintiffs do not allege any damages connected with the false-
10 | promise misconduct alleged in the SAC.  First, they admit that they transaction
11 | proposed by Defendant Patel at the October 2009 meeting "was never
12 | consummated" and that the alleged written agreements regarding the alleged
13 | payments to Plaintiffs Pacific Hospitality, Kamboj, and R. Singh were never
14 | "finalized, executed, and delivered by all parties." *See* SAC at ¶ 101, 103.  Second,
15 | Plaintiffs do not allege that they sustained any economic damage (or any other types
16 | of damage) from the alleged misconduct, but rather that unspecified Defendants
17 | used assignment documents to "obtain an SBA guaranteed loan."  Plaintiffs have
18 | not alleged that they are in any way liable for the loan or are connected to the loan
19 | in any other way.  As such, Plaintiffs have not alleged any damages. *See*
20 | *Stephenson v. Argonaut Ins. Co.*, 125 Cal.App.4th 962, 974-75 (2004) (the injury or
21 | damage from fraud must not only be distinctly alleged but its causal connection
22 | with the reliance on the representation must be shown, and damage must be such as
23 | follows the act complained of as a legal certainty).

24 |      Because Plaintiffs' false promise claim suffers from the above-referenced
25 | defects, Dhillon's motion to dismiss this claim should be granted.

26 | ///

27 | ///

28 |

DEFENDANT JAGMOHAN DHILLON'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

VI.   **Plaintiffs' RICO Cause of Action Fails to State a Claim as Plaintiffs Have Not Pled the Elements of a RICO Claim, Cannot Plead Their Underlying Fraud Allegations With the Required Level of Specificity, and Cannot Plead Each Element of Fraud**

In order to state a claim under RICO, a plaintiff must allege that the defendant caused injury to the plaintiff's business or property by engaging in a "pattern of racketeering activity" in connection with an enterprise which affects interstate commerce. *See Gervase v. Superior Court*, 31 Cal.App.4th 1218, 1231-32 (1995). To show such a "pattern of racketeering activity," a party must demonstrate the continuity and relatedness of two or more predicate acts, either taking place over a substantial period of time or threatening to continue to occur into the future. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-43 (1989). If the predicate acts are fraud-based, the allegations must be pled with the same degree of specificity as is required in fraud claims. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).

Importantly, the fundamental purpose of RICO is not to escalate every fraud claim into a federal racketeering action. As such, RICO does not apply in the vast majority of cases. *See, e.g., Bruns v. Ledbetter*, 583 F.Supp. 1050, 1055 (S.D. Cal. 1984) ("The civil remedies provisions of RICO were not designed to convert every fraud or misrepresentation action involving corporations who use the mails or telephones to conduct their businesses in interstate commerce into treble damage RICO actions. Rather the RICO civil provisions were enacted as an additional tool for use in the eradication of organized crime … there is no indication that it was meant to supplement or supplant the remedies already provided by the statutes that define the predicate offenses"); *see also Harper v. New Japan Sec. Int'l, Inc.*, 545 F.Supp. 1002, 1007 (C.D. Cal. 1982) ("RICO should apply only to actions involving organized crime activities, and not to everyday civil actions like those involving private litigants with no relation to organized crime … Congress could

1  not have intended to provide treble damages causes of action to persons whose only
2  injury stems directly from the predicate acts alone"). Therefore, RICO allegations
3  should not be taken lightly, but instead should be held to the most rigorous pleading
4  standards.

5      First, and closely related to the deficiencies in Plaintiffs' fraud and fraudulent
6  concealment claims, articulated above, Plaintiffs fail to establish with the requisite
7  degree of specificity, per *Alan Neuman*, *supra*, that Defendants engaged in the
8  "predicate acts" listed under RICO, including bank fraud, mail fraud, and wire
9  fraud. Simply utilizing wire transfers, bank accounts, and email, without
10 satisfaction of each of the underlying fraud elements, is not a basis for a RICO
11 claim. Here, as stated in Sections III, *supra*, and VII, *infra*, Plaintiffs have failed to
12 establish with specificity that Dhillon improperly induced them into involvement in
13 the hotel transactions (including the required who-what-when-where-how details
14 regarding each communication), and have failed to establish that Dhillon owed
15 them a fiduciary duty or a duty to disclose. *See Sanford v. MemberWorks, Inc.*, 625
16 F.3d 550, 558 (9th Cir. 2010) (failure to plead specific, actual acts of wire fraud and
17 mail fraud – with reference to time, place, specific content of representations, and
18 identity of parties involved – does not satisfy RICO's pleading-with-particularity
19 requirements).

20     Further, though Plaintiffs fail to adequately plead any predicate acts that are
21 necessary to form the basis of a RICO claim, they also fail to establish the other
22 elements of a "pattern of racketeering activity." For example, Plaintiffs fail to
23 describe the Defendants' required "enterprise" other than to make boilerplate alter-
24 ego allegations and to simply conclude, "on the basis … of information and belief"
25 alone, that the identified individuals and entities are run as a "unitary 'enterprise.'"
26 *See* SAC, ¶¶ 159-160; *compare to* Original Complaint, ¶ 72. Indeed, Plaintiffs
27 totally fail to demonstrate, with the use of factual allegations, *any* details of any
28 actual relationship between the various Defendants or any other details about the

organization or function of the supposed "enterprise". *See* SAC, ¶ 40 (Dhillon "in
business" with Patel Defendants), ¶ 51 (Defendants had "an agreement" in place), ¶
89 (Defendants had a "secret relationship"); *compare to* Original Complaint, ¶ 22;
*see also Spear v. Cyprus*, No. CV09-5860-CAS (AJWx), 2010 WL 883834, at *6
(C.D. Cal. Mar. 5, 2010) (for plaintiff to state a RICO claim, district court required
a litany of specific allegations, including a requirement that plaintiff "describe the
*structure, purpose, function, and course of conduct* of the enterprise") (emphasis
added).

In addition to the Complaint's failure to plead the alleged predicate acts with
the required degree of particularity, it further fails to describe how the predicate acts
are both "related" and "continuous." To show that the predicate acts are related,
Plaintiffs must demonstrate a similarity in the identities of the participants and
victims in the acts, similar purposes and results. *See H.J. Inc.*, 492 U.S. at 239.
Here, the SAC uses generic, misleading language that attempts to lump *all* Plaintiffs
into each the transactions, even though the SAC itself, in prior paragraphs,
specifically shows that each Plaintiff was *not* involved in each transaction (with
some Plaintiffs being involved in as little as one transaction). *See* SAC at ¶¶ 161,
42, 46, 66, 74, 115. Aside from boilerplate alter-ego allegations, then, the SAC
does not provide any evidence of the relatedness of the buyers, sellers, or any other
parties, and therefore does not allege any similarity in the identities of the
participants. Further, the Complaint does not describe with sufficient detail the
similarity of purpose of the alleged acts – the Complaint only vaguely concludes
that Defendants "use[d]" Plaintiffs to "purchase hotels … at extraordinary prices"
(*Id.* at ¶ 161) and that there was a "scheme to defraud Plaintiffs" (*Id.* at ¶ 160(1);
*compare to* Original Complaint at ¶ 20). Nor does the RICO claim demonstrate a
similarity of results.

Next, to show that predicate acts are continuous, Plaintiffs must show either
that the predicate acts occurred over a substantial period of time or that there is a

1 | continuing threat that further predicate acts will occur in the future. *See H.J. Inc.*,
2 | 492 U.S. at 241-42. Here, Plaintiffs do not and cannot demonstrate continuity
3 | under either rubric. First, as the transactions identified by Plaintiffs as the basis for
4 | their RICO claim purportedly occurred from July 2007 to April 2008 – a period of
5 | only nine months – the "substantial period of time" requirement is not satisfied. *See*
6 | SAC, ¶¶ 42, 74. Second, as Plaintiffs brought this claim in May 2010 – over two
7 | years after the last alleged transaction, with no intervening transactions – it is clear
8 | that there is no "continuing threat" of further alleged predicate acts. *See H.J. Inc.*,
9 | 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and
10 | threatening no future criminal conduct do not satisfy this requirement: Congress
11 | was concerned in RICO with long-term criminal conduct"). Third, Plaintiffs'
12 | attempt to refer to another action, without any evidence to identify the substance or
13 | timeframe of that action – let alone any relationship to the parties, substance, or
14 | timeframe of the instant matter – is misleading and insufficient to support a RICO
15 | claim.

16 | As Plaintiffs again do not and cannot allege the elements necessary to show
17 | that Dhillon or the other Defendants engaged in racketeering, Dhillon's motion to
18 | dismiss this claim should be granted.

19 |

20 | **VII. Plaintiffs' Breach of Fiduciary Duty Cause of Action is Fatally Defective**
21 | **As It Fails to Allege a Fiduciary Relationship With Respect to Dhillon or**
22 | **to Define the Scope of Such a Fiduciary Relationship**

23 | "The elements of a cause of action for breach of fiduciary duty are the
24 | existence of a fiduciary relationship, its breach, and damage proximately caused by
25 | that breach." *Amtower v. Photon Dynamics, Inc.*, 158 Cal.App.4th 1582, 1599
26 | (2008). "[T]he existence of legal duty in the first instance and its scope are
27 | questions of law." *Kirschner Bros. Oil, Inc. v. Natomas Co.*, 185 Cal.App.3d 784,

28 |

1  790 (1986).  Plaintiffs' cause of action for breach of fiduciary duty fails to properly
2  allege any of these required elements.

3      In the Order, the Court identified the Original Complaint's failure to "allege a
4  written or oral partnership agreement."  In response, Plaintiffs vaguely allege in the
5  SAC that Dhillon "orally proposed" that he and the Plaintiffs "enter into a
6  partnership" with respect to the various hotel transactions, but offer absolutely no
7  details or evidence as to the terms or scope of the alleged partnership agreements,
8  including but not limited to the management structure, profit-and-loss shares, or any
9  other terms of the alleged investments.  *See* SAC at ¶¶ 53, 66, 74; ; *see also Weiner*
10 *v. Fleischman*, 54 Cal.3d 476, 487 (1991) ("the burden of establishing the existence
11 of [an] oral partnership by a fair preponderance of the credible evidence rests upon
12 the party asserting its existence") (citations, quotations, and brackets omitted).
13 Indeed, simply using the buzzword "partnership" does *not* provide the requisite
14 detail to show that the parties had an *actual* partnership agreement with *actual*
15 terms.  The SAC still suffers from the defects the Court articulated in the Order:

16      "Outside of Plaintiffs' monetary contributions, the [Original] Complaint does
17      not identify the roles of the eight Plaintiffs to Dhillon in these real estate
18      transactions.  There is no discussion of Plaintiffs' participation or control of
19      the business.  Likewise, sharing of profits and losses may have existed but
20      the [Original] Complaint makes few factual allegations about the investments
21      and their terms."

22 *See* Order; *see also Bank of California v. Connelly*, 36 Cal.App.3d 350, 364 (1973)
23 ("an essential element of a partnership … is the right of joint participation in the
24 management and control of the business").  Therefore, not only does the paucity of
25 evidence regarding the terms of any of the multiple alleged partnerships suggest
26 that no such partnerships ever actually existed, the lack of any allegations regarding
27 Plaintiffs' control over the partnership businesses demonstrates the absence of an
28 essential element of a partnership per *Bank of California* and the Order, *supra*.

1    Moreover, Plaintiffs continue to allege, in a wholly conclusive manner, that
2  as a manager of various entities Dhillon owed the Plaintiffs a fiduciary duty that he
3  allegedly breached. *See* SAC at ¶¶ 60, 69.  Plaintiffs, however, again fail to
4  adequately allege that Dhillon or the other Defendants actually exercised any
5  control, whether over Plaintiffs, their funds, or otherwise.  "The key factor in the
6  existence of a fiduciary relationship lies in control by a person over the property of
7  another."  *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158
8  Cal.App.4th 226, 246 (2007) (quotations and citation omitted);  For example, with
9  respect to the New Hope Hospitality and Starlite Hotels entities, Plaintiffs again do
10 not allege that they were members of either of these entities. *See* SAC at ¶ 69; *see*
11 *also* Order ("Plaintiffs have not alleged they were members of Starlite or New Hope
12 Hospitality.  Thus, they have not made allegations that would create a fiduciary
13 duty owed to Plaintiffs by Dhillon in his capacity as manager").  The one entity that
14 the SAC alleges that Dhillon "managed" *and* of which Plaintiffs were purported
15 "members" (without any further detail given) – Mount Pleasant Properties – was
16 not alleged to have conducted actual business but rather was alleged to have been
17 replaced by a "new entity" that was not described in any way or further identified.
18 *See* SAC at ¶¶ 60, 80.

19    Indeed, Plaintiffs never actually describe the structure of the various entities,
20 or provide any other factual allegations to demonstrate that Dhillon had control over
21 the Plaintiffs (through reference to the entities' articles of organization, for
22 example) or control in the ultimate transaction enough to give rise to a fiduciary
23 relationship.  Simply alleging that Dhillon was "a manager," with nothing more,
24 does not demonstrate that Dhillon was Plaintiffs' fiduciary, nor does it demonstrate
25 what the scope of any fiduciary duty would be, if such a duty existed.

26    Likewise, for Dhillon to simply hold himself out as a successful real estate
27 investor interested in finding other investors does not make him a fiduciary.  *See*
28 *Apollo Capital*, 158 Cal.App.4th at 246 ("the mere placing of a trust in another

- 15 -

1 | person does not create a fiduciary relationship") (quotations and citations omitted);
2 | *Oakland Raiders v. Nat'l Football League*, 131 Cal.App.4th 621, 633-34 (2005) ("a
3 | mere [agreement] does not constitute a trust or create a fiduciary relationship");
4 | *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 387-88 (2008) (a
5 | fiduciary relationship does not necessarily arise merely because one party entrusts
6 | its affairs, interests or property to another, there is a grant of broad discretion to the
7 | other, the two parties have an asymmetrical access to information, and/or one party
8 | is vulnerable and dependent upon the other).

9 | As Plaintiffs have not provided any new, sufficient allegations that
10 | demonstrate a fiduciary duty owed to them by Dhillon, the Court should grant the
11 | motion to dismiss as to this cause of action.

12 |

13 | **VIII. Plaintiffs' Unfair Business Practices Cause of Action Fails to State a Claim as**
14 | **Plaintiffs Have Not and Cannot Plead Their Underlying Fraud Allegations**
15 | **With the Required Level of Specificity, Nor Can They Plead Each Element of**
16 | **Fraud**

17 | Plaintiffs' cause of action for Unfair Business Practice under California
18 | Business and Professions Code § 17200 fails because Plaintiff's § 17200 allegations
19 | are based on his allegations of fraudulent conduct, and, as such they are subject to
20 | the pleading requirements of Rule 9(b), which, as has been demonstrated above,
21 | have not been met with respect to Plaintiffs' fraud-based claims. *See Kearns v. Ford*
22 | *Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (affirming dismissal of
23 | California Unfair Competition Law claims for failure to plead with specificity).

24 |

25 | **IX. Plaintiffs' Alterations to the Fundamental Underlying Facts in the**
26 | **Pleadings are Impermissible and Should Not be Taken as True**

27 | Importantly, as indicated above, Plaintiffs have tellingly changed many of the
28 | "facts" underpinning the allegations of their pleadings, without providing any

- 16 -

explanation as to the difference, in an attempt to superficially work around the

Order.  Because "allegations in a complaint are considered judicial admissions and

are binding upon the party that made them," however, this ploy is ineffective.  *See,
e.g., Luedde v. Devon Robotics, LLC*, 2010 WL 2712293 at *6 (S.D. Cal. 2010) ();

*see also Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008).

For example, in direct response to the Order, Plaintiffs allege differing facts

in the Original Complaint and the SAC, without any explanation whatsoever,

including but not limited to the following:

| Original Complaint | SAC |
|---|---|
| ¶ 33: "Dhillon … would be the organizer and the manager of the to-be-formed limited liability company called Mount Pleasant Properties, LLC…" | ¶ 60: "[In October 2007] Dhillon disclosed for the first time that he had formed Mount Pleasant Properties, LLC…" |
| ¶ 29: "Dhillon presented [the Mount Pleasant"] transaction to Surinder…" | ¶ 46: "Dhillon set up a meeting with … Surinder, Chhabra, Kamboj, R. Singh, D. Singh, Santokh and Sant [regarding] a hotel in Mt. Pleasant, Texas…" |
| ¶ 31: "Dhillon represented to Surinder that [Sagestar] Holdings was the seller of Mount Pleasant…" | ¶ 47: "[Dhillon] stated [that] M. Patel was the owner of the Mt. Pleasant [hotel]…" |
| ¶ 37: "In or about April 2008, Dhillon brought yet another investment to Surinder.  This transaction involved a newly constructed Holiday Inn Express in Denison, Texas." | ¶ 74: "In or about April 2008, Dhillon pitched another partnership opportunity to … Kamboj, R. Singh, Surinder, and Santokh involving the purchase of a newly constructed Holiday inn Express in Denison, Texas." |

These changes cannot be attributed to a mistake, oversight, or lack of detail,

but rather are changes regarding fundamental representations that are alleged to

have occurred *in the presence* of at least some of the Plaintiffs.  For example,

whether Dhillon communicated certain things to Surinder alone or to several

Plaintiffs simultaneously is an obvious and crucial difference that cannot be

confused. *See, e.g. Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir.

2010) ("to avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state ... the identities of the parties to the misrepresentation") (cited in Order).  Both sets of allegations cannot be true, and Plaintiffs cannot artificially inflate the scope of the allegations without a competent explanation as to the difference simply to escape a well-founded motion to dismiss.

Not only does this tactic severely impugn Plaintiffs' credibility, it also shows that Plaintiffs cannot support their fraud claims with the type of specific, concrete facts required by F.R.C.P. 9(b).  Indeed if the "specific," binding facts are malleable, then they are not truly "facts" at all, and the Court is not required to accept them as such. *See, e.g., Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1144-1145 (N.D.Cal. 2010) ("where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true") (citations omitted).  As such, the Court should consider the Plaintiffs bound by their earlier allegations and grant Dhillon's motion to dismiss as to all causes of action identified herein.

## X.    Conclusion

Based on the aforementioned arguments, as well as arguments raised in further briefing and during the hearing on this motion, Dhillon respectfully requests that the Court grant this motion and dismiss without leave to amend Plaintiffs' first, second, third, fourth, fifth, and sixth causes of action against Dhillon.


DATED: October 6, 2011          LAPIDUS & LAPIDUS
                                A PROFESSIONAL LAW CORPORATION


                                   _/s/ Jim D. Bauch_____
                                JIM D. BAUCH
                                Attorneys for Defendant
                                Jagmohan Dhillon

DEFENDANT JAGMOHAN DHILLON'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT